UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHAN LEYVA and HOLLY LITTRELL, | § | |
| INDIVIDUALLY and as Next Friends of | § | |
| Minor Children, A.L., K.L. and J.L., | § | |
|       Plaintiffs | § | |
| | § | |
| V. | § | CIVIL NO. 1:24-CV-00209-ADA |
| | § | |
| CARRAZANA TRUCKING, LLC, | § | |
| AMAZON LOGISTICS, INC., | § | |
| ALBERTO MEDINA SARRIA, | § | |
| 3Y TRUCKING, LLC, | § | |
| AMAZON.COM SERVICES INC., | § | |
| AMAZON.COM INC., | § | |
|       Defendants | § | |

---

## PLAINTIFFS' SECOND AMENDED COMPLAINT

---

NOW COMES Plaintiffs JONATHAN LEYVA and HOLLY LITTRELL, Individually and as Next Friends of Minor Children, A.L., K.L., and J.L. (hereafter referred to as "Plaintiff") complaining of Defendants AMAZON LOGISTICS, INC., (hereafter referred to as Defendant "AMAZON LOGISTICS"), CARRAZANA TRUCKING, LLC., (hereafter referred to as Defendant "CARRAZANA TRUCKING"), and ALBERTO MEDINA SARRIA (hereafter referred to as Defendant "SARRIA"), and in support thereof would respectfully show unto the Court as follows:

### I. PARTIES

1.     Plaintiff, Jonathan Leyva, is an individual and a citizen of the State of Texas.

2.     Plaintiff, Holly Littrell, is an individual and a citizen of the State of Texas.

3.     Plaintiff, A.L., is a minor child and a citizen of the State of Texas.

4.     Plaintiff, K.L., is a minor child and a citizen of the State of Texas.

5.      Plaintiff, J.L., is a minor child and a citizen of the State of Texas.

6.      Defendant Carrazana Trucking, LLC. is a foreign for-profit corporation formed in and under the laws of the State of New Mexico and headquarters are located in Hobbs, New Mexico, and who at all times material and relevant hereto was engaged in business in Texas. Defendant Carrazana Trucking, LLC. was the owner or lessor operator of the tractor involved in the collision made the basis of this lawsuit which was operated by its employee Defendant Sarria in the State of Texas; specifically, in the Western District. This action arises from the subject collision. Defendant Carrazana Trucking, LLC. may be served with process via its registered agent, Odin Carrazana Aguila located at 110 E Corbett, Apt 28, Hobbs, New Mexico 88240.

7.      Defendant Amazon Logistics, Inc. is a foreign for-profit corporation formed in and under the laws of the State of Indiana and headquarters are located in Whitestown, Indiana, and who at all times material and relevant hereto was engaged in business in Texas. Defendant Amazon Logistics was the owner of the trailer involved in the collision made the basis of this lawsuit which was operated by its employee Defendant Sarria in the State of Texas; specifically, in the Western District. This action arises from the subject collision. Defendant Amazon Logistics may be served with process via its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX, 78701-3218.

8.      Defendant Alberto Medina Sarria is an individual who was and is a citizen of the State of New Mexico at all times relevant to this action. Defendant Sarria was the driver of the vehicle involved in the collision made the basis of this lawsuit while operating in the State of Texas, specifically the Western District. At all times relevant to this action, Defendant Sarria was in the course and scope of his employment with Defendant Carrazana Trucking, LLC. This action

arises from the subject collision. Defendant Sarria may be served with process at his last known address, located at 1515 E Scharbauer St. Hobbs, New Mexico 88240.

9.     Defendant 3Y Trucking LLC is a foreign limited liability company formed in and under the laws of the State of New Mexico with its headquarters located in Hobbs, New Mexico, and who at all times material and relevant hereto was engaged in business in Texas. 3Y Trucking was the assigned carrier for the load/trip, who then double brokered the load/trip to Defendant Carrazana. Defendant 3Y Trucking may be served with process via its registered agent Yadipsi Santana, 407 E Park St, Hobbs, NM 88240.

