# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHAN LEYVA, and Holly Littrell, INDIVIDUALLY and as Next Friends of Minor Children, A.L., K.L. and J.L., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.: 1:24-cv-00209-ADA |
| CARRAZANA TRUCKING, LLC., AMAZON LOGISTICS, INC., ALBERTO MEDINA SARRIA, 3Y TRUCKING, LLC, AMAZON.COM SERVICES, INC., AMAZON.COM, INC. | § § § § § | |
| Defendants. | | |

## AMAZON DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Plaintiffs' claims are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), which provides that states may not enforce laws related to a price, route, or service of any motor carrier or broker. Federal appellate courts have uniformly held that the FAAAA preempts state law negligence claims like those Plaintiffs assert against Amazon Logistics, Inc., Amazon.com Services, Inc., and Amazon.com, Inc. (collectively, the "Amazon Defendants"). And the only potentially applicable exception to the FAAAA's preemption provision—the "safety exception"—doesn't apply here, because the connection between the Amazon Defendants' alleged negligence and the accident is too attenuated. Accordingly, the FAAAA preempts all of Plaintiffs' claims against the Amazon Defendants, and they should be dismissed.

**BACKGROUND**[1]

This case arises from a motor vehicle accident that occurred on January 4, 2024, in which Plaintiffs' vehicle collided with a tractor being driven by Defendant Alberto Medina Sarria. Plaintiffs allege that Mr. Sarria was working in the course and scope of his employment with Carrazana Tucking, LLC ("Carrazana") at the time of the accident. (ECF 72 ¶ 40.) The Amazon Defendants' connection to this case is tangential: Amazon Logistics contracted with 3Y Trucking LLC ("3Y") to haul a trailer. (ECF 72 ¶¶ 26, 37.) In violation of the applicable Relay Program Carrier Agreement, 3Y then hired Carrazana to transport the trailer. (*Id.* ¶¶ 24, 35.) Carrazana assigned the load to Mr. Sarria (*id.*; *see also* ECF 58 ¶ 12), and provided one of its tractors, a 2013 Volvo VNR, for Mr. Sarria to drive. (ECF 72 ¶ 35.)

Plaintiffs allege that 3Y was the "motor carrier responsible for the load and driver," and that Amazon Logistics is somehow *also* the "motor carrier responsible for the load and driver." (ECF 72 ¶ 35.) Based on these allegations, Plaintiffs bring claims for negligence against Amazon Logistics (Count II), Amazon.com Services (Count III), and Amazon.com (Count IV). Plaintiffs also claim that Amazon Logistics is vicariously liable for Mr. Sarria's conduct. (*Id.* ¶¶ 47, 55, 75.)

**LEGAL STANDARD**

The Court may dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must plead enough *facts* to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept all 'well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas*

---

[1] These facts are assumed to be true for purposes of this motion only.

*Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Allegations "merely consistent with" liability do not rise to "plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

But the Court does not need to credit as true mere legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Barry v. United States*, 667 F. Supp. 3d 495, 503 (S.D. Tex. 2023) (citing *Twombly*, 550 U.S. at 555).

**ARGUMENT**

**I.      The FAAAA Preempts State Law Claims Affecting a Motor Carrier's Transportation Services.**

Following federal deregulation of the trucking industry in 1980, Congress enacted the FAAAA to "expressly preempt[] state trucking regulation." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013). The preemption provision provides that "a State . . . may not . . . enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

The statute contains a two-part test, under which the party seeking to establish preemption must show both that (1) "a state 'enacted or attempted to enforce a law,'" and (2) that "the state law relates to broker 'rates, routes, or services.'" *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 458 (7th Cir. 2023); *see Dan's City*, 569 U.S. at 260 (citing *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008)).

