UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHAN LEYVA and HOLLY LITTRELL, INDIVIDUALLY and as Next Friends of Minor Children, A.L., K.L. and J.L., Plaintiffs | § § § § § | |
| V. | § § | CIVIL NO. 1:24-CV-00209-ADA |
| CARRAZANA TRUCKING, LLC, AMAZON LOGISTICS, INC., ALBERTO MEDINA SARRIA, 3Y TRUCKING, LLC, AMAZON.COM SERVICES LLC, AMAZON.COM INC., Defendants | § § § § § § § | |

**PLAINTIFFS' RESPONSE TO AMAZON DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs' claims against the Amazon Defendants ("Amazon") are not preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). The legal historical landscape, United States Supreme Court guidance, relevant case law from the Fifth Circuit, and examples from other Federal District Court cases support Plaintiffs' position that preemption is inappropriate. Even if preemption was considered by the Court, preemption would still not apply to the facts of this case. Finally, Plaintiffs' allegations that Amazon Logistics acted as a motor carrier are not conclusory, and Amazon's contention that vicarious liability claims are preempted by the FAAAA is contrary to the great weight of authority and reasoning.

## II. LEGAL STANDARD

When considering a defendant's motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff. *Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). If the complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555–56; *Woods v. City of Greensboro*, 855 F.3d 639, 652–53 & n.9 (4th Cir. 2017); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III. ARGUMENT

**A.      Legal Historical Landscape Related to Transportation Preemption**

In 1978, Congress began its efforts at transportation deregulation starting with airlines via the Airline Deregulation Act (ADA). Congress included a preemption clause "prohibiting States from enacting or enforcing any law 'related to a price, route, or service of an air carrier.'" *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 255-56 (2013) (quoting 49 U.S.C. § 41713(b)(1)).

In 1980, Congress deregulated the trucking industry via the Motor Carrier Act ("MCA"). *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). Although the ADA preempted economic regulation of air carriers, the MCA did not give motor carriers similar protection, and motor carriers affiliated with air carriers (like FedEx) enjoyed an unfair advantage over competitors not associated with air carriers (like UPS). H.R. Conf. Rep. No. 103-677 (hereinafter "Report 103-677") (1994) at 87.

In 1994, Congress completed its deregulation of transportation by passing the FAAAA, *Dan's City,* 569 U.S. at 256, to "level the playing field" between air and motor carriers so both

would benefit equally from federal deregulation. Report 103-677 at 82, 87-88. Congress intended motor carriers to enjoy "the identical intrastate preemption of prices, routes and services as that originally contained in" the ADA. *Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364*, 370 (2008).

The FAAAA's preemption clause states:

> … [A] State...may not enact or enforce a ... provision having the force and effect of law related to a price, route, or service of any **motor carrier**..., **broker**, or **freight forwarder** with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added). However, it contains a savings clause:

> "[Section 14501(c)(1)] shall not restrict the safety regulatory authority of a State with respect to motor vehicles...."

49 U.S.C. § 14501(c)(2)(A).

Amazon's argument that each of the three Amazon entities are protected by the preemption provision (regardless of whether they have motor carrier or broker status is contrary to Supreme Court precedent, Fifth Circuit precedent, as well as the most well-reasoned Texas District Court decisions.

B.     United States Supreme Court Case Guidance

*City of Columbus v. Ours Garage & Wrecker Serv., Inc*., 536 U.S. 424 (2002) concerned the above preemption and savings clause in addressing the question of whether a *city* regulation (as opposed to a state regulation) was covered by the Savings Clause even though the Savings Clause was limited to "regulatory authority of a *State*." The Court recognized that "Preemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress,'" and that Section 14501(c)(2)(A) seeks to save from preemption state power "in a field which the States have traditionally occupied." *Id*. at 438.

