No. 20-1425

# In the Supreme Court of the United States

C.H. ROBINSON WORLDWIDE, INC., PETITIONER

*v.*

ALLEN MILLER

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE NINTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

JOHN E. PUTNAM
  *General Counsel*
PAUL M. GEIER
  *Assistant General Counsel*
  *for Litigation and*
  *Enforcement*
PETER J. PLOCKI
  *Deputy Assistant General*
  *Counsel for Litigation and*
  *Enforcement*
CHRISTOPHER S. PERRY
  *Senior Trial Attorney*
  *Department of Transportation*

EARL ADAMS, JR.
  *Chief Counsel*
CHARLES J. FROMM
  *Deputy Chief Counsel*
TRACY M. WHITE
  *Senior Attorney*
  *Federal Motor Carrier*
  *Safety Administration*
  *Washington, D.C. 20590*

ELIZABETH B. PRELOGAR
  *Solicitor General*
  *Counsel of Record*
BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
ANTHONY A. YANG
  *Assistant to the Solicitor*
  *General*
MARK B. STERN
JENNIFER L. UTRECHT
  *Attorneys*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

## QUESTION PRESENTED

A provision of the Federal Aviation Administration Authorization Act of 1994, Pub. L. No. 103-305, 108 Stat. 1606, as amended and codified at 49 U.S.C. 14501(c), prohibits a State, subject to certain exceptions, from enacting or enforcing any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier * * * , broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. 14501(c)(1). Section 14501(c) further provides that the foregoing preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. 14501(c)(2)(A). The question presented is:

Whether "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A), which Congress preserved from express preemption, encompasses the application of state common-law duties, including those supporting a tort claim against a freight broker for allegedly negligent selection of an unsafe motor carrier that was involved in a motor-vehicle accident.

# TABLE OF CONTENTS

Page

Statement ................................................................................. 1
Discussion ................................................................................ 6
  A.  The court of appeals correctly applied the
      FAAAA's safety exception........................................... 7
      1.  A State's "safety regulatory authority"
          includes the State's authority to regulate
          safety through common law ................................... 8
      2.  A broker's state-law duty to exercise
          reasonable care in selecting a safe motor
          carrier to provide transportation by motor
          vehicle reflects state safety regulatory
          authority "with respect to motor vehicles".......... 15
  B.  This Court's review is not warranted ......................... 18
Conclusion .............................................................................. 22

# TABLE OF AUTHORITIES

Cases:

American Airlines, Inc. v. Wolens, 513 U.S. 219
  (1995) ................................................................................. 8
Bower v. Egyptair Airlines Co., 731 F.3d 85
  (1st Cir. 2013), cert. denied, 572 U.S. 1046 (2014) ............. 8
Ciotola v. Star Transp. & Trucking, LLC,
  481 F. Supp. 3d 375 (M.D. Pa. 2020) ................................ 20
Cipollone v. Liggett Grp., Inc., 505 U.S. 504 (1992) ........... 11
City of Columbus v. Ours Garage & Wrecker Serv.,
  Inc., 536 U.S. 424 (2002)........................10, 11, 13, 17, 18, 21
Dan's City Used Cars, Inc. v. Pelkey,
  569 U.S. 251 (2013).................................................... passim
Dean v. United States, 556 U.S. 568 (2009) ....................... 17
Desiano v. Warner-Lambert & Co.,
  467 F.3d 85 (2d Cir. 2006) .................................................. 9

Cases—Continued:                                    Page

*Digital Realty Trust, Inc.* v. *Somers*,
    138 S. Ct. 767 (2018) .............................................. 12

*Finley* v. *Dyer*, No. 3:18-cv-78,
    2018 WL 5284616 (N.D. Miss. Oct. 24, 2018) .................. 20

*Gilley* v. *C.H. Robinson Worldwide, Inc.*,
    No. 1:18-cv-536, 2019 WL 1410902
    (S.D.W. Va. Mar. 28, 2019) ................................... 20

*Graham Cnty. Soil & Water Conservation Dist.* v.
    *United States ex rel. Wilson*, 559 U.S. 280 (2010) ........... 14

*Huffman* v. *Evans Transp. Servs., Inc.*,
    No. 4:19-cv-705, 2019 WL 4142685
    (S.D. Tex. Aug. 28, 2019) .................................... 20

*Kansas* v. *Garcia*, 140 S. Ct. 791 (2020) ............................. 22

*Kurns* v. *Railroad Friction Prods. Corp.*,
    565 U.S. 625 (2012) ............................................... 8

*Lopez* v. *Amazon Logistics, Inc.*,
    458 F. Supp. 3d 505 (N.D. Tex. 2020) ............................. 20

*Mann* v. *C.H. Robinson Worldwide, Inc.*,
    No. 7:16-cv-102, 2017 WL 3191516
    (W.D. Va. July 27, 2017) ...................................... 20

*Maracich* v. *Spears*, 570 U.S. 48 (2013) .............................. 11

*Medtronic, Inc.* v. *Lohr*, 518 U.S. 470 (1996) ...................... 11

*Montes de Oca* v. *El Paso-L.A. Limousine Exp.,
    Inc.*, No. 14-cv-9230, 2015 WL 1250139
    (C.D. Cal. Mar. 17, 2015) .................................... 20

*Morales* v. *Redco Transp. Ltd.*, No. 5:14-cv-129,
    2015 WL 9274068 (S.D. Tex. Dec. 21, 2015) .................... 20

*Mutual Pharm. Co.* v. *Bartlett*, 570 U.S. 472 (2013) ........... 9

*Northwest, Inc.* v. *Ginsberg*, 572 U.S. 273 (2014) .............. 10

*Nyswaner* v. *C.H. Robinson Worldwide Inc.*,
    353 F. Supp. 3d 892 (D. Ariz. 2019) ................................. 20