10.     Defendant Amazon.com Services LLC is a foreign for-profit limited liability company formed in and under the laws of the State of Delaware with headquarters in Seattle, Washington, and who at all times material and relevant hereto was engaged in business in Texas. Defendant Amazon.com Services LLC was the owner of the tractor-trailer involved in the collision made the basis of this lawsuit which was operated by its employee Defendant Sarria in the State of Texas; specifically, in the Western District. This action arises from the subject collision. Defendant Amazon.com Services LLC may be served with process via its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

11.     Defendant Amazon.com, Inc. is a foreign for-profit corporation formed in and under the laws of the State of Delaware with its principal place of business at 410 Terry Ave N, Seattle, WA 98126. At all times material and relevant hereto they were engaged in business in Texas. They have no registered agent in Texas. They can be served via their registered agent in Delaware: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

## II. JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over this action as this is a civil action pursuant to 28 U.S.C. § 1332, in that it is a civil action between Plaintiffs, who are Texas citizens, and Defendants, who are all citizens of, incorporated in, and/or have their principle place of business in, a state other than Texas; specifically, Defendants are all citizens of New Mexico. Additionally, the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

13.     Venue is proper within the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions occurred within the United States District Court for the Western District of Texas; specifically, Williamson County.

## III. NATURE OF THE CASE

A. **Amazon.com: The World's Largest Logistics Operator.**

14.     Amazon.com is the world's largest online retailer and its second-largest retailer overall. It services about 85% of all U.S. households directly.

15.     Initially, Amazon.com relied mostly on the U.S. Postal Service and private mail carriers—UPS and FedEx—to transport goods from its ever-growing network of warehouses and fulfillment centers.

16.     After its "Amazon Prime" subscription service guaranteeing two- or one-day (now even same-day) delivery exploded, it grew frustrated with the private carriers' bottlenecks and vowed to build its own logistics and delivery network itself. Its goal was to "vertically integrate and take control of shipping and logistics" for the Amazon brand. Whaley v. Amazon.com, Inc., 2024 WL 385019, at *1 (D.S.C. Feb. 1, 2024).

17.     By about 2017 or 2018, Amazon.com set its sights on becoming the largest logistics carrier in the country, controlling all aspects of its supply chain from warehouse to doorstep. To accomplish this goal, Amazon.com created Defendants Amazon Logistics and Amazon.com Services, both still wholly owned subsidiaries.

18.     Amazon.com is directly involved in Defendants Amazon Logistics and Amazon.com Services management through, among other things, its appointment of officers, approval of the subsidiaries' actions through regular reporting from them to Amazon, and other forms of corporate control. Amazon.com monitors, participates in, and approves logistics safety decisions and practices made by Amazon Logistics and Amazon.com Services, both complained of herein.

19.     Amazon Logistics was and is a federally authorized motor carrier, with upwards of 15,000 tractors. As a carrier "authorized [to transport] property as a motor carrier" (49 C.F.R. § 376.2(a)), Amazon Logistics is assigned a unique identification number by the U.S. Department of Transportation and transports property under the assigned USDOT no. 2881058, motor carrier no. MC-826094. Ex. 27; see 49 U.S.C. § 31134. Through its affiliated company "Amazon Transportation Services," Amazon owns and operates trailers and other equipment that qualify by law as CMVs. *See* 49 C.F.R. § 390.5 (including trailers and semitrailers in definition of "commercial motor vehicle").

20.     As the Prime program grew exponentially, Amazon.com needed quick access to a much larger fleet of trucks—and at cheaper cost. To increase their carrying capacity rapidly while not bearing the burden of paying for it all themselves, they created a network of carriers through the "Relay Program," whereby Amazon pays other—typically small and unproven, if not

demonstrably unsafe—motor carriers to help it move goods under the Amazon banner. Amazon calls its network the "Amazon Relay Program" and its participating motor carriers "partners."

21. While nominally "independent," these motor carriers remain under Amazon's tight control while driving Amazon loads through the Relay Program. Foremost among Amazon's tools of control is its "Relay App"—a smartphone application that Amazon *requires* all Relay carriers and drivers to use while hauling for Amazon. The Relay App provides Amazon with granular detail of what Relay drivers are doing and affords them constant contact with and control over those drivers, wherever they are.

22. For example, through the Relay App, Amazon tracks driver driving behavior like speeding or hard braking and notifies drivers and carriers to correct the conduct. They also notify the drivers of weather or other problems coming up and to make recommended adjustments to speed or other behavior. Further, the App allows the Amazon entities to track drivers' compliance with certain critical safety regulations, such as federal rules concerning drivers' maximum allowed hours of service.

23. By 2024, Amazon's rapid expansion into transportation logistics placed it at the top of the world's largest logistics company.