The first part of this test is "easily met" here. *Ye*, F.4th at 459. Preemption applies any time a state "seek[s] to enforce a 'provision having the force and effect of law,'" and courts widely agree that "state-law negligence claims" like Plaintiffs' claims here do just that. *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1266 (11th Cir. 2023) (quoting *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281-84 (2014)). Such claims thus "fall comfortably within the language of the preemption provision" of the FAAAA and satisfy the first statutory requirement. *Ye*, 74 F.4th at 459 (quoting *Nw.*, 572 U.S. at 281-82) (cleaned up).

The second part of the test is whether Plaintiffs' claims are "related to" the rates, route, or service of a motor carrier or broker. *Aspen*, 65 F.4th at 1266; 49 U.S.C. § 14501(c)(1). A common law claim "is 'related to' rates, routes, or services if the [claim] has 'a connection with, or reference to' them." *Aspen*, 65 F.4th at 1267. Plaintiffs refer in passing to several theories of negligence—failure to enforce internal policies (ECF 72 ¶¶ 47, 50, 62-63, 65, 69), failure to control drivers (*id.* ¶ 48), negligent entrustment (*id.* ¶ 54), and vicarious liability (*id.* ¶ 55)—but the thrust of their claims is that the Amazon Defendants should have done more vetting when selecting and supervising 3Y as the motor carrier for the load. Negligence claims relate to rates, routes, or services where, as here, they tell "*shippers* what to choose rather than *carriers* what to do." *Rowe*, 552 U.S. at 372.

For instance, in *Farfan*, Judge Andrew S. Hanen of the U.S. District Court for the Southern District of Texas granted a motion to dismiss negligence claims similar to those here, because such claims were preempted by the FAAAA. *See Farfan v. Old Dominion Freight Line, Inc.*, 744 F. Supp. 3d 763, 767-70 (S.D. Tex. 2024). There, the plaintiffs brought several claims arising from a motor vehicle accident that occurred when a vehicle carrying a load for Old Dominion drove through a stop sign and collided with the decedent's vehicle. *See id.* at 765. The plaintiffs alleged

4

that Old Dominion negligently hired Just Van to haul its load, and that Just Van had employed and assigned its driver to the load who caused the accident. *See id.* at 765, 767. Judge Hanen held that the FAAAA's preemption provision applied and required dismissal of plaintiffs' negligence claims against Old Dominion, because "negligently arrang[ing]" for the transportation of a shipment directly "relate[s] to [the] 'rates, routes, and services'" of Old Dominion. *See id.* at 767-70.

In addition, the three federal Courts of Appeals that have addressed the issue have unanimously found that negligence claims like Plaintiffs' are covered by the FAAAA's preemption provision. *See id.*; *Aspen*, 65 F.4th at 1267–68; *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024 (9th Cir. 2020).

The Seventh Circuit's decision in *Ye* is instructive. There, the wife of a deceased motorcyclist sued a broker for negligently hiring the motor carrier whose truck collided with her husband's motorcycle. *Ye*, 74 F.4th at 456. The Seventh Circuit held that this negligence claim "related to a . . . service of . . . [a] broker" under the FAAAA, because the claim "would have a significant economic effect on broker services." *Id.* at 458-59. "[E]nforcement of" a common law negligent hiring claim, the Seventh Circuit reasoned, "would impose in the name of state law a new and clear duty of care on brokers, the breach of which would result in a monetary judgment." *Id.* at 459. This, in turn, would cause brokers to "change how they conduct their services—for instance, by incurring new costs to evaluate motor carriers. Then, by changing their hiring processes, brokers would likely hire different motor carriers than they would have otherwise hired without the state negligence standards." *Id.* The resulting "significant economic effects" brought the plaintiff's claims within the scope of the FAAAA's preemption provision. *Id.*

The Ninth Circuit employed similar reasoning in *Miller*. *See* 976 F.3d at 1022, 1024-25. The Ninth Circuit noted that "[t]he phrase 'related to' in the FAAAA 'embraces state laws 'having