The general rule of construction is that where Congress includes language in one section and excludes it from another, it is presumed Congress intended the exclusion. The Court however determined that based on the Congressional purpose and legislative history, it was not appropriate to give the Savings Clause the narrowest interpretation possible by applying the rule. *Ours Garage* at 433-34, 440-41. They specifically noted and emphasized that the problem Congress was addressing was "[s]tate *economic* regulation", and the exemption was to specifically allow state safety regulation of motor vehicles. *Id.* at 440-41. Omitting political subdivisions from the language of the Savings Clause did not show "the requisite 'clear and manifest indication that Congress sought to supplant local authority.'" *Id*. at 434. Also, the fact that Congress included § 31141 which authorizes the Secretary of Transportation to void any state safety law that burdens interstate commerce means that a broad reading of the Savings clause will not defeat the purpose of the act. *Id*. at 441.

In *Dan's City* the Court addressed the breadth of the phrase "with respect to the transportation of property" in the preemption clause, but also addressed the scope of the phrase "related to" services provided by federally authorized motor carriers and brokers. The Court found that what a carrier did regarding property after transport did not relate to its services. In so finding, the Court noted that the words "relate to," while broad, do not mean the sky's the limit, and it does not include laws affecting services in a peripheral manner. *Id*. at 260-61. Thus, they held that what a motor carrier does with property after the transport is finished does not "relate" to their services.

As noted above, Congress intended the FAAAA preemption to be identical to the ADA. The Supreme Court expressed its view on whether the ADA preempts state law personal injury claims in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995). All eight participating Justices

agreed the ADA would not preempt personal-injury claims. *Id*. at 231 n.7 (majority), 234 n.9 (majority), 235 (Stevens, J., dissenting), 242-243 (O'Connor, J., concurring in part and dissenting in part).

Similarly, when C.H. Robinson appealed the Ninth Circuit's judgment in *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020) (finding common law negligence claims against brokers are not preempted), the Supreme Court invited the United States to file an amicus brief stating its position on the FAAAA's preemptive scope. *C.H. Robinson Worldwide, Inc. v. Miller*, 142 S. Ct. 65 (2021). The United States (including the DOT and FMCSA, EX 1) agreed that "the FAAAA does not preempt a State's authority to regulate safety with respect to motor vehicles through the State's imposition of common-law duties, including by imposing safety requirements on freight brokers in the selection of motor carriers." EX. 1, p. 6. It also stated that common law negligence claims against brokers are not "related to" a broker's service, noting its similar position in *Wolens*. EX. 1, pp.7-8, [FN1]. The Court then denied Robinson's petition for writ of certiorari. *C.H. Robinson Worldwide, Inc. v. Miller*, 142 S. Ct. 2866 (2022). While not conclusive, courts should give "due respect for Executive Branch interpretations of federal statutes." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024).

Therefore, Plaintiffs submit the weight of Supreme Court authority supports denial of Amazon's motion.

**C.     Relevant Fifth Circuit Preemption Cases**

The Fifth Circuit has considered the ADA's preemption provision as applied to state tort actions like negligence. *See Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995) (en banc). In *Hodges*, the Fifth Circuit held that "federal preemption of state laws, even certain common law actions 'related to services' of an air carrier, does not displace state tort actions for personal

physical injuries or property damage caused by the operation and maintenance of aircraft." *Id.* at 336. A passenger had been injured when a heavy box, dislodged by another passenger, fell from an overhead bin and struck her. *Id.* at 335. She then sued the airline for negligence. *Id.* The court found that "services," as used in the federal preemption provision, concerned features of air transportation like "boarding procedures," "baggage handling," and "the transportation itself." *Id.* While Congress had intended to deregulate these features of air travel, it had not intended to "displac[e] state tort law." *Id.* at 337. The court recognized that "any state tort claim may 'relate to' services as a result of its indirect regulatory impact on the airline's practices," but that interpretation would yield absurd results. *Id.* at 337–38. "Taken to its logical extreme, this argument would suggest that a lawsuit following a fatal airplane crash could relate to 'services.'" *Id.* at 338.

Given the intertwined interpretation of the preemption provisions for air and surface transportation, the Fifth Circuit's decision in *Hodges* is authority for the present question. The Fifth Circuit rejected the expansive construction of "services" urged by Amazon, and it permitted a common law negligence injury claim to proceed. As such, the ruling in *Hodges* weighs strongly in favor of allowing Plaintiffs' claims to proceed here.