*ONEOK, Inc.* v. *Learjet, Inc.*, 575 U.S. 373 (2015) ............ 22

Cases—Continued:                                             Page

 *Owens* v. *Anthony*, No. 2:11-cv-33,
  2011 WL 6056409 (M.D. Tenn. Dec. 6, 2011) ................. 20

 *Panhandle E. Pipe Line Co.* v. *State Highway*
  *Comm'n*, 294 U.S. 613 (1935)............................................ 11

 *Russello* v. *United States*, 464 U.S. 16 (1983).................... 13

 *San Diego Bldg. Trades Council* v. *Garmon*,
  359 U.S. 236 (1959)................................................................. 9

 *Scott* v. *Milosevic*,
  372 F. Supp. 3d 758 (N.D. Iowa 2019) ........................... 20

 *Skowron* v. *C.H. Robinson Co.*,
  480 F. Supp. 3d 316 (D. Mass. 2020) ................................ 20

 *Taj Mahal Travel, Inc.* v. *Delta Airlines, Inc.*,
  164 F.3d 186 (3d Cir. 1998) .................................................. 8

 *Uhrhan* v. *B&B Cargo, Inc.*, No. 4:17-cv-2720,
  2020 WL 4501104 (E.D. Mo. Aug. 5, 2020)..................... 20

 *Virginia Uranium, Inc.* v. *Warren*,
  139 S. Ct. 1894 (2019) ........................................................... 9

 *Watson* v. *Air Methods Corp.,* 870 F.3d 812
  (8th Cir. 2017)........................................................................ 8

 *Wyeth* v. *Levine*, 555 U.S. 555 (2009) ............................. 8, 11

Statutes and regulations:

 Airline Deregulation Act of 1978, Pub. L. No. 95-504,
  92 Stat. 1705 ......................................................................... 1

 Federal Aviation Administration Authorization Act
  of 1994, Pub. L. No. 103-305, 108 Stat. 1606 .................... 1

  § 601, 108 Stat. 1605.............................................................. 9

  § 601(a)(1), 108 Stat. 1605 .................................. 2, 7, 9, 10

  § 601(a)(2), 108 Stat. 1605 .................................. 2, 7, 9, 10

  § 601(c), 108 Stat. 1606.................................................... 1

  49 U.S.C. 14501(c) (§ 601(c))................................ *passim*

  49 U.S.C. 14501(c)(1) (§ 601(c)) ........................... *passim*

Statutes and regulations—Continued: Page

    49 U.S.C. 14501(c)(2)-(4) (§ 601(c)) ................................. 2

    49 U.S.C. 14501(c)(2)(A) (§ 601(c)) ...................... *passim*

Motor Carrier Act of 1980, Pub. L. No. 96-296,

    94 Stat. 793 ............................................................... 1

15 U.S.C. 7201(1) ........................................................ 12

16 U.S.C. 824i(a) ......................................................... 12

16 U.S.C. 824i(b) ......................................................... 12

28 U.S.C. 1292(b) ........................................................ 18

42 U.S.C. 16431(a)(1) .................................................. 12

49 U.S.C. 113(f) .......................................................... 20

49 U.S.C. 13102(2) ................................................. 2, 16

49 U.S.C. 13102(14) ............................................... 3, 16

49 U.S.C. 13906(a)(1) .................................................. 15

49 U.S.C. 13906(b)(2) .................................................. 15

49 U.S.C. 13906(b)(3) .................................................. 15

49 U.S.C. 14702 .......................................................... 12

49 U.S.C. 31136(c)(2)(B) ............................................. 21

49 U.S.C. 31136(a) ...................................................... 21

49 U.S.C. 31141(a) ...................................................... 21

49 U.S.C. 31141(c)(4) .................................................. 21

49 C.F.R. Pts. 390-397 ................................................ 21

    Section 390.9 ................................................................ 21

# In the Supreme Court of the United States

No. 20-1425

C.H. ROBINSON WORLDWIDE, INC., PETITIONER

*v.*

ALLEN MILLER

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

This brief is submitted in response to the Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

## STATEMENT

1. In 1978, Congress largely deregulated the domestic airline industry by enacting the Airline Deregulation Act of 1978 (ADA), Pub. L. No. 95-504, 92 Stat. 1705. Two years later, Congress extended deregulation to the trucking industry by enacting the Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793. See *Dan's City Used Cars, Inc.* v. *Pelkey*, 569 U.S. 251, 256 (2013) (*Dan's City*). In 1994, "Congress completed the deregulation * * * by expressly preempting state trucking regulation," *ibid.*, in the Federal Aviation Administration Authorization Act of 1994 (FAAAA), Pub. L. No. 103-305, 108 Stat. 1606. Section 601(c) of the FAAAA,

which is now codified at 49 U.S.C. 14501(c), closely "tracks the ADA's air-carrier preemption provision." *Dan's City*, 569 U.S. at 261.

Congress based Section 14501(c)'s express preemption of certain state regulatory authority over trucking on findings that "the regulation of intrastate transportation of property by the States" had "imposed an unreasonable burden on interstate commerce," "impeded the free flow" of "transportation of interstate commerce," and placed an "unreasonable cost on the American consumers." FAAAA § 601(a)(1), 108 Stat. 1605. As a result, Congress found that "certain aspects of the State regulatory process should be preempted." § 601(a)(2), 108 Stat. 1605.