**B. Amazon's Lax Enforcement of Relay Program Rules**

24. The Relay Program Carrier Agreement that carriers signed with Amazon Logistics required them to meet certain safety and insurance standards. In managing that program, however, the Amazon entities ignored their own carrier safety requirements and authorized carriers to haul Amazon loads that didn't meet Amazon Logistics' *own* safety requirements, as set out in the Amazon Relay Carrier Agreement and Program Policies documents. The reason is simple: Had

they held Relay partners to those standards, they could not have rapidly increased their logistics capacity as they were determined to do.

25.     Amazon also turned a blind eye toward the dangerous practice of double-brokering—again, to increase their capacity. Double-brokering is a practice where an authorized carrier working with Amazon rebrokers loads to unauthorized carriers, placing loads and trips into the hands of unvetted and unsafe carriers and unqualified drivers, for the purpose of increasing Amazon's logistics capacity. While Amazon Logistics' carrier agreement ostensibly prohibited double-brokering, in practice, Amazon did little to enforce this rule or prevent double-brokering and other safety problems.  In short, Amazon chose to increase their carrying capacity at the cost of safety.

26.     As part of the Relay Program, Amazon Logistics set up what it called its "Middle Mile" network of "Relay Carriers" and "Relay Drivers."  In that project, they recruited new carriers to haul loads between one Amazon Fulfillment Center and another and entered into a Relay Carrier Agreement with the new carrier.  The agreement requires many things from the carrier, including but not limited to that 1) carriers assure that their drivers are qualified to drive an 18 wheeler,  2) carriers not rebroker (or double broker) Amazon loads, 3) carriers meet several safety metrics based on FMCSA safety data (this include but are not limited to Driver Out of Service Rates, Vehicle Out of Service Rates and BASIC Scores), 4) that carriers maintain certain insurance levels and 5) that carriers and drivers use the Amazon Relay App for booking and running trips, 6) if they fail to use the Relay App on each trip, fail to keep the delivery schedule within 1 minute of Amazons assigned arrival time, fail to accept loads tendered or cancel loads booked, fail to complete every event in a Relay App work flow for a trip, fail to assign a driver at least 5 hours prior to a load, Drivers are required to execute all trips as planned in the Relay App, without making

any stops out of those set out in the Relay App and without exceeding Amazons allotted stoppage time  as set out in the Relay App. Again, these safety rules were honored in their breach.

27.     If a carrier or driver fails to abide by the Relay requirements, Amazon will reduce the carriers access to loads and can suspend them completely if they choose.  Thus, they have an economic hammer to force carriers to comply with their Relay App and other controls.  Similarly, Drivers who exhibit unsafe driving or work habits can be sent to retraining or suspended at Amazon Logistics' sole discretion.

28.     Supposedly to assure compliance, Amazon Logistics contracts with RMIS to be their "Safety Monitor," and requires anyone applying to work with Amazon Logistics to submit information and authorize the Safety Monitor to collect information on the carrier.  The Safety Monitor provides insurance coverage information and FMCSA safety ratings information on the carriers who apply to work with them and Amazon Logistics vets them to see if they meet requirements.  They automatically reject carriers who do not meet their insurance requirements, however, as was done in this case, they continue to book loads with carriers who do not meet their safety requirements.

29.     While Amazon.com Services has no Federal motor carrier, broker or freight forwarder authority, it has many responsibilities, including but not limited to monitoring each Middle Mile Relay Carrier and driver through Middle Mile Performance Managers (MMPM's) to enforce compliance with the requirements in paragraph 26.  It also reviews, keeps track of, and analyzes all information on carriers and drivers, including driving habits like speeding, the loads each driver hauls (number of loads, date, distance, carrier driving for, pay rate, where from and where to, whether team driver or single and many other data points on each driver trip), the number of carriers a driver is listed as driving for (Double Broker Related – DBR), the number of tractors

a carrier has (DBR), the number of drivers a carrier has listed with Amazon (DBR), the number of domiciles each carrier has (DBR), all of the RMIS safety data on each carrier, the driver license credentials for each driver, the date the driver was approved to drive Amazon loads, whether a driver has been banned or suspended, the Amazon training a driver has completed, and many other data points too numerous to mention.

30.     Amazon.com Services also keeps track of, reviews and analyzes the history of each carrier including when it was first authorized to haul for Amazon, and what its historical status has been (active, suspended or temporarily suspended).  For the times a carrier has been suspended or temporarily suspended, they also keep track of, analyze and review the reasons for each suspension (e.g. insurance, safety violations, double brokering etc.).  It also keeps track of, reviews and analyzes all crashes involving Middle Mile trucks, including issues like whether the accident involved double brokering, carriers who did not meet safety requirements, or drivers who were not the assigned driver or not qualified.  Amazon analyzes these accidents, develops trend lines for examining their historical performance, sets goals for future performance and compares Middle Mile safety performance to the safety performance of Amazon Logistics in-house motor carrier fleet. In an effort to improve safety, they use their review of data to come up with safety ideas to make the middle mile network safer.