5

a connection with or reference to' . . . 'rates, routes, or services,' whether directly or indirectly.'" *Id.* at 1022. Applying this test, the court held that the FAAAA's preemption provision applied to a common law negligence claim that was predicated on the negligent hiring of the carrier. *Id.* at 1024. Like the Seventh Circuit, the Ninth Circuit reasoned that "the 'selection of motor carriers is one of the core services of brokers," and the plaintiff's "negligence claim [sought] to interfere at the point at which [the broker] 'arrang[ed] for' transportation by [a] motor carrier." *Id.* "[A] claim that imposes an obligation on brokers at the point at which they arrange for transportation by [a] motor carrier has a 'connection with' broker services," the court concluded, thus bringing it within the purview of the preemption clause. *Id.*

The Eleventh Circuit's decision in *Aspen* solidified this consensus. *See* 65 F.4th at 1266-68. It applied the same test as *Miller* to hold that the FAAAA preempted a state law negligence claim challenging a broker's "allegedly inadequate selection of a motor carrier to transport [a shipper's goods]" that allegedly led to a motor vehicle accident. *Id.* at 1267-68. Under the statute, the court explained, "the 'service' of a 'broker'" includes "selecting the motor carrier who will do the transporting" of the goods. *Id.* at 1267. By challenging that selection, the plaintiff's negligence claims had "'a connection with or reference to' the service of a broker with respect to the transportation of property" under the preemption clause. *Id.* at 1267-68. Thus, the FAAAA's preemption provision applied. *Id.*

The rationales of *Ye*, *Miller*, and *Aspen* control here. Each claim Plaintiffs assert against the Amazon Defendants "relate[s] to a price, route, or service of [a] motor carrier . . . or . . . broker." 49 U.S.C. § 14501(c)(1). Each claim—failure to enforce internal policies (ECF 72 ¶¶ 47, 50, 62-63, 65, 69), failure to control drivers (*id.* ¶ 48), negligent entrustment (*id.* ¶ 54), and vicarious liability (*id.* ¶ 55)—turns on Plaintiffs' allegation that the Amazon Defendants should have done

6

more vigorous vetting when selecting 3Y as a carrier for the load involved in the accident. Plaintiffs' negligence claims, including for vicarious liability, seek to subject the Amazon Defendants' "hiring decisions to a common-law negligence standard" and are preempted as a result. *Ye*, 74 F.4th at 459; *Aspen*, 65 F.4th at 1267 (holding that the FMCSR "makes plain that [the plaintiff's] negligence claims relate to a broker's services" (alteration in original)); *Miller*, 976 F.3d at 1024 ("[A] claim that imposes an obligation on brokers at the point at which they arrange for transportation by motor carrier has a 'connection with' broker services."). Because each of Plaintiffs' claims attempts to impose obligations on how the Amazon Defendants select and supervise motor carriers, each claim is preempted.

## II. The Safety Exception Does Not Save Plaintiffs' Claims.

Nor are Plaintiffs' direct claims saved by the FAAAA's safety exception. Under that exception, the FAAAA's preemption clause "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). The preemption provision and this exception, read together, "broadly disallow[] state laws that impede" the congressional goals of deregulating the transportation industry without vaporizing a state's legitimate interest in motor vehicle safety. *Ye*, 74 F.4th at 458.

In the wake of *Ye*, federal courts have overwhelmingly held that negligence claims like those Plaintiffs assert here against the Amazon Defendants are not saved from preemption by the safety exception.[2] Consistent with this logic, the Texas Court of Appeals has also held that the

---

[2] *See, e.g.*, *Trujillo v. Nucor Corp.*, No. 1:23-CV-00802-RM-SBP, 2025 WL 1251192, at *4 (D. Colo. Jan. 2, 2025) (granting motion to dismiss state law claims against "broker and shipper" based on FAAAA preemption), *report and recommendation adopted in pertinent part*, No. 23-CV-00802-RM-SBP, 2025 WL 1250928 (D. Colo. Mar. 24, 2025); *McElroy Truck Lines, Inc. v. Moultry*, No. 3:23-CV-01056, 2024 WL 4593852, at *7 (M.D. Tenn. Oct. 28, 2024) (granting motion to dismiss on claims against broker and shipper as preempted by the FAAAA);

*(Footnote cont'd on next page)*

7

safety exception only applies to "specific legislation directed at motor carriers." *A.J.'s Wrecker Serv. of Dallas, Inc. v. Salazar*, 165 S.W.3d 444, 449-50 (Tex. App. 2005).