Of note also is the fact that *Hodges* discussed the idea that insurance requirements suggest the allowance of state tort claims. *Ye,* relied on heavily by Amazon, dismissed that point on the grounds that brokers are not required to carry insurance. *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 463 (7th Cir. 2023) (involving an FMCSA authorized broker). In this case, however, Amazon Logistics does not have Broker Authority. Amazon Logistics is an authorized federal Freight Forwarder. *See* EX. 2. Freight Forwarders have similar insurance requirements to Motor Carriers to cover "**each final judgment against the freight forwarder for bodily injury to, or death of,**

**an individual**…." 49 U.S. Code § 13906(c)(3)(B) (emphasis added). Clearly Congress intends that Motor Carriers and Freight Forwarders like Amazon have no preemption from state common law claims for injury or death.

The Fifth Circuit's jurisprudence in the adjacent realm of railroad regulation strengthens this conclusion. *See Elam v. Kansas City So. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011). In *Elam*, the Fifth Circuit considered whether federal law preempts state-law negligence claims against rail carriers. *Id.* at 804. The Interstate Commerce Commission Termination Act of 1995, as already noted, contained preemption provisions for air and motor carriers. Employing similar language, it also vested exclusive jurisdiction "with respect to rates, classifications, rules, practices, routes, services, and facilities of [rail] carriers" in the federal Surface Transportation Board, thereby preempting equivalent state regulation. *Id.* at 804–05 (quoting 49 U.S.C. § 10501(b)). At issue in *Elam* was a common law negligence claim against a railroad, arising from the collision of a car and a train, which the railroad challenged on preemption grounds. *Id.* at 801, 804. The Fifth Circuit drew an instructive distinction between a *per se* negligence claim and a common law negligence claim. The negligence *per se* claim was based on a Mississippi "antiblocking" statute, which limited the span of time that a train could obstruct a highway or street. *Id.* at 807 (citing MISS. CODE § 77-9-235). The Fifth Circuit found that the effect of this negligence *per se* claim was "to economically regulate [the railroad's] switching operations," and so it was completely preempted. *Id.* at 807–08. The simple negligence claim, however, was not an "attempt to manage or govern a railroad's decisions in the economic realm." *Id.* at 813. Finding no evidence that "specific burdens" on the railroad's operations would result from the negligence claim, the court held that it was not preempted. *Id.* at 813–814. That is particularly relevant here where Amazon has offered no evidence of any specific burden here.

The Fifth Circuit's decisions in *Hodges* and *Elam* share a common foundation: the principle that states retain their police powers to protect the health and safety of their citizens, unless the "clear and manifest purpose of Congress" is to the contrary. *Hodges*, 44 F.3d at 338 (quoting *California v. ARC America Corp.*, 490 U.S. 93, 102 (1989). *See also Elam*, 635 F.3d at 813 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). Based on that foundation, the Fifth Circuit's careful distinctions in *Hodges* and *Elam*, and the fact that *Ye* analysis does not apply to Freight Forwarders like Amazon, this Court should find Plaintiffs' negligence claims against all Amazon entities are not preempted.

The Fifth Circuit has also routinely construed the safety exception broadly in other contexts besides common law negligence. *See VRC LLC v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006) (discussing the broad construction given to the safety exception in a case involving municipal safety regulations); *see also Cole v. City of Dallas*, 314 F.3d 730 (5th Cir. 2002) (relying on *Ours Garage*). Finally, the Fifth Circuit has agreed to hear the case of *Myer et. al. v. Liberty Lane et. al.*, Case No. 25-40012, originating from the Southern District of Texas (2:19-CV-94), in which one of the issues is whether the trial court was correct in finding FAAAA preemption of a claim against a Broker for negligent hiring of a Motor Carrier. In that case, Appellant's brief was filed on May 16, 2025, and an extension was granted to Appellees until July 16, 2025.