Section 14501(c) accordingly provides that a State

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier * * * or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. 14501(c)(1). Congress enacted several exceptions to that preemption provision. See 49 U.S.C. 14501(c)(2)-(4). As relevant here, Congress provided that the provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. 14501(c)(2)(A).

2. a. Petitioner is a property freight broker, Pet. App. 2a-3a, and qualifies as a "broker" within the meaning of the FAAAA's preemption provision. See 49 U.S.C. 13102(2) (defining "'broker'" to mean "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out * * * as selling, providing, or arranging for, transportation by

motor carrier for compensation"). Costco Wholesale, Inc. (Costco) hired petitioner to arrange for a shipment of goods for Costco. Pet. App. 2a-3a, 30a. Petitioner then hired RT Service, a federally licensed motor carrier, to transport the shipment. *Ibid.*; cf. 49 U.S.C. 13102(14) (defining "'motor carrier'" to mean "a person providing motor vehicle transportation for compensation").

In 2016, the RT Service employee who was driving the tractor-trailer transporting the Costco shipment lost control of the vehicle while driving in icy conditions on Interstate 80 in Nevada. Pet. App. 3a. The tractor-trailer crossed the Interstate's median into oncoming traffic and collided with respondent's vehicle. *Ibid.* Respondent suffered severe injuries and is now a quadriplegic as a result of the collision. *Ibid.*

b. Respondent filed this diversity action for damages against, *inter alia*, petitioner, RT Service, and RT Service's driver. Pet. App. 3a, 29a-30a; see Am. Compl. ¶ 1. As relevant here, respondent alleged that petitioner had breached a state-law "duty to select a competent contractor" when hiring a motor carrier. Pet. App. 3a-4a, 30a. Respondent alleged that petitioner "knew or should have known" about RT Service's history of safety violations and that petitioner's negligence in selecting RT Service was the proximate cause of the accident and respondent's injuries. *Id.* at 4a, 30a; see Am. Compl. ¶¶ 45-48.

The district court granted judgment to petitioner on the pleadings. Pet. App. 28a-38a. The court concluded that respondent's state-law negligence claim against petitioner was preempted under the FAAAA because the claim related to petitioner's "services" as a "broker." *Id.* at 32a-35a. The court noted that Congress had

4

excepted from preemption "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A), but it concluded that the exception did not extend to a "state's common law regulation" of "safety on its streets and roads." Pet. App. 36a-37a.

3. The court of appeals reversed and remanded. Pet. App. 1a-27a. The court noted that "[n]o circuit court ha[d] yet considered an FAAAA preemption challenge brought by a broker," *id.* at 8a, and it rejected petitioner's express-preemption defense on the ground that the FAAAA's "safety exception" excepts respondent's state-law claim from preemption, *id.* at 24a. See *id.* at 14a-24a.

a. The court of appeals determined that—unless a statutory exception applies—the FAAAA preempts a State's common law of negligence as applied to a freight broker's selection of a motor carrier, because that application of state common law is "related to a price, route, or service of any * * * broker * * * with respect to the transportation of property," 49 U.S.C. 14501(c)(1). See Pet. App. 5a-13a. The court stated that "[t]he phrase 'related to' in [Section 14501(c)]" embraces "'state laws "having a connection with or reference to" . . . "rates, routes, or services," whether directly or indirectly.'" *Id.* at 6a (quoting *Dan's City*, 569 U.S. at 260). And the court concluded that respondent's claim of broker negligence in the selection of a purportedly unsafe motor carrier relates to a broker's services because "the 'selection of motor carriers is one of the core services of brokers'" and because respondent's claim is "directly 'connect[ed] with' [such] services" in that it seeks to hold petitioner "liable at the point at which it provides [that] 'service' to its customers." *Id.* at 10a (first set of brackets in original).

The court of appeals concluded, however, that respondent's claim was not preempted because the state common law on which it was based fell within the FAAAA's exception preserving "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A). See Pet. App. 14a-24a. First, the court reasoned that the safety exception does not restrict "States' existing power over 'safety,'" and that "[t]hat power plainly includes the ability to regulate safety through common-law tort claims," *id.* at 15a (citation omitted). See *id.* at 14a-21a. The court found it "unlikely" that preemption under the safety exception would turn on the happenstance of whether a State had "codified [its] common law." *Id.* at 17a. The court also rejected petitioner's contention that the reference in the FAAAA's safety exception to state "regulatory authority," 49 U.S.C. 14501(c)(2)(A), covers only a subset of the "sources of state law" listed in the preemption clause, 49 U.S.C. 14501(c)(1). Pet. App. 20a-21a. The court explained that the exception "does not actually 'borrow' any language from the preemption clause" and instead "concisely refers to 'the regulatory authority of the State'" rather than "spelling out the various ways the States can exercise that broad power." *Ibid.*

Second, the court of appeals rejected petitioner's argument that, even if state common law concerning negligent hiring by a broker qualifies as an exercise of "the safety regulatory authority of a State," it is not an exercise of such authority "with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A). See Pet. App. 22a-24a. The court explained that "the phrase 'with respect to' in the safety exception is synonymous with 'relating to,'" which requires either a direct or indirect connection with motor vehicles. *Id.* at 22a (citation omitted). The

court concluded that state law providing for "negligence claims against brokers that arise out of motor vehicle accidents" reflects an exercise of state authority that both "promote[s] safety on the road" and has "the requisite 'connection with' motor vehicles." *Id.* at 23a-24a.

b. Judge Fernandez concurred in part and dissented in part. Pet. App. 25a-27a. As relevant here, Judge Fernandez "agree[d] [with the majority] that the safety exception includes state common law tort claims." *Id.* at 25a. But he concluded that the exception's reference to state safety regulatory authority "'with respect to motor vehicles'" extends only to contexts having "a very close connection to the actual operational safety of motor vehicles." *Id.* at 26a (quoting 49 U.S.C. 14501(c)(2)(A)). Judge Fernandez concluded that respondent's claim based on petitioner's negligence in providing "broker services" was insufficiently "'connected with' motor vehicles" to fall within the exception, *ibid.* (citation, brackets, and footnote omitted).