**C.  Amazon's Data-Driven Knowledge of the Relay Program's Safety Failures**

31.     Sadly, the three Amazon entities, individually have chosen not to implement effective strategies to prevent unsafe carriers and drivers from hauling Amazon loads Allowing unsafe carriers to haul their loads results in accidents like this one that occurred when a non-authorized carrier, being driven by an unassigned driver, with no CDL, driving a truck with an

expired temporary license plate was allowed to enter and Amazon facility, pick up and haul an Amazon trailer and plow into stopped traffic at a speed of at least 50 miles per hour in heavy fog.

32.     Plaintiffs allege that based on its data keeping, each Amazon entity was aware that there were millions of loads hauled by carriers who fell into one of the safety failures involved in this crash as described below.  Those failures resulted in tens of thousands of accidents prior to the accident made the basis of this suit, putting the three Amazon entities on notice long before 2024 that continuing those practices would result in continued accidents, injuries and deaths.

33.     Plaintiffs allege that the reason they continue the practice of these failures is because if they did not deliver the millions of loads hauled by these carriers and drivers, they could not meet their delivery obligations, thus severely damaging their business model.

34.     Through their Amazon Logistics creation and management of the Relay Network, coupled with the carrier management, data tracking and analysis of the carriers and drivers approved to be a part of the Relay Network, and the sharing of information, each entity has been aware for multiple years that the accident rates and safety performance of the middle mile network they created is many times worse than the Amazon Logistics owned fleet which is managed with an emphasis on safety.  Upon information and belief the number of middle mile accidents just in the time frame between 2019 and 2024 numbers in the tens of thousands.  Each entity has also been aware of the frequency of accidents related to double brokering (where there is no control over the carriers safety record), allowing authorized carriers that don't meet safety standards to continue hauling loads, allowing unassigned and/or unqualified drivers to haul loads, allowing unassigned trucks to pick up loads and other practices which endanger the motoring public by putting unsafe and unqualified carriers on highways to haul Amazon trailers.

**D. Defendants' Responsibility for the Crash that Injured Plaintiffs.**

35.     On or about January 4, 2024, Plaintiff Jonathan Leyva was traveling northbound, in the center lane of travel, on IH-35 in Williamson County, Texas. Plaintiff Leyvawas safely and lawfully operating a 2020 Ford F250. Defendant Carrazana Trucking, LLC's employee, Alberto Medina Sarria, acting within the course and scope of his employment, was operating Defendant Carrazana trucking, LLC's 2013 Volvo VNR and towing a 2022 Wabash National Corp trailer owned by Amazon Logistics, Inc. 3Y, by virtue of being the assigned carrier which rebrokered the load to Carrazana is considered a motor carrier responsible for the load and driver. Additionally, as set forth in Paragraphs 19 and 37, Amazon Logistics is also considered a motor carrier responsible for the load and driver.

36.     Meanwhile, Defendant Sarria was traveling northbound on IH-35 in the center lane of travel. Defendant Sarria failed to control his speed and suddenly, violently, and without warning, struck the vehicle operated by Plaintiff Jonathan Leyva, the investigating officer with the Department of Public Safety determined that Defendant Sarria was at-fault and issued a citation to Defendant Sarria for failure to control speed. As a result of the collision, Plaintiff Leyva sustained serious injuries. As a result of the collision, all Plaintiffs have sustained damages.

37.     Amazon Logistics owned the trailer being hauled by Defendant Sarria. Sarria was an Amazon Logistics and Amazon.com Services approved Amazon Relay Driver. He was driving for Defendant Carrazana and the load had been contracted by Amazon Logistics to Defendant 3Y. It appears the load was double brokered to Carrazana. Carrazana had its own separate DOT # (4014254) as did 3Y (3615293). Pursuant to 49 CFR 390.5, a motor carrier includes both carriers who provide transportation for compensation as well as those that do it privately without compensation. Further, 390.5 defines commercial motor vehicle to include "any self-propelled or

towed motor vehicle," including "any vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power." 49 C.F.R. § 390.5. Consequently, Amazon Logistics is also legally a motor carrier responsible for the driver Sarria, and Amazon Logistics internally identifies itself as the "subcarrier" where its Amazon-owned, Amazon-branded, fifty-three-foot trailer was a "commercial motor vehicle" by federal regulation and was being hauled by its Amazon Relay Driver Sarria while driving Carrazana's tractor.