*Ye* explains why. "By limiting the safety exception to apply to state laws 'with respect to motor vehicles,' Congress narrowed the scope of the exception to [only] those laws concerning a 'vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation.'" *Ye*, 74 F.4th at 460 (quoting statutory definition). This narrow exception requires a *direct link* between the allegedly negligent broker or shipper and motor vehicle safety. *See id.*; *Aspen*, 65 F.4th at 1271. However, there is no "*direct* link between negligent hiring claims against brokers [or shippers] and motor vehicle safety." *Ye*, 74 F.4th at 460 (emphasis added). Because brokers and shippers do not own or operate the motor vehicles actually involved in the accident, "the relationship between [them] and motor vehicle safety will be indirect, at most." *Id.* at 461.

In other words, connecting a broker's or shipper's allegedly negligent actions to an accident requires *several* steps: (i) the broker or shipper allegedly negligently hires a motor carrier, (ii) the

---

*Pinder v. Lancer Ins. Co.*, No. 7:23-CV-53 (LAG), 2024 WL 4335913, at *4 (M.D. Ga. Sept. 27, 2024) (granting motion to dismiss and holding that claims against Wal-Mart were preempted by the FAAAA); *Bradley v. Big's Trucking*, No. 2:23-CV-122-ECM, 2024 WL 4045467, at *7 (M.D. Ala. Sept. 4, 2024) (granting summary judgment and holding that claims against a shipper were preempted by the FAAAA); *Schriner v. Gerard*, No. CIV-23-206-D, 2024 WL 3824800, at *6 (W.D. Okla. Aug. 14, 2024) (holding that state law claims against broker for vicarious liability and negligent selection of a motor carrier were preempted by the FAAAA); *PCS Wireless LLC v. RXO Capacity Sols., LLC*, No. 3:23-CV-00572-KDB-SCR, 2024 WL 2981188, at *1 (W.D.N.C. June 13, 2024) (holding that state law negligent brokering claim was preempted by the FAAAA); *Montgomery v. Caribe Transp. II, LLC*, No. 19-CV-1300-SMY, 2024 WL 129181, at *1 (S.D. Ill. Jan. 11, 2024) (same); *Girardeau v. Hobbs*, No. 4:21-CV-01265-MTS, 2023 WL 5348770, at *2 (E.D. Mo. Aug. 21, 2023) (same); *Mays v. Uber Freight, LLC*, No. 5:23-CV-00073, 2024 WL 332917, at *4 (W.D.N.C. Jan. 29, 2024) (same); *Tischauser v. Donnelly Transp., Inc.*, No. 20-C-1291, 2023 WL 8436321, at *5 (E.D. Wis. Dec. 5, 2023) (negligent hiring claims against broker and shipper not saved from FAAAA preemption by the safety exception); *Lee v. Golf Transp., Inc.*, No. 3:21-CV-01948, 2023 WL 7329523, at *16 (M.D. Pa. Nov. 7, 2023) (negligent hiring claims against shipper not saved from preemption by the safety exception).

motor carrier negligently entrusts a motor vehicle to a negligent driver, and (iii) the negligent driver gets into an accident that causes a plaintiff's injuries. *See id.* at 461-62. The connection between a broker or a shipper and "motor vehicles" is thus "too attenuated" for the safety exception to apply to state law negligence claims against brokers or shippers. *Id.*