The Fifth Circuit's analysis is also consistent with the stated purposes of FAAAA which include:

> …. it is the policy of the United States Government to oversee the modes of transportation and—
>
> (1) in overseeing those modes—
>
> > (B) **to promote safe**, adequate, economical, and efficient **transportation**;
>
> (2) in overseeing transportation by motor carrier, to promote competitive and efficient transportation services in order to—

>  (C) meet the needs of shippers, receivers, passengers, and consumers;
>
>  (I) improve and maintain a sound, **safe**, and competitive privately owned **motor carrier system**;

*See* 49 U.S.C. §13101 (emphasis added). Consequently, Plaintiffs submit that the Fifth Circuit cases are consistent with these safety concerns and compel a finding of no preemption.

**D.     Federal District Court Examples**

The Federal District Court opinions on this issue are too numerous to discuss individually, but there are some that should be discussed. Amazon relies heavily on *Farfan v. Old Dominion Freight Line, Inc.*, 744 F. Supp. 3d 763, 767-70 (S.D. Tex. 2024). Plaintiffs submit that because *Farfan* analyzed neither *Hodges* and *Elam*, nor the preemption principles and legislative intent required by the Supreme Court in *Dan's* or *Ours Garage,* it is an incorrect decision. Further, *Farfan* relies on the *Ye* insurance argument which, as noted previously, has no application to Freight Forwarders like Amazon. Also, *Farfan* cites the Louisiana case *Bertram v. Progressive Se. Ins. Co*., No. 2:19-CV-01478, (Doc 110), 2021 WL 2955740, at *2 (W.D. La. July 13, 2021) (attached as EX. 3), which found no preemption, but then goes on to disagree with it. *Bertram*, however, correctly included a detailed analysis of the Supreme Court and Fifth Circuit decisions, finding no preemption. Even as recently as June 5th of this year, another Louisiana District Court, this time from the Middle District, compared *Farfan* and *Bertram* and rejected the *Farfan* analysis as a hyper technical reading which ignored Supreme Court and Fifth Circuit precedent. *See General Security National Ins. Corp. v. Otto Salvador Celi, Sr, et al.*, NO. 23-1682-JWD-SDJ (Doc 65) at *16 (M.D. La. June 5, 2025) (attached as EX. 4).

Plaintiffs submit that the better analysis is found in Texas District Court cases which do a complete analysis of controlling opinions like *DNOW, L.P. v. Paladin Freight Sols., Inc.*, No. 4:17-CV-3369, (Doc 14), 2018 WL 398235 (S.D. Tex. Jan. 12, 2018) (finding no preemption after a

detailed analysis of Supreme Court and Fifth Circuit authority) (attached as EX. 5). *See also, Reyes v. Martinez*, No. EP-21-CV-00069-DCG, (Doc 17), 2021 U.S. Dist. LEXIS 101262, at *14-19 (W.D. Tex. May 28, 2021) (negligent-selection claim against broker not preempted because it too tenuously affected broker's service and falls under motor-vehicle safety exception) (attached as EX. 6); and *Popal v. Reliable Cargo Delivery, Inc.*, No. P:20-CV-00039-DC, (Doc 76), 2021 U.S. Dist. LEXIS 57592, at *10-11 (W.D. Tex. Mar. 10, 2021) (negligent-selection claim against broker falls under motor-vehicle safety exception) (attached as EX. 7).

Amazon also takes the position that only one Texas case after *Aspen* and *Ye* has found that these claims are not preempted. First, this is incorrect. *Brown v. Minnaar*, 2:23-CV-002-Z-BR (Doc. 55) (N.D. Tex. May 22, 2023) (Magistrate opinion adopted) was decided after *Aspen*, analyzed relevant Fifth Circuit and Supreme Court law and found no preemption. *See* EX. 8. Also, in *Brown* they note that the majority of recent opinions favor no preemption. Rather than follow cases like *Ye*, which do not recognize that Freight Forwarders have the same insurance provisions and expectation of civil liability at common law under the FAAAA, analysis like that in *Brown, Bertram, DNOW, and General Security* which examine Fifth Circuit authority provides the most reliable conclusions.

Also, *Meek v. Toor*, No. 2:21-cv-0324-RSP (Doc. 108) (E.D. Tex. Mar. 5, 2024) was decided after both *Aspen* and *Ye* and correctly analyzed the preemption question as discussed by Supreme Court and Fifth Circuit cases on the matter and found common law claims were not preempted, and even if they were they would fall under the saving clause. *See* EX. 9.