### DISCUSSION

The court of appeals held that the FAAAA does not preempt a State's authority to regulate safety with respect to motor vehicles through the State's imposition of common-law duties, including by imposing safety requirements on freight brokers in the selection of motor carriers. That decision is correct and does not conflict with any decision of this Court or another court of appeals. Indeed, the court of appeals in this case is the first court of appeals to have addressed the question. No further review is warranted.

## A. The Court Of Appeals Correctly Applied The FAAAA's Safety Exception

Congress determined in the FAAAA that "the regulation of intrastate transportation of property by the States" had produced undesirable effects on interstate commerce, FAAAA § 601(a)(1), 108 Stat. 1605, and, as a result, that "certain aspects of the State regulatory process should be preempted," § 601(a)(2), 108 Stat. 1605. To implement its determination that the state "regulatory process" should be partially preempted, *ibid.*, Congress enacted a provision that preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service" of a motor carrier or broker "with respect to the transportation of property." 49 U.S.C. 14501(c)(1). That preemption provision is subject to various exceptions, including one that preserves "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A). That exception exempts from preemption a State's regulatory authority over safety when the State exercises its authority through reliance on traditional common law, including when the State imposes a common-law duty of care on freight brokers with respect to their selection of a motor carrier to provide safe motor vehicle transportation.[1]

---

[1] Respondent argues (Br. in Opp. 17-18) that tort actions against brokers for personal injuries fall outside the scope of the FAAAA's preemption provision in the first place because they do not implicate state law "related to a price, route, or service" of a broker with respect to the transportation of property, 49 U.S.C. 14501(c)(1). The quoted text from Section 14501(c)(1) "tracks the [text of the] ADA's air-carrier preemption provision," *Dan's City Used Cars, Inc.* v. *Pelkey*, 569 U.S. 251, 261 (2013), which the government has explained likely does not preempt safety-related tort claims for personal injuries related to airline operations even though the ADA

### 1. A State's "safety regulatory authority" includes the State's authority to regulate safety through common law

The FAAAA's safety exception preserves from preemption a State's "safety regulatory authority" with respect to motor vehicles. 49 U.S.C. 14501(c)(2)(A). The FAAAA's text and its surrounding context demonstrate that state "regulatory authority" over safety includes a State's authority to regulate safety through state common law.

a. This Court has repeatedly recognized in its preemption jurisprudence that a State's common law of torts is a manifestation of a State's "regulatory" authority. "[S]tate common-law duties and standards of care" are a form of "state 'regulation'" that "'is designed to be[] a potent method of governing conduct and controlling policy.'" *Kurns* v. *Railroad Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) (citation omitted); see, *e.g.*, *Wyeth* v. *Levine*, 555 U.S. 555, 578 (2009) (explaining that the "state law" underlying "common-law tort suits" has long been regarded "as a complementary form of * * *

---

preemption provision does not contain an express safety exception. *American Airlines, Inc.* v. *Wolens*, 513 U.S. 219, 231 n.7 (1995); U.S. Amicus Br. at 19-20 & n.12, *Wolens*, *supra* (No. 93-1286). See *Watson* v. *Air Methods Corp.*, 870 F.3d 812, 819 (8th Cir. 2017) (en banc) (finding it "unlikely" that the ADA preempts "all personal-injury claims against air carriers"); *Bower* v. *Egyptair Airlines Co.*, 731 F.3d 85, 95 (1st Cir. 2013) (similar), cert. denied, 572 U.S. 1046 (2014); *Taj Mahal Travel, Inc.* v. *Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) (similar). But even assuming *arguendo* that the court of appeals and petitioner are correct that the FAAAA's parallel express preemption provision in Section 14501(c)(1) would (in the absence of the safety exception) preempt respondent's tort claim, Section 14501(c)(2)(A)'s safety exception preserves respondent's claim from express preemption, as explained *infra*.

regulation" that supplements federal drug regulation in appropriate contexts). The common-law rules reflected in such "state regulation" authorizing "an award of damages" for "harm" caused by a breach of a state-law duty of care are not materially different for preemption purposes from rules that a State could impose through positive enactments in, for instance, its codification of "general tort provisions." *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 239, 246-247 (1959). This Court has therefore rejected the argument that a state common-law cause of action is "'not regulatory'" by explaining that "common-law causes of action for negligence * * * impose affirmative duties" designed to regulate conduct. *Mutual Pharm. Co.* v. *Bartlett*, 570 U.S. 472, 480, 482 n.1 (2013) (citation omitted). That principle applies with equal force in the vehicular safety context here. "State tort laws, after all, plainly intend to regulate public safety." *Virginia Uranium, Inc.* v. *Warren*, 139 S. Ct. 1894, 1905 (2019) (plurality opinion). And "[h]istorically, common law liability has formed the bedrock of state regulation." *Desiano* v. *Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006).