38.     At the time of the accident, Defendant Sarria (a) was employed by Defendants Carrazana Trucking, LLC and, as set forth in Paragraph 19, 21 - 34 and 37, was a statutory employee of Defendant 3Y and Defendant Amazon Logistics, (b) was driving a CMV owned by Defendants Carrazana Trucking, LLC and hauling the Amazon Logistics CMV (the trailer), and (c) was acting within the course and scope of his employment with Defendants Carrazana Trucking, LLC and as statutory employee of 3Y and Amazon Logistics. Also, by virtue of the direct control that Amazon Logistics exercised over Sarria through the Relay App, he was also their agent or employee. At all times material to this incident, Defendant Saria had permission, either express or implied, to operate Defendant Carrazana Trucking, LLC's CMV as well as Amazon Logistics CMV.

### IV. CAUSES OF ACTION

### COUNT I – Negligence of Defendants Carrazana Trucking, LLC

39.     Plaintiffs incorporate by reference each and every allegation contained above as though fully set forth herein.

40.     Defendant Sarria was an employee of Defendants Carrazana trucking, LLC., was acting within the course and scope of that employment at the time of the accident. As such,

Defendants Carrazana Trucking, LLC is vicariously liable for the wrongful acts or omissions of Defendant Alberto Medina Sarria.

41.     Defendant Carrazana Trucking, LLC, had a duty to exercise reasonable care in the management and operation of its commercial trucks.

42.     Additionally, Defendants Carrazana Trucking, LLC had an obligation to the public to hire, train, retain, and supervise safe and competent drivers, and is liable for any and all damages that resulted from the negligence in its hiring, training, retaining, or supervision of its employees.

43.     Defendants Carrazana Trucking, LLC, failed to exercise reasonable care in the management and operation of its commercial trucks, and failed to exercise reasonable care in the hiring, training supervising and/or retaining of its carriers and drivers.  Specifically, at the time of the crash, Defendant Sarria had no valid CDL as required to operate the CMV tractor in question and haul the CMV trailer in question, at the time he plowed into stopped traffic on I-35 in heavy fog going at least 50 MPH.  Furthermore, the tractor was operated with an expired temporary license plate.

44.     This negligence by Carrazana was a proximate case of the accident and injuries to Plaintiffs.

45.     Because this conduct was made with willful disregard to the safety of Plaintiffs, it constitutes Gross Negligence and Plaintiffs are also entitled to Exemplary Damages.

## COUNT II – Negligence of Defendant Amazon Logistics

46.     Plaintiffs incorporate by reference each and every allegation contained above as though fully set forth herein.

47.     Amazon Logistics was responsible for the operation of its Relay Carrier Network as set out in Paragraphs 21 – 34.  Through that program and its Relay App which the Amazon

Relay Drivers were required to use, they sufficiently controlled the details of the driver's work making the driver an agent or employee of Amazon Logistics. As such Amazon Logistics is vicariously liable for his conduct.

48.     Amazon Logistics had a duty to exercise reasonable care in the operation of its Relay Carrier Network and in controlling the details of the driver's work.

49.     Amazon Logistics failed to exercise reasonable care as described in this count.

50.     Additionally, Amazon Logistics was directly negligent and responsible for the accident in knowingly booking loads with 3Y Trucking at a time when Amazon Logistics knew that 3Y trucking did not meet Amazon Logistics' required safety scores.

51.     Additionally, Amazon Logistics was directly negligent and responsible for the accident in knowingly booking loads with 3Y Trucking at a time when Amazon Logistics knew or should have known that 3Y trucking was double brokering loads in general and this load in particular.

52.     Additionally, Amazon Logistics was directly negligent and responsible for the accident in allowing Carrazana, whose truck did not match the 3Y DOT# to pick up the load and whose truck was not legal to be operated because it was not properly licensed.

53.     Additionally, Amazon Logistics was directly negligent and responsible for the accident in knowingly allowing Sarria, who was not an assigned driver for the load, to enter the Amazon facility to pick up and haul the trailer. This negligence is compounded by the fact that not only was he not the assigned driver, but he did not have a CDL as required to operate the tractor even if it had been properly branded. This negligence is further compounded by the fact that Amazon Logistics was aware of methods to stop unauthorized loads and drivers from hauling Amazon (including but not limited to checking driver licenses for identification of drivers and

checking DOT numbers for identification of authorized carriers), but consciously refused to implement those strategies. Had they effectively implemented them it would have interfered with their need to meet the Amazon delivery schedules and hurt the overall business of Amazon Logistics and consequently Amazon.com.