Here, like in *Ye*, *Aspen*, and *A.J.'s*, the connection between Amazon's alleged negligence and motor vehicle safety is "too attenuated" to create a "direct link." As in *Ye*, Plaintiffs allege that Amazon Logistics negligently contracted with 3Y. (ECF 72 ¶ 54.) 3Y then allegedly "double broker[ed] the load to Carrazana in violation of their agreement with Amazon Logistics." (*Id.* ¶ 87.) Carrazana then "failed to exercise reasonable care in the management and operation of its commercial trucks, and failed to exercise reasonable care in the hiring, training, supervising and/or retaining of [Mr. Sarria]." (*Id.* ¶¶ 35, 43.) And Mr. Sarria was the Carrazana employee involved in the accident that caused Plaintiffs' claimed injuries. (*Id.* ¶ 16, 35, 40.) The connection here is even more attenuated than that in *Ye* and *Aspen*, as the Amazon Defendants did not hire Carrazana— 3Y did. Thus, regardless of Plaintiffs' specific claim (*e.g.*, negligent entrustment, failure to control, etc.)—the connection between the Amazon Defendants and the accident is too attenuated to save Plaintiffs' claims from preemption. *See Ye*, 74 F.4th at 460-61; *Aspen*, 65 F.4th at 1272.

Indeed, to find that claims with such a tenuous connection to motor vehicles "fall[] into the safety exception" would "swallow the preemption provision whole." *Mays*, 2024 WL 332917, at *4. It would prevent FAAAA preemption from applying to *any* entity—shipper, broker, or otherwise—that contracts with a motor carrier to transport a load. The FAAAA's safety exception thus does not apply. *See Ye*, 74 F.4th at 462 ("It is difficult to conclude that the same Congress that prescribed specific—often itemized—regulations for motor vehicle safety intended something broader than 'motor vehicle' in a safety exception that immediately follows an express preemption

9

provision regulating "motor carriers." So we draw the line where Congress did—at state safety regulations directly related to 'motor vehicles.'").

### III. The Court Should Reject *Miller*'s Flawed Interpretation of The Safety Exception.

The Ninth Circuit's contrary conclusion in *Miller* rests on a flawed reading of the safety exception. *See* 976 F.3d at 1031. Reading the phrase "with respect to" more broadly to mean "relating to," the Ninth Circuit held that "the FAAAA's safety exception exempts from preemption safety regulations that have a connection with motor vehicles, whether directly *or indirectly*." *Id.* at 1030 (emphasis added) (cleaned up). There are at least three flaws with this reading.

First, to reach this conclusion, the Ninth Circuit elevated the abstract "congressional purpose" of the statute over "the plain meaning and import of the text, both in § 14501(c) itself and throughout the rest of Title 49." *Ye*, 74 F.4th at 465. Second, the Ninth Circuit relied "on a presumption against preemption to resolve any ambiguity in the breadth of the safety exception's scope . . . in direct conflict with the Supreme Court's instruction to 'focus on the plain wording of the clause' instead of invoking any presumption against pre-emption." *Id.* (cleaned up); see *also Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 116 (2016) (When a "statute contains an express preemption clause, [courts] do not invoke any presumption against preemption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's preemptive intent" (quotation marks and citations omitted)). Finally, the Ninth Circuit is wrong that "with respect to" means "relating to." *Id.* Instead, under *Dan's City*, "with respect to" "more narrowly means 'concerns,'" a term that requires a *direct connection. Ye*, 74 F.4th at 465. Indeed, by giving "with respect to" the same meaning as "relating to," the Ninth Circuit's reading renders the phrase "with respect to motor vehicles" superfluous. *Aspen*, 65 F.4th at 1271.

In sum, *Ye* and *Aspen* offer a reading of the safety exception that is more faithful to the text of the FAAAA and accepted canons of statutory construction. *See Ye*, 74 F.4th at 461-65; *Aspen*,