Similarly, in the case of *Johnson v. Atlas Transport, LLC*, No. 23-cv-00471 (Doc 14), 2024 WL 5423041, at *2 (W.D. Tex. Mar. 28, 2024) (attached as EX. 10), which Amazon claims is the only Texas case to deny preemption since *Ye* and *Aspen*, seems to disagree with Amazon's

assessment. After a brief discussion of *Ye, Aspen* and *Miller*, the Court notes that "More recent trends from Texas district courts support a finding against preemption regarding common law tort claims." *Id.* at *3.

Second, Amazon knows that more than one Texas case has denied preemption since *Ye* and *Aspen*, because Amazon has had its own preemption motions denied since *Ye* and *Aspen*. *See Johson v. Herbert* et. al., 699 F.Supp.3d 523 (E.D. Tex. Oct. 20, 2023) (analyzing relevant Supreme Court authority and determining no preemption and denying Amazon's motion for Summary Judgment). *Johnson* is also of note because it specifically said that it did not matter if Amazon was a shipper or broker because they could be liable for negligent hiring regardless of their role. *Id.* at *12 n.8, 13.

**E.     Even if there was FAAAA Preemption, it would not apply to the facts of this case.**

As noted above, no Amazon entity had Federal Broker authority, and only Amazon Logistics has Motor Carrier and Freight Forwarder authority. So, no FAAAA preemption would apply to Amazon.com or Amazon.com Services because they are not controlled by FAAAA.

Similarly, as discussed previously, Amazon Logistics has Freight Forwarder Authority, not Broker authority. When you examine Amazon's activities in relation to logistics it is clear their conduct is that of a Freight Forwarder and not a Broker as defined by the FMCSA.

"A motor carrier operates commercial motor vehicles (CMV's) to transport property, passengers, or hazardous materials (HAZMAT) and is involved in commerce (transportation related to a business). It could be a company with several power units, or it could be an owner-operator." See https://www.fmcsa.dot.gov/faq/what-are-definitions-motor-carrier-broker-and-freight-forwarder-authorities. "A **freight forwarder** organizes shipments for individuals or corporations. Freight forwarders assemble and consolidate shipments and provide for break-bulk

and distribution of shipments. Unlike Brokers, Freight Forwarders assume responsibility for the transportation and may transport the freight itself. Therefore, they are involved directly or indirectly with the cargo." *Id,* (emphasis added). "A **broker** is the "middle person" between a shipper and a motor carrier. Brokers arrange for the transportation of property or household goods. They don't transport the property, don't operate motor vehicles or have drivers, and don't assume responsibility for the cargo being transported. Hence, they don't directly engage with it." *Id,* (emphasis added).

Because no Amazon entity had Broker Authority, and because the conduct of the Amazon entities in causing this particular accident goes infinitely beyond the recognized scope of being a Broker as defined by the FMCSA, they have no right to claim any preemption that a Broker may have. The authority that Amazon Logistics applied for and received from the FMCSA was Freight Forwarder Authority (in addition to its Motor Carrier authority). As to Freight Forwarders, based on the Supreme Court, Fifth Circuit and Texas District Court opinions discussed earlier, and based on the fact that the statutes insurance requirements require Freight Forwarders to maintain insurance for personal injury and death, Plaintiffs submit there is no preemption as to Freight Forwarders.

Also, the detailed control that Amazon exercises in its operation of its Fulfillment Centers from which they distribute goods from tens of thousands of suppliers around the world is markedly different from the facts in any of the cases granting preemption cited by Defendants. Amazon maintains Amazon Fulfillment Centers which store the goods you see on the Amazon website. It uses a combination of its own fleet of about 15,000 trucks, some UPS and Fed Ex trucks, and a Middle Mile trucking network it set up of trucks operating under its Relay App program. They require anyone participating in the Relay App Program to use the Relay App. Through the Relay

App, Amazon directly controls the conduct of the drivers who haul Amazon trailers from Fulfillment Center to Fulfillment Center (ECF 72 ¶¶ 18-23). Through the Relay App, Amazon controls the details of Relay App carrier and driver conduct.