The text of Section 601 of the FAAAA, including the text defining the scope of the preemption provision now codified at Section 14501(c), reflects that normal understanding of state "regulatory" authority. Congress's statutory findings make clear that Congress's purpose in enacting Section 14501(c)'s preemption provision was to target "the *regulation* of intrastate transportation of property by the States" by preempting "certain aspects of the State *regulatory* process." FAAAA § 601(a)(1) and (2), 108 Stat. 1605 (emphases added); see *Dan's City Used Cars, Inc.* v. *Pelkey*, 569 U.S. 251, 263 (2013). That shorthand statutory description of the relevant

state law as "regulation" and "regulatory," 108 Stat. 1605, describes the full scope of state law that Section 14501(c)(1) preempts, *i.e.*, state "law[s], regulation[s], or other provision[s] having the force and effect of law related to a price, route, or service" of a motor carrier or broker, 49 U.S.C. 14501(c)(1). That includes state common law related to price, routes, or services. See *Northwest, Inc.* v. *Ginsberg*, 572 U.S. 273, 281-284 (2014) (interpreting parallel text in the ADA to encompass state common law of contracts).

Furthermore, to prevail in its preemption defense in this case, petitioner must necessarily contend that the state common law on which respondent bases his claim constitutes the type of state law preempted by Section 14501(c)(1) in the first place. See p. 7 n.1, *supra*. That necessary predicate of petitioner's position strongly supports the conclusion that Section 14501(c)'s safety exception then correspondingly *preserves* traditional state common law governing safety. Just as state common law can count as the type of state "regulation" and state "regulatory" process that Section 14501(c) generally preempts, FAAAA § 601(a)(1) and (2), 108 Stat. 1605, so too does it count as the exercise of state "regulatory authority" over safety that Section 14501(c) in turn preserves from preemption, 49 U.S.C. 14501(c)(2)(A).

That straightforward textual conclusion is confirmed by the fact that Section 14501(c)'s safety exception concerns a field of traditional state regulation. In *Ours Garage*, this Court concluded that a "clear [statutory] statement" would be required in order to read Section 14501(c)(2)(A)'s "reference to the 'regulatory authority of a State'" as permitting Section 14501(c) to preempt "traditional" state authority over safety. *City of Columbus* v. *Ours Garage & Wrecker Serv., Inc.*, 536 U.S.

424, 429 (2002) (*Ours Garage*). That approach reflects the Court's determination that Section 14501(c)'s safety exception "seeks to save from preemption state power 'in a field which the States have traditionally occupied.'" *Id.* at 438 (quoting *Medtronic, Inc.* v. *Lohr*, 518 U.S. 470, 485 (1996)). A State may exercise that "police power"—which reflects "the obligation of the state to protect its citizens and provide for the safety and good order of society," *Panhandle E. Pipe Line Co.* v. *State Highway Comm'n*, 294 U.S. 613, 622 (1935)—through the application of state common law or state statutory law. This Court's decisions—including the *Medtronic* decision that *Ours Garage* cites to interpret Section 14501(c)'s safety exception—thus have similarly rejected arguments for federal preemption of state common law regulating safety. See, *e.g.*, *Wyeth*, 555 U.S. at 565, 578; *Medtronic*, 518 U.S. at 474, 485, 501; *Cipollone* v. *Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992) (four-justice plurality); *id.* at 532-533 (Blackmun, J, concurring in part) (writing for three additional Justices).[2]

b. Petitioner argues (Pet. 13) that "[t]he phrase 'regulatory authority' is almost always a synonym for 'regulatory agency' or, derivatively, the powers of such an

---

[2] As petitioner notes (Pet. 16-17), this Court has in some contexts read statutory exceptions "narrowly" in order "to preserve the primary operation of the [more general statutory] provision." *Maracich* v. *Spears*, 570 U.S. 48, 60 (2013) (citation omitted). But this Court in *Ours Garage* emphasized that that principle "does not invariably" apply in every context and found it inapplicable in the context of Section 14501(c) because "[Section] 14501(c)(1)'s preemption rule and [Section] 14501(c)(2)(A)'s safety exception" do not conflict: The former is designed to preempt "'[s]tate *economic* regulation'" while the latter preserves "state *safety* regulation" from preemption. *Ours Garage*, 536 U.S. at 440-441 (third set of brackets in original).

agency." That is incorrect. Petitioner's citation to four sections of the United States Code merely identifies limited contexts in which such an "authority" either is clearly intended to refer to an administrative entity that takes particular action, 16 U.S.C. 824i(a) and (b), or is a term that is statutorily defined to mean an agency, 15 U.S.C. 7201(1); 42 U.S.C. 16431(a)(1); cf. *Digital Realty Trust, Inc.* v. *Somers*, 138 S. Ct. 767, 776 (2018) (noting that a statutory definition may "var[y] from a term's ordinary meaning"). One of petitioner's four sections does not even use the term "regulatory authority" in operative text. See 49 U.S.C. 14702 (using term only in section's title). And none uses the term to refer to the powers of such an agency.

The relevant statutory comparison for understanding Section 14501(c)'s use of the phrase "regulatory authority of a State" instead lies later in the same sentence of Section 14501(c). That sentence shows that Congress used "regulatory authority of a State" to refer to regulatory *power* of a State—and not to a state agency—because the sentence also expressly excepts from preemption the "*authority* of a State *to impose* highway route controls" and the "*authority* of a State *to regulate*" insurance requirements for motor carriers. 49 U.S.C. 14501(c)(2)(A) (emphasis added).