54.     Additionally, Amazon Logistics was directly negligent and responsible for the accident in entrusting the trailer to 3Y when it did not meet Amazon Logistics safety requirements, Sarria, when they knew or should have known he did not have a CDL, and Carrazana because it was not the assigned carrier.

55.     Amazon Logistics is vicariously liable for the conduct of Sarria as set out in Paragraphs 19, 21 - 34.

56.     This negligence by Amazon Logistics was a proximate case of the accident and injuries to Plaintiffs.

57.     Because this conduct was made with willful disregard to the safety of Plaintiffs, it constitutes Gross Negligence and Plaintiffs are also entitled to Exemplary Damages.

### COUNT III – Negligence of Defendant Amazon.com Services

58.     Plaintiffs incorporate by reference each and every allegation contained above as though fully set forth herein.

59.     Amazon.com Services was responsible for the operation of the Amazon Centers to and from which Amazon Relay Drivers pick up and deliver Amazon Logistics' trailers. They were additionally responsible for collecting, monitoring, and studying Amazon Relay data for the purpose of directly managing Relay Carriers and Drivers regarding performance of work, driving practices and other matters related to the hauling of Amazon Logistic trailers. In that regard, for years before this accident, they specifically analyzed problems which resulted in this accident

including but not limited to double brokering, unapproved drivers, and loads assigned to carriers who did not meet safety requirements. Although employees came up with plans that would eliminate these safety problems (including but not limited to things like checking the driver's license to assure is the correct and correctly licensed person to pick up the load and checking to see if the DOT # on the truck belongs to the carrier who was supposed to pick up the load) those plans were never effectively implemented before this accident. This constitutes direct negligence in allowing an unauthorized carrier, with an improperly licensed driver, driving an improperly licensed tractor to enter their facility and haul it down public highways.

60.     Amazon.com Services had a duty to exercise reasonable care in the operation of the Amazon Centers and other responsibilities and actions undertaken in the preceding paragraph.

61.     Amazon.com Services failed to exercise reasonable care as described in this count.

62.     Additionally, Amazon.com Services was directly negligent and responsible for the accident in failing to suspend or recommending to suspend 3Y Trucking from the Relay Network at a time when 3Y trucking did not meet Amazon Logistics' required safety scores.

63.     Additionally, Amazon.com Services was directly negligent and responsible for the accident in failing to suspend or recommending to suspend 3Y Trucking at a time when they knew or should have known that 3Y trucking was double brokering loads in general and this load in particular.

64.     Additionally, Amazon.com Services was directly negligent and responsible for the accident in allowing Carrazana, whose truck did not match the 3Y DOT# to pick up the load and whose truck was not legal to be operated because it was not properly licensed.

65.     Additionally, Amazon.com Services was directly negligent and responsible for the accident in knowingly allowing Sarria, who was not an assigned driver for the load, to enter the

Amazon facility to pick up and haul the trailer. This negligence is compounded by the fact that not only was he not the assigned driver, but he did not have a CDL as required to operate the tractor even if it had been properly branded. This negligence is further compounded by the fact that Amazon.com Services was aware of methods to stop unauthorized carriers and drivers from hauling Amazon loads (including but not limited to checking driver licenses for identification of drivers and checking DOT numbers for identification of authorized carriers), but consciously refused to implement those strategies. Had they effectively implemented them it would have interfered with their need to meet the Amazon Deliveries schedules and hurt their business.

66.     This negligence by Amazon.com Services was a proximate case of the accident and injuries to Plaintiffs.

67.     Because this conduct was made with willful disregard to the safety of Plaintiffs, it constitutes Gross Negligence and Plaintiffs are also entitled to Exemplary Damages.

### COUNT IV – Negligence of Defendant Amazon.com

68.     Plaintiffs incorporate by reference each and every allegation contained above as though fully set forth herein.

69.     Amazon.com retained sufficient control over Amazon Logistics and Amazon.com Services through its assignment of officers and directors of those entities as well as through its communications with them regarding the logistics network. That control gave Amazon.com the ability to implement the safety changes discussed above which would have prevented the accident. Therefore, Amazon.com is also negligent and liable for the harm caused Amazon Logistics and Amazon.com Services.