65 F.4th at 1270-72. This is precisely why *Ye* and *Aspen*'s interpretation of the safety exception—not *Miller*'s—has been overwhelmingly adopted by federal courts nationwide since *Ye* and *Aspen* were decided.[3] Only one Texas federal court case decided after *Ye* and *Aspen* adopted *Miller*'s interpretation of the safety exception. *See Johnson v. Atlas Transport, LLC*, No. 23-cv-00471, 2024 WL 5423041, at *2 (W.D. Tex. Mar. 28, 2024). But it did so without engaging with *Ye*'s or *Aspen*'s analysis of the exception, and by incorrectly concluding that "the balance of authority weighs against preemption," based solely on cases that pre-date *Aspen* and *Ye*. *Id.* And every other Texas federal court case decided in the wake of *Ye* and *Aspen* have adopted their approach, rather than *Miller*'s. *See Patterson v. Hunt Perfection LLC*, No. 4:24-CV-830, 2025 WL 565024, at *4 (S.D. Tex. Feb. 20, 2025) (Hanen, J.); *Morales v. Ok Trans, Inc.*, No. 2:19-CV-00094, 2024 WL 3223675, at *5 (S.D. Tex. May 29, 2024) (Morales, J.), *motion to certify appeal granted*, No. 2:19-CV-00094, 2024 WL 3223676 (S.D. Tex. June 18, 2024); *Hamby v. Wilson*, No. 6:23-CV-249-JDK, 2024 WL 2303850, at *5 (E.D. Tex. May 21, 2024) (Kernodle, J.). That more persuasive interpretation dictates that the safety exception does not save Plaintiffs' claims against the Amazon Defendants. *See Aspen*, 65 F.4th at 1272.

### IV. Plaintiffs' Conclusory Allegation that Amazon Logistics Acted As a "Motor Carrier" Does Not Save Those Claims from Preemption.

Nor does Plaintiffs' bare conclusory allegation that "Amazon Logistics is also considered a motor carrier responsible for the load and driver" trigger the safety exception for Plaintiffs'

---

[3] *See, e.g.*, *Golf Transp.*, 2023 WL 7329523, at *14-16 (adopting *Aspen*'s reasoning and rejecting *Miller*'s); *Hamby*, 2024 WL 2303850, at *5 (adopting *Aspen*'s and *Ye*'s reasoning and rejecting *Miller*'s); *Tischauser*, 2023 WL 8436321, at *5 (adopting *Ye*'s reasoning); *Montgomery*, 2024 WL 129181, at *1 (relying on *Ye*); *Girardeau*, 2023 WL 5348770, at *1-2 (same); *Mays*, 2024 WL 332917, at *4 (same); *PCS Wireless*, 2024 WL 2981188, at *1 (same); *Farfan*, 744 F. Supp. 3d at 769-70 (same); *Schriner*, 2024 WL 3824800, at *6 (same).

11

claims against Amazon Logistics.[4] (ECF 72 ¶¶ 35, 37.) Judge Hanen rejected an identical argument in *Farfan*.

There, as here, the plaintiffs sought to avoid preemption by alleging that Old Dominion "simultaneously (1) contract with the motor carrier, Just Van, and (2) acted as a motor carrier itself." *Farfan*, 744 F. Supp. 3d at 766. And there, as here, the plaintiffs pointed to Old Dominion's DOT motor carrier number as proof that it was acting as a motor carrier. *Compare id.*, *with* (ECF 72 ¶ 19 ("Amazon Logistics is assigned a unique identification number by the U.S. Department of Transportation . . . .")). Judge Hanen dismissed this allegation as "a false legal conclusion that the Court [could not] accept as true," because the remainder of the complaint made clear that Old Dominion "was acting as a broker rather than a motor carrier" for the load involved in the accident. *Farfan*, 744 F. Supp. 3d at 767. In particular, the plaintiffs there—like Plaintiffs here—"clearly allege[d] that [Old Dominion] identified and contracted with Just Van to haul the load." *Id.* In Judge Hanen's view, "[t]his is exactly what a broker does." *Id.* In other words, having alleged that Old Dominion negligently selected another motor carrier to carry the load (Just Van), Plaintiffs could not *also* allege that Old Dominion was acting as the motor carrier for the load. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