For drivers, their control includes but not limited to: 1) dictating the route the truck is to follow, 2) monitoring the trucks speed and other unsafe driving like hard braking and notifying the drivers to alter their conduct in real time, 3) monitoring the weather and instructing them to slow down in rain, fog or other difficult weather, 4) requiring drivers to complete each of the events Amazon sets up for a particular trip and to complete the deliveries within one minute of the Amazon required time, 5) monitoring the length of any stops the driver makes on a trip and contacting the driver if he exceeds an Amazon allotted stop time, and 6) based on the data Amazon collects on the drivers while they are driving, Amazon retains the sole discretion to suspend or retrain the drivers (ECF 72 ¶¶ 21-23; 26).

For Amazon Relay Carriers, their control includes but is not limited to requiring the carriers to: 1) use the Relay App, 2) carry certain levels of insurance name Amazon as an additional insured, 3) meet certain FMCSA safety scores, 4) file with Amazon the number of tractors, trailers and drivers they have and identify the tractors and trailers by license plate, 5) file with Amazon a list of each driver they have driving for them and their qualifications, 6) accept tendered trips and not cancel trips they have booked, and 7) assign a listed driver at least five hours before Amazon's scheduled start time for the trip. They grade their carriers based on the selected metrics they keep, and as a carrier deviates from Amazon's goals their grade will decrease, giving them less access to trips and eventually suspending them if they do not meet delivery requirements (ECF 72 ¶¶ 20-21, 26).

This massive motor carrier logistics operation is unlike any of the cases cited by Defendants. Given the fact that improving safety was one of the goals of the FAAAA, it is unlikely they would give preemption from common law claims to the world's largest logistics carrier while it allows unsafe carriers, improperly licensed truck and unlicensed drivers to haul their trailers around the country on American highways.

Amazon's conduct is also a direct cause of this accident, as noted in (ECF 72 ¶¶ 28-38). Amazon exercised detailed control over the carrier, 3Y, and the driver, Sarria. As to Sarria, Amazon's control functioned in real time while he was driving the trip in question through its monitoring of his stops to make sure he did not exceed his allotted stoppage time, setting the route, and telling him to make changes due to speeding, weather and other things. Additionally, Amazon allowed 3Y to book the trip even though it knew 3Y did not meet Amazon's safety requirements. Further, Amazon knew the trip was assigned to a driver named Genny Lopez, but allowed Sarria to enter and pick up the trailer. Amazon knew or should have known when he checked into the fulfillment center that Sarria did not have a CDL, but they allowed him to drive off with the trailer anyway. Also, the truck that Sarria was driving did not have 3Y's DOT number on it. Amazon knew from their optical character recognition ("OCR") cameras that the number on the truck was not the correct DOT number when it pulled in. Amazon also has a record of the license plate of the truck that is supposed to pick up the trailer from its fulfillment center, but instead they let Sarria in while driving a truck with an expired temporary license plate. (ECF 72 ¶¶ 47-54). 3Y having another carrier haul its loads while sharing the fees is a dangerous practice called Double brokering which Amazon also routinely allowed.

Also, Amazon.com Services was responsible for monitoring the fulfillment center operations, analyzing the data Amazon maintained on carriers, drivers and accidents, and

implementing safety procedures to prevent things that lead to accidents. As a result of their analysis, years before this accident they identified problems like booking loads with carriers who did not meet their safety requirements, double brokering, unsafe carriers and incorrect drivers as safety problems causing accidents. They also identified ways to eliminate these problems that caused this accident (for example, checking the driver's license at the gate), and shared all of this information with Amazon Logistics and Amazon.com. No one took action to stop the problem despite these practices causing tens of thousands of accidents. (ECF 72 ¶¶ 32, 34, 59-66).

Amazon.com was negligent in its management and control of the Amazon logistics network through Amazon Logistics and Amazon.com Services as set out in ECF 72 ¶¶ 14-18, 20, 53, 68-69. Because the Defendants can point to no case giving preemption to a logistics operation of this magnitude and this level of control over drivers and carriers, the Supreme Court, Fifth Circuit and District Court cases cited by Plaintiffs are even more compelling and should be followed.