Petitioner relatedly contends (Pet. 14) that the "core" of a State's "police power" is the power to enact legislation. But petitioner fails to account for other ways that a State may exercise its police power, including through the State's prevailing common law. See pp. 10-11, *supra.*

Petitioner's recourse to statutory context (Pet. 14-15) is also unavailing. Petitioner relies on the fact (Pet. 15) that Section 14501(c)'s "preemption provision uses

different language" than its safety exception to assert that the safety exception, unlike the preemption provision, does not cover "common-law claims" under the interpretive presumption in *Russello* v. *United States*, 464 U.S. 16, 23 (1983). But this Court has already rejected a similar attempt to use the *Russello* presumption to limit Section 14501(c)(2)(A)'s safety exception by comparing its text to that of Section 14501(c)(1)'s general preemption provision. See *Ours Garage*, 536 U.S. at 433-436. The Court explained that "[t]he *Russello* presumption—that the presence of a phrase in one provision and its absence in another reveals Congress' design—grows weaker with each difference in the formulation of the provisions under inspection." *Id.* at 435-436. And the Court found that presumption inapplicable in this precise statutory context because "[t]he safety exception of [Section] 14501(c)(2)(A)" does "not borrow [any] language from [Section] 14501(c)(1)." *Id.* at 435. Congress instead used the shorthand phrase "'safety regulatory authority of a State'" as a matter of drafting "economy," not as a means of narrowing the scope of the exception. *Ibid.*; see pp. 9-10, *supra.*

Petitioner's reliance (Pet. 14-15) on the two other exceptions within 49 U.S.C. 14501(c)(2)(A) is equally unavailing. Petitioner contends that those additional exceptions—which preserve state authority to "impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo" and to "regulate motor carriers" with respect to insurance, 49 U.S.C. 14501(c)(2)(A)—address matters that would be specified by a state legislature or agency. Pet. 14-15. But each of those exceptions concerns different types of state authority, and neither suggests that Congress's broad textual preservation of

a State's "safety regulatory authority" with respect to motor vehicles should be narrowed to exclude common-law duties. Petitioner's invocation (Pet. 14) of the canon of *noscitur a sociis* provides no basis for such a limit on the textual scope of the safety exception given the differences in the types of authority listed in Section 14501(c)(2)(A). Cf. *Graham Cnty. Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U.S. 280, 288 (2010) (explaining that "[a] list of three items, each quite distinct from the other no matter how construed, is too short to be particularly illuminating" under that canon).

c. Finally, petitioner's contention (Pet. 13) that the state "'regulatory authority'" concerning safety that Congress preserved in Section 14501(c)'s safety exception protects only state "statutory or administrative rules" and not state "common-law" duties would lead to bizarre results. First, as the court of appeals explained, petitioner's proffered interpretation would preserve from preemption tort duties in "[S]tates, like California, that have codified their common law," but not in States that have exercised their prerogative to allow their common law to remain uncodified. Pet. App. 17a. Petitioner offers no sound reason why Congress would have wanted tort claims based on negligence to proceed in the former, but not the latter, States.

Second, petitioner's reading of state "regulatory authority" would narrow Section 14501(c)'s safety exception in a manner that would render it inapplicable not only to common-law tort actions against freight brokers, but also to common-law tort actions against the motor carriers directly responsible for motor-vehicle accidents. That is because Section 14501(c) preempts state laws "related to a price, route, or service of any

motor carrier" *or* of a "broker" with respect to "the transportation of property." 49 U.S.C. 14501(c)(1). If common-law personal-injury claims are (as petitioner contends) "related to a price, route, or service," *ibid.*; see p. 7 n.1, *supra*, and if the state "regulatory authority" over safety that Section 14501(c) preserves from preemption does *not* include state common law, then petitioner's theory would eliminate common-law negligence actions against motor carriers as well as brokers. That substantial change in the law governing commercial motor-vehicle accidents—but only in States that have not codified their common law—highlights why petitioner's position is unsound.[3]

> **2. *A broker's state-law duty to exercise reasonable care in selecting a safe motor carrier to provide transportation by motor vehicle reflects state safety regulatory authority "with respect to motor vehicles"***

Petitioner briefly argues (Pet. 18-19) that state safety regulation concerning freight brokers' selection of safe motor carriers does not constitute authority "with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A). That argument is incorrect.

---

[3] Congress has treated motor carriers and brokers differently in certain respects. See, *e.g.*, 49 U.S.C. 13906(a)(1), (b)(2), and (3) (requiring motor carriers to have security to pay final judgments for "bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles" and "loss or damage to property"; and imposing different financial surety requirements for brokers). But those differences provide no basis for interpreting Section 14501(c)(2)(A)'s use of the term "regulatory authority" to include a State's common law of torts when motor carriers, but not brokers, are sued. And petitioner appears to acknowledge (Pet. 19) that common-law "negligence suits against *drivers*" would survive preemption only if "common-law claims fall within the safety exception."

Section 14501(c)'s exception for "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A), excepts the exercise of such authority from express preemption even if it "relate[s] to a * * * service of any * * * broker * * * with respect to the transportation of property" under the general preemption clause, 49 U.S.C. 14501(c)(1). The service of a "broker" is "selling, providing, or arranging for[] transportation by motor carrier." 49 U.S.C. 13102(2). That service therefore entails selecting, on behalf of a client, "a person [to] provid[e] motor vehicle transportation," 49 U.S.C. 13102(14). Accordingly, where a State requires a broker to exercise ordinary care in selecting a motor carrier to safely operate the motor vehicle, the State's exercise of its safety regulatory authority occurs "with respect to motor vehicles," 49 U.S.C. 14501(c)(2)(A).