70.     Amazon.com had a duty to exercise reasonable care in the actions undertaken in the preceding paragraph, including the assignment of officers and directors of Amazon Logistics and Amazon.com and through its communications with them regarding the logistics network.

71.     Amazon Logistics failed to exercise reasonable care as described in this count.

72.     This negligence by Amazon.com was a proximate case of the accident and injuries to Plaintiffs.

73.     Because this conduct was made with willful disregard to the safety of Plaintiffs, it constitutes Gross Negligence and Plaintiffs are also entitled to Exemplary Damages.

## COUNT V – Negligence Per Se of Defendant Sarria

74.     The allegations alleged above are re-alleged and are incorporated herein by reference.

75.     The following acts and/or omissions constitute negligence per se by Defendant Alberto Medina Sarria, and for which, as set forth above Carrazana, 3Y, and Amazon Logistics are vicariously liable:

       a.      Violation of 49 CFR § 383 in failing to possess a valid CDL;

       b.      Violation of 49 CFR § 395 in failing to keep an accurate log of his driving time;

       c.      Violation of TRANSP § 502.407 - Operation of Vehicle with Expired License Plate

       d.      The unexcused violation of an administrative regulation, statute, or ordinance established to define a reasonably prudent person's standard of care is negligence per se.

76.     This conduct by Sarria was a proximate cause of the accident and Plaintiffs' damages.

77.     Because this conduct was made with willful disregard to the safety of Plaintiffs, it constitutes Gross Negligence and Plaintiffs are also entitled to Exemplary Damages.

## COUNT VI – Negligence of Defendant Sarria

78.     The allegations alleged above are re-alleged and are incorporated herein by reference.

79.     Defendant Sarria was unqualified to operate the tractor-trailer.

80.     Defendant Sarria failed in his duty to exercise care in the operation of the commercial vehicle, and he breached that duty of care by, intra alia:

       a.      Failing to keep a proper lookout;

       b.      Failing to take proper evasive action;

       c.      Failing to operate his vehicle in a prudent and reasonable manner;

       d.      Failing to maintain a proper speed and control under the circumstances;

       e.      Driving without a proper license;

       f.      Driving an improperly licensed vehicle

       g.      Failing to maintain a single lane of travel; and

       h.      Reckless driving.

81.     Defendant Sarria's conduct was malicious, willful, reckless or in wanton disregard of the rights and safety of others.

82.     Defendant Sarria's negligence and gross negligence was approximate cause of the accident and Plaintiffs' injuries.

83.     Defendant Sarria is also liable for exemplary damages due to his gross negligence

## COUNT VII – Negligence of Defendant 3Y

84.     Plaintiffs incorporate by reference each and every allegation contained above as though fully set forth herein.

85.     Defendant 3Y is vicariously liable for the conduct of Sarria as the motor carrier who accepted responsibility for the load and then double brokered or rebrokered it to Carrazana.

86.     Defendant 3Y had a duty to exercise reasonable care as the carrier who accepted responsibility for the load.

87.     Defendant 3Y is directly liable for double brokering the load to Carrazana in violation of their agreement with Amazon Logistics which makes members of the public third-party beneficiaries of that agreement.

88.     Additionally, 3Y is directly liable to Plaintiffs for negligently brokering the load to Carrazana when they had no brokering authority, they rebrokered the load to a carrier that did not have a properly licensed truck, did not have a properly licensed driver, and did not meet Amazon's safety requirements.

89.     Defendant 3Y failed to exercise reasonable care as described in this count.

90.     This negligence by 3Y was a proximate case of the accident and injuries to Plaintiffs.

91.     Because this conduct was made with willful disregard to the safety of Plaintiffs, it constitutes Gross Negligence and Plaintiffs are also entitled to Exemplary Damages.

## V.  PLAINTIFFS' DAMAGES

92.     At the time of his injuries, Plaintiff Jonathan Leyva was in reasonably good health with a normal life expectancy. He had a good relationship with wife and children as a beloved and active husband and father.