So too, here. As in *Farfan*, the gravamen of Plaintiffs' claims against the Amazon Defendants is that they negligently selected and supervised 3Y as the motor carrier for the load involved in the accident. (*See* ECF 72 ¶¶ 14-34, 46-73.) That is precisely what a shipper does. *See* 49 CFR § 376.2(k) (defining a shipper as "[a] person who sends or receives property which is

---

[4] Plaintiffs do *not* allege that the other Amazon Defendants—Amazon.com Services Inc. or Amazon.com, Inc.—acted as a motor carrier for the load in question.

transported in interstate or foreign commerce"). Simply put, a shipper is "the entity that purchases the transportation services of the carrier." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 59 (2d Cir. 2012) (emphasis added). That is what the Amazon Defendants did here: The load involved in the accident was "contracted by Amazon Logistics to Defendant 3Y." (ECF 72 ¶ 37.) As Plaintiffs admit, 3Y was "the assigned carrier" and thereby "considered a motor carrier responsible for the load and driver." (*Id.* ¶ 35.) Thus, as in *Farfan*, the Court should reject Plaintiffs' contrary assertion as "a false legal conclusion that the Court cannot accept as true." 744 F. Supp. 3d at 767.[5]

## CONCLUSION

At bottom, all of Plaintiffs' claims against the Amazon Defendants "relate[] to a price, route, or service of any motor carrier . . . or . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). And the connection between the Amazon Defendants and the accident is too attenuated for any of Plaintiffs' claims to be saved by the FAAAA's safety exception. Those claims are therefore preempted and should be dismissed with prejudice.

Dated this 13th day of May, 2025.

---

[5] The fact that Amazon Logistics acted as the shipper (rather than the broker) for this load does not lead to a different result either. In *Rowe*, the U.S. Supreme Court extended the FAAAA's preemption provision to state regulations that told "shippers what to choose rather than carriers what to do" because it affected the services that carriers had to provide. *Rowe*, 552 U.S. at 372. Since *Rowe*, federal courts nationwide have consistently held that the FAAAA preempts negligence claims against shippers based on the allegedly negligent selection of motor carriers or their routes. *See, e.g.*, *HMD Am. Inc., f/u/b/o Certain Far E. Underwriters with Fubon Ins. Co., Ltd. v. Q1, LLC*, No. 23-21865-Civ-Scola, 2024 WL 167374, at *3 (S.D. Fla. Jan. 16, 2024) (rejecting argument "that the FAAAA doesn't apply to [the defendant] because [it was] a shipper and not a licensed broker" because the plaintiff's claim "relate[d] to [the defendant's] alleged negligence in arranging for the transportation of cargo and . . . alleged negligent selection of a motor carrier"); *Lee v. Werner Enters., Inc.*, No. 3:22 CV 91, 2022 WL 16695207, at *4 (N.D. Ohio Nov. 3, 2022) ("[N]egligence claims brought against a shipper and broker 'fall squarely within the preemption of the FAAAA.'"); *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 813 & n.6 (N.D. Ohio 2018) (same).

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

*/s/ Patrick W. Drouilhet*
John Bridger
Texas Bar No. 02975860
john.bridger@wilsonelser.com
Patrick W. Drouilhet
Texas Bar No. 00783985
Federal ID 5711
Patrick.drouilhet@wilsonelser.com
909 Fannin Street, Suite 3300
Houston, TX 77010
Telephone: 713.353.2000
Facsimile: 713.785.7780

*Attorneys for Defendant Amazon Logistics, Inc., Amazon.com Services, LLC, and Amazon.com, Inc.*

## CERTIFICATE OF CONFERENCE

Counsel for Amazon Logistics, Inc., Amazon.com Services, Inc., and Amazon.com, Inc., conferred with Plaintiffs' counsel regarding this motion as required by Western District of Texas Local Rule CV-7(G). Plaintiffs' counsel opposes the motion. The parties have discussed the motion in good faith.

*/s/ Patrick W. Drouilhet*

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument was electronically served on all counsel of record, in accordance with the Federal Rules of Civil Procedure on this May 13, 2025.

*/s/ Patrick W. Drouilhet*