**F.       Plaintiffs' allegations that Amazon Logistics acted as a motor carrier are not conclusory.**

As noted above, the conduct of Amazon goes far beyond the definitions of a broker. It also goes far beyond the definition of a "shipper." A shipper is defined as "The person (customer) whose goods are being moved." https://www.fmcsa.dot.gov/protect-your-move/glossary. Here, Amazon is not moving any goods, it is an empty trailer. More importantly, there is no bill of lading identifying Amazon as the shipper (pursuant to 49 C.F.R. pt. 375, there would have to a be a bill of lading identifying Amazon as the shipper). The reason there is no bill of lading is they are not transporting any goods. They are moving the trailer as part of their logistics operation from one Fulfillment Center where it had dropped goods from its last shipment to another where it would

be filled with goods to deliver to another Fulfillment Center and ultimately to consumers throughout the country. (ECF 72 ¶¶ 18-23, 26). So, Amazon cannot be a broker or a shipper. (Note, even if they were a shipper, the FAAAA has no provision for preemption of claims against a shipper, although, depending on the facts, an innocent shipper may be able to get a summary judgement on liability).

Additionally, Plaintiffs specifically set out the factual and statutory scenario that makes Amazon Logistics a motor carrier and Sarria their statutory employee. (ECF 72 ¶¶ 19-34, 37). In the early Twentieth Century, motor carriers developed a practice of using non-owned vehicles to augment their fleets. *Am. Trucking Ass'ns v. United States*, 344 U.S. 298, 303 (1953). Carriers thereby "attempted to immunize themselves from the negligence of the drivers who operated their vehicles by making them all nominally 'independent contractors.'" *White v. Excalibur Ins. Co.*, 599 F.2d 50, 52 (5th Cir. 1979).

This practice spawned a variety of vices, *Am. Trucking Ass'ns*, 344 U.S. at 303-05, including "abuses and evasions of certificated authority and of safety requirements, difficulties in the fixing of the lessee's responsibility, and other problems," *Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.*, 423 U.S. 28, 37 (1975). Independent contractors often failed to comply with safety regulations, and carriers had "little opportunity or desire to inspect the equipment used" and failed to "extend the supervision of rest periods, doctors' certificates, brakes, lights, tires, steering equipment and loading, normally accorded [their] own employees and vehicles." *Am. Trucking Ass'ns*, 344 U.S. at 305. "Further, the absence of written agreements...made the fixing of the lessee's responsibility for accidents highly difficult," *id.*, resulting in a "round robin of finger pointing by carriers, lessors, owners and drivers, and insurers," *Jackson v. O'Shields*, 101 F.3d 1083, 1084 (5th Cir. 1996).

To eliminate this problem, Congress created the Statutory Employer Doctrine. 49 U.S.C. § 14102(a). It provides that the Secretary of Transportation "may require a motor carrier providing [interstate] transportation...that uses motor vehicles not owned by it to transport property under an arrangement with another party" to, among other things, (1) reduce the arrangement to writing, (2) inspect and insure the vehicles, and (3) "have control of and be responsible for operating th[e] motor vehicles...." 49 U.S.C. § 14102(a). This "Control Statute" was enacted to ensure motor carriers using non-owned vehicles would supervise and control their operation and be liable to the public for injuries caused by their use. *Price v. Westmoreland*, 727 F.2d 494, 496 (5th Cir. 1984); *White*, 599 F.2d at 52-53. Carriers may not evade the requirement by failing to enter a complying written lease and one will be implied even if it does not exist. Under this doctrine, multiple authorized carriers can share control of and responsibility for the vehicle, there can be multiple motor carriers on the same shipment, and multiple carriers can be vicariously liable for the same driver's negligence. *Simmons v. King*, 478 F.2d 857, 867 (5th Cir. 1973); *Zamalloa v. Hart*, 31 F.3d 911, 914-16 (9th Cir. 1994); *Puga v. About Tyme Transp., Inc.*, 227 F. Supp. 3d 760, 764-65 (S.D. Tex. 2017).