Petitioner correctly acknowledges (Pet. 18) that "the phrase 'with respect to' is quite broad." Indeed, this Court in *Dan's City* construed the phrase "'*with respect to* the transportation of property'" in Section 14501(c)'s preemption provision to require that a preempted law simply "concern" the "'transportation of property.'" *Dan's City*, 569 U.S. at 261 (emphasis added). A state requirement that a broker exercise ordinary care in selecting a motor carrier to safely operate a motor vehicle when providing motor vehicle transportation on public roads is a requirement that "concerns" motor vehicles.[4]

_____

[4] Petitioner erroneously relies (Pet. 18) on the Court's characterization of the "with respect to the transportation of property" language in Section 14501(c)(1)'s preemption clause to suggest that the safety exception in Section 14501(c)(2)(A) should be narrowly construed to exclude respondent's claim here. The Court in *Dan's City* observed that the requirement that a preempted law be one "'with

Nothing in the text of the FAAAA's safety exception further limits a State's safety authority to only the "operational safety of motor vehicles" themselves, Pet. 18 (quoting Pet. App. 26a (Fernandez, J., dissenting in part). See *Dean* v. *United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words * * * into a statute that do not appear on its face.") (citation omitted).

Petitioner contends (Pet. 19) that a broker's service has "too tenuous" a connection to "the 'use' of [a] vehicle" for state regulation of that service to fall within the safety exception. That contention is doubly flawed. First, the connection is not tenuous. The safe operation of a vehicle is necessarily connected to the vehicle's operator, *i.e.*, the motor carrier providing the motor vehicle transportation. The selection of a safe motor carrier therefore is logically a meaningful component of commercial motor-vehicle safety. Second, no statutory text limits Section 14501(c)'s safety exception to the "use" of vehicles. The text of the exception more broadly extends to state safety regulatory authority "with respect to motor vehicles." State common-law standards governing a broker's selection of motor carriers to safely

---

respect to the transportation of property'" "'massively limits the scope of preemption'" in Section 14501(c)(1). *Dan's City*, 569 U.S. at 261 (quoting 49 U.S.C. 14501(c)(1) and *Ours Garage*, 536 U.S. at 449 (Scalia, J., dissenting)). Contrary to petitioner's suggestion, the limitation to which the Court referred was not in the meaning of the phrase "'with respect to,'" Pet. 18, but in the object of that phrase, "the transportation of property." That limitation ensures that Section 14501(c)(1) preempts only state law concerning "'motor carriers of property'" (not passengers), *Ours Garage*, 536 U.S. at 449 (Scalia, J., dissenting) (citation omitted), and only regarding the "movement" of property (not its storage or handling before transportation or after delivery), *Dan's City*, 569 U.S. at 261-262.

operate motor vehicles "concern" motor vehicles. See *Dan's City*, 569 U.S. at 261. At the very least, nothing in Section 14501(c)'s safety exception demonstrates a "clear and manifest purpose" that such state authority over safety be preempted. *Ours Garage*, 536 U.S. at 438 (citation omitted); see pp. 10-11, *supra*.

### B. This Court's Review Is Not Warranted

1. Review is not warranted in this case, which involves the first court of appeals decision to have considered whether Section 14501(c) preempts common-law tort claims against freight brokers that arise from motor-vehicle accidents. As petitioner observes (Pet. 21-22; Cert. Reply Br. 8), earlier decisions issued by some district courts within the Third, Fifth, Sixth, Seventh, and Tenth Circuits have held that similar common-law claims were preempted on the ground that Section 14501(c)'s "safety exception [is] inapplicable to common-law claims against freight brokers." Plaintiffs in similar suits in the future will have an incentive to appeal such a dismissal of their common-law claims as preempted—particularly now that the Ninth Circuit has rejected preemption in this case—and those appeals would allow other courts of appeals to consider the question.

Petitioner asserts (Cert. Reply Br. 8-9) that district court decisions finding no FAAAA preemption are "rarely appealed" by brokers in light of the risk of first going to trial. But that claim ignores the availability of appeals by plaintiffs (as in this case) and the possibility of interlocutory review, see, *e.g.*, 28 U.S.C. 1292(b). The argument also ignores that pretrial settlements may be made contingent on a broker's preservation of a preemption defense for appeal. And in any event, many legal issues involve similar litigation risks that may

bear on decisions whether to appeal, but that has not traditionally been regarded as a reason to grant review in the absence of a circuit conflict. Given that petitioner, as one of the Nation's large freight brokers, is a repeat litigant, see, *e.g.*, p. 20 n.5, *infra*, it appears unlikely that the question presented will not arise in other courts of appeals. If a conflict of appellate authority ultimately results, this Court may then reconsider whether certiorari is warranted with the benefit of the analyses of those courts of appeals.

Petitioner asserts (Pet. 5) that the court of appeals' decision will be cited by plaintiffs "in federal and state courts across the country as if it *is* the law of the land." But that is an unremarkable feature of litigation following the first appellate decision on a legal issue, and it simply confirms the likelihood that other courts of appeals will address the issue. Petitioner also contends (Pet. 20, 22-23) that the question presented is an "importan[t]" one for freight brokers in the transportation industry and that the court of appeals' decision will invite "more (and more creative) common-law claims against freight brokers" by plaintiffs "seeking to expand the universe of liable defendants." But tort claims arising from commercial freight-trucking accidents are commonplace, and the nature and extent of a broker's involvement may vary. That is a reason to follow, not depart from, the Court's traditional practice of waiting for a conflict of appellate authority to arise before granting certiorari.

2. Petitioner contends (Pet. 22) that the court of appeals' decision will impose "an 'unreasonable cost on the American consumers'" by "exposing freight brokers and other businesses to [tort] liability," *ibid.* (citation omitted). That contention is misplaced. Tort claims

against brokers arising from motor-vehicle accidents are not new.  Even before the court of appeals' decision in this case, the majority of the district courts that considered such claims held that they are not preempted by the FAAAA.[5]  Petitioner identifies no evidence that such suits have produced the significant adverse consequences it predicts will flow from the decision of the court of appeals.