93.     As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff Leyva has suffered and will continue to suffer a tremendous loss of life and family. His

wife and children will suffer as Jonathan's relationship with them will never be the same. Plaintiffs seek all just and right remedies at law and in equity, including but not limited to:

a. Medical care expenses of Plaintiff Jonathan Leyva according to proof in the past and in reasonable probability will be incurred into the future;

b. Past and future loss of earnings and earning capacity of Plaintiff Jonathan Leyva according to proof in the past and in reasonable probability will be sustained into the future;

c. Loss of household services in the past and in all probability to be incurred into the future;

d. Non-economic damages for Plaintiff Jonathan Leyva according to proof including as applicable;

e. Compensation for physical pain in the past and in reasonable probability sustained into the future by Plaintiff Jonathan Leyva;

f. Compensation for mental anguish in the past and in reasonable probability will be sustained into the future by Plaintiff Jonathan Leyva;

g. Compensation for loss of earnings and earning capacity and in reasonable probability sustained into the future by Plaintiff Jonathan Leyva;

h. Compensation for disfigurement in the past and in reasonable probability will be sustained into the future by Plaintiff Jonathan Leyva;

i. Compensation for physical impairment in the past and in reasonable probability will be sustained into the future by Plaintiff Jonathan Leyva;

j. Loss of Consortium sustained by Plaintiff Holly Littrell in the past and future, including the loss of husband/wife relationship, including loss of affection, society, assistance, emotional support, care, comfort, solace, companionship, protection, services, and parental relationship;

k. Loss of Consortium sustained by minor children A.L., K.L., and J.L in the past and future including the loss of father/child relationship, including loss of affection, society, assistance, emotional support, care, comfort, solace, companionship, protection, services, and parental relationship.

l. Exemplary damages;

m. And all other legal damages and just and right compensation as allowed both in law and in equity.

94.     All losses, harm, and legal damages suffered by Plaintiffs were caused by, and proximately caused by, Defendants' negligent acts and/or omissions (some of which are listed herein). For all such claims and losses, Plaintiffs now sue.

95.     Plaintiffs requests monetary damages and punitive damages against the Defendants in amounts to be fixed by the trier of fact to be just and reasonable, for pre and post-judgment interest, for court costs and for all other appropriate relief.

## VI. JURY DEMAND

96.     Plaintiffs demand trial by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray for judgment as follows:

a. Medical care expenses of Plaintiff Jonathan Leyva according to proof in the past and in reasonable probability will be incurred into the future;

b. Past and future loss of earnings and earning capacity of Plaintiff Jonathan Leyva according to proof in the past and in reasonable probability will be sustained into the future;

c. Loss of household services in the past and in all probability to be incurred into the future;

d. Non-economic damages for Plaintiff Jonathan Leyva according to proof including as applicable;

e. Compensation for physical pain in the past and in reasonable probability sustained into the future by Plaintiff Jonathan Leyva;

f. Compensation for mental anguish in the past and in reasonable probability will be sustained into the future by Plaintiff Jonathan Leyva;

g. Compensation for loss of earnings and earning capacity and in reasonable probability sustained into the future by Plaintiff Jonathan Leyva;

h. Compensation for disfigurement in the past and in reasonable probability will be sustained into the future by Plaintiff Jonathan Leyva;

i. Compensation for physical impairment in the past and in reasonable probability will be sustained into the future by Plaintiff Jonathan Leyva;

j. Loss of Consortium sustained by Plaintiff Holly Littrell in the past and future, including the loss of husband/wife relationship, including loss of affection, society, assistance,

emotional support, care, comfort, solace, companionship, protection, services, and parental relationship;

k. Loss of Consortium sustained by minor children A.L., K.L., and J.L in the past and future including the loss of father/child relationship, including loss of affection, society, assistance, emotional support, care, comfort, solace, companionship, protection, services, and parental relationship.

l. Exemplary damages;

m. As to all Counts and all DEFENDANTS, awarding pre-judgment and postjudgment interest to the Plaintiff according to proof;

n. As to all Counts and all DEFENDANTS, awarding reasonable costs to the Plaintiff as provided by law; and

o. As to all Counts and all DEFENDANTS, granting all such other relief as the Court deems necessary, just and proper.

Respectfully submitted,

Gregory L. Gowan
Federal ID No. 19991
Texas Bar No. 00765384
David Lesly Jones
Federal ID No. 360459
Texas Bar No. 24002370
GOWAN LAW GROUP, P.C.
555 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone: 361.651.1000
Facsimile: 361.651.1001
ggowan@gowanlawgroup.com
djones@gowanlawgroup.com

And

/s/ James B. Ragan
James B. Ragan
Federal ID No. 696
Texas Bar No. 16466100
Law Offices of James B. Ragan
Corpus Christi, TX 78401
Phone: (361) 884-7787
Fax: (361) 884-9144
Jimragan13@gmail.com
*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2025, a true and correct copy of the foregoing was served upon counsel of record through the electronic service manager pursuant to the Federal Rules of Civil Procedure.

/s/ James B. Ragan
James B. Ragan