Here Amazon maintains numerous fulfillment centers around the country containing goods from all over, and they obligate themselves to deliver these goods to the people who purchase them on their website. To meet that obligation, Amazon created its Relay App Network of Carriers that routinely allows unsafe drivers and carriers (like 3Y and Sarria) to haul Amazon trailers. Contrary to the Statutory Employment doctrine they want to evade liability for the unsafe drivers because they have no written lease agreement. This is not allowed under the doctrine, and Plaintiffs' allegations outlining the carrier network Amazon created are sufficient to invoke the statutory

employment doctrine. The allegations discussed herein clearly set out the factual basis for a claim that Amazon is the Statutory Employer.

**G.     Amazon's contention that Plaintiffs' allegations of vicarious liability through control and agency are preempted has virtually no legal support.**

Amazon does not challenge the sufficiency of these allegations, but only contends that even where a broker or anyone else exercises direct control over a carrier to whom it brokered a load, it is still preempted, relying on *Ye*, *Aspen*, and *Miller*. This reliance is misplaced. Those opinions did not address vicarious liability through control or agency. They were restricted to negligent selection claims. Even the trial court in *Ye* found that vicarious liability claims were not preempted and the claim went forward to conclusion in the trial court on its merits. *Ye v. Glob. Sunrise, Inc.*, No. 1:18-CV-01961 (Doc 74) (N.D. Ill. Mar. 4, 2020) (attached as EX. 11). Amazon also cites *Schriner v. Gerard*, No. CIV-23-206-D, 2024 WL 3824800, at *6 (W.D. Okla. Aug. 14, 2024) which did hold that vicarious liability claims were preempted. The more reasoned cases however are cases like *Mendoza v. BSB Transp., Inc.*, Case No. 4:20-CV-00270-CDP (Doc 97) (E.D. Mo. Oct 26, 2020) (noting that "As Congress excluded [motor carriers] from the FAAAA's preemption rule, it follows that a principal can be liable for its agents' negligent operation of a motor vehicle.") (attached as EX. 12); *Ciotola v. Star Transp. & Trucking, LLC*, 481 F.Supp.3d 375 (M.D. Pa. Aug. 24, 2020) (noting also that the determination of whether a party is a broker or motor carrier is a fact intensive inquiry); *Johson v. Herbert* et. al., 699 F.Supp.3d 523 (E.D. Tex. Oct. 20, 2023) (finding vicarious liability claim not preempted). Based on the reasoning of cases like *Mendoza*, because *Ye*, *Aspen* and *Miller* do not exclude vicarious liability claims, and because the majority of District Courts (including the *Johnson* decision from Texas) conclude they are not preempted, Plaintiffs submit the motion should be denied as to vicarious liability claims.

## IV. CONCLUSION

Plaintiffs' claims against the Amazon Defendants are not preempted. The legal historical landscape and relevant case law support Plaintiffs' position that preemption is inappropriate. Even if preemption was considered by the Court, preemption would still not apply to the facts of this case. Finally, Plaintiffs' allegations that Amazon Logistics acted as a motor carrier are not conclusory, and Amazon's preemption motion regarding Plaintiffs' allegations of vicarious liability through control and agency is virtually unsupported. Plaintiffs' complaint provides fair notice of the claims against the Amazon Defendants, and the factual allegations are sufficient to show that the right to relief is plausible. The Amazon Defendants' Motion to Dismiss (ECF 80) should be denied in its entirety.

Respectfully submitted,

/s/ James B. Ragan
James B. Ragan
Federal ID No. 696
Texas Bar No. 16466100
Law Offices of James B. Ragan
Corpus Christi, TX 78401
Phone: (361) 884-7787
Fax: (361) 884-9144
Jimragan13@gmail.com

And

Gregory L. Gowan
Federal ID No. 19991
Texas Bar No. 00765384
David Lesly Jones
Federal ID No. 360459
Texas Bar No. 24002370
GOWAN LAW GROUP, P.C.
555 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone: 361.651.1000

Facsimile: 361.651.1001
ggowan@gowanlawgroup.com
djones@gowanlawgroup.com
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing instrument was electronically served on all counsel of record, in accordance with the Federal Rules of Civil Procedure on this 10th day of June, 2025.

/s/ James B. Ragan
James B. Ragan