Petitioner incorrectly suggests (Cert. Reply Br. 10-11) that Congress intended regulation by the Department of Transportation, through the Federal Motor Carrier Safety Administration (FMCSA), to provide a uniform national system of motor-carrier safety regulation. Cf. 49 U.S.C. 113(f) (FMCSA authority).  Congress

---

[5] See, *e.g.*, *Ciotola* v. *Star Transp. & Trucking, LLC*, 481 F. Supp. 3d 375, 384-390 (M.D. Pa. 2020); *Skowron* v. *C.H. Robinson Co.*, 480 F. Supp. 3d 316, 320-322 (D. Mass. 2020); *Uhrhan* v. *B&B Cargo, Inc.*, No. 4:17-cv-2720, 2020 WL 4501104, at *2-*5 (E.D. Mo. Aug. 5, 2020); *Lopez* v. *Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 510-516 (N.D. Tex. 2020); *Gilley* v. *C.H. Robinson Worldwide, Inc.*, No. 1:18-cv-536, 2019 WL 1410902, at *3-*5 (S.D. W. Va. Mar. 28, 2019); *Huffman* v. *Evans Transp. Servs., Inc.*, No. 4:19-cv-705, 2019 WL 4142685, at *1 (S.D. Tex. Aug. 28, 2019) (agreeing with magistrate judge's recommendation, 2019 WL 4143896, at *2-*4 (Aug. 12, 2019)); *Scott* v. *Milosevic*, 372 F. Supp. 3d 758, 769-770 (N.D. Iowa 2019); *Nyswaner* v. *C.H. Robinson Worldwide Inc.*, 353 F. Supp. 3d 892, 894-896 (D. Ariz. 2019); *Finley* v. *Dyer*, No. 3:18-cv-78, 2018 WL 5284616, at *2-*6 (N.D. Miss. Oct. 24, 2018); *Mann* v. *C.H. Robinson Worldwide, Inc.*, No. 7:16-cv-102, 2017 WL 3191516, at *5-*8 (W.D. Va. July 27, 2017); *Morales* v. *Redco Transp. Ltd.*, No. 5:14-cv-129, 2015 WL 9274068, at *1-*3 (S.D. Tex. Dec. 21, 2015); *Montes de Oca* v. *El Paso-L.A. Limousine Exp., Inc.*, No. 14-cv-9230, 2015 WL 1250139, at *1-*3 (C.D. Cal. Mar. 17, 2015); *Owens* v. *Anthony*, No. 2:11-cv-33, 2011 WL 6056409, at *2-*4 (M.D. Tenn. Dec. 6, 2011) (rejecting FAAAA preemption defense by broker C.H. Robinson Worldwide, Inc.).

specifically provided that federal regulation by the FMCSA will provide only "*minimum* safety standards" for commercial motor vehicles, 49 U.S.C. 31136(a) (emphasis added); see generally 49 C.F.R. Pts. 390-397, not uniform national maximum safety standards. In fact, Congress instructed that the FMCSA, before prescribing federal safety regulations, must consider "State laws and regulations on commercial motor vehicle safety" in order "to minimize their unnecessary preemption." 49 U.S.C. 31136(c)(2)(B). The FMCSA's regulations accordingly generally preserve state laws relating to motor-carrier safety so long as they do not prevent full compliance with federal regulatory requirements. See, *e.g.*, 49 C.F.R. 390.9.[6]

Furthermore, the court of appeals' decision does not preclude the possibility of federal preemption of state law regarding motor-vehicle safety in certain contexts. The decision below merely determined that Congress did not expressly preempt *all* such state "safety regulatory authority" in Section 14501(c) of the FAAAA as applied to brokers. The decision does not address whether, and to what extent, freight brokers may properly be held liable under state law for the negligent selection of unsafe motor carriers. And significantly, the court of appeals did not resolve whether a State's exercise of that authority—through common law or otherwise—

---

[6] Congress has separately provided for the express preemption of state laws and regulations on "commercial motor vehicle safety" that are "additional to or more stringent than" the FMCSA's regulations only in limited contexts in which the Secretary of Transportation has determined that the state provisions have "no safety benefit," are "incompatible" with federal regulations, or would "unreasonabl[y] burden" interstate commerce. 49 U.S.C. 31141(a) and (c)(4); see *Ours Garage*, 536 U.S. at 441-442.

would be impliedly preempted on the ground that the state-law duties conflict with federal regulation of motor carriers or freight brokers. See *ONEOK, Inc.* v. *Learjet, Inc.*, 575 U.S. 373, 376-377 (2015) (discussing implied conflict preemption); see also *Kansas* v. *Garcia*, 140 S. Ct. 791, 801, 806-807 (2020). Those unresolved issues underscore that the express-preemption question presented in this case is not a question warranting this Court's review at this time.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

JOHN E. PUTNAM
  *General Counsel*
PAUL M. GEIER
  *Assistant General Counsel*
    *for Litigation and*
    *Enforcement*
PETER J. PLOCKI
  *Deputy Assistant General*
    *Counsel for Litigation and*
    *Enforcement*
CHRISTOPHER S. PERRY
  *Senior Trial Attorney*
  *Department of Transportation*

EARL ADAMS, JR.
  *Chief Counsel*
CHARLES J. FROMM
  *Deputy Chief Counsel*
TRACY M. WHITE
  *Senior Attorney*
    *Federal Motor Carrier*
    *Safety Administration*

MAY 2022

ELIZABETH B. PRELOGAR
  *Solicitor General*
BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
ANTHONY A. YANG
  *Assistant to the Solicitor*
    *General*
MARK B. STERN
JENNIFER L. UTRECHT
  *Attorneys*