UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**LAUREN BERTRAM**                      **CASE NO. 2:19-CV-01478**

**VERSUS**                              **JUDGE JAMES D. CAIN, JR.**

**PROGRESSIVE SOUTHEASTERN**            **MAGISTRATE JUDGE KAY**
**INSURANCE CO ET AL**

## MEMORANDUM RULING

Before the Court is "Defendant Blue-Grace Logistics LLC's FRCP 12(b)(6) Motion to Dismiss" (Doc. 98) wherein Blue-Grace Logistics LLC ("Blue-Grace) moves to dismiss Plaintiffs' state law negligence claims asserted in Plaintiffs' Third Amended Complaint. Blue-Grace maintains that these claims are preempted under the provisions of the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501.

## ALLEGATIONS

In their Third Amended and Restated Complaint,[1] Plaintiffs, Lauren Bertram, C B, Julian Bertram and Alexander Bertram, allege the following which is relevant to the instant Motion to Dismiss:

On or about July 16, 2019, at approximately 6:30 p.m., Stephen Duane Bertram was driving in the westbound lane of Interstate Highway 10. At that same time, Defendant Justin Chong was operating a Freightline tractor towing a trailer and traveling east on Interstate 10.[2] The tractor experienced a blow-out of the front driver's side tire causing

---
[1] Doc. 88.
[2] Id. ¶ ¶ 22 and 23.

Chong to lose control of the truck and trailer. The truck and trailer crossed the solid yellow line ultimately entering the westbound travel lanes and oncoming traffic, striking a vehicle driven by Zachary N. Flessner and then Mr. Bertram's vehicle.[3] Mr. Bertram sustained fatal injuries that resulted in his demise at the scene.[4]

Defendant Blue-Grace is a freight broker operating under the terms of a Motor Carrier Truckload Transport Agreement ("Empire-Blue Grace Agreement"); Blue-Grace acted as a freight broker for Empire National, Inc. ("Empire").[5] As a freight-broker, Blue Grace was responsible for arranging for the transportation of paper product that Empire/Mr. Chong, the truck driver was hauling in the tractor-trailer at the time of the accident.[6]

The Third Amended Complaint alleges that Blue-Grace: (1) negligently investigated, selected, and hired Empire; (2) failed to exercise ordinary care in investigating Empire's competence to transport goods in a commercial vehicle on the public roadways; and (3) failed to exercise ordinary care in selecting Empire to transport goods in a commercial motor vehicle on the public roadways.[7]

## **RULE 12(b)(6) STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed

---

[3] Id. ¶ 24.
[4] Id. ¶ ¶ 26 and 27.
[5] Id. ¶ 12.
[6] Id. ¶ 14.
[7] Id. ¶ 42.

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955.

## LAW AND ANALYSIS

Blue-Grace is a freight broker who arranged for Empire to transport jumbo rolls of paper in the tractor-trailer that was involved in the accident that caused Mr. Bertram's death. Plaintiffs allege that Blue-Grace: (1) negligently investigated, selected, and hired Empire; (2) failed to exercise ordinary care in investigating Empire's competence to transport goods in a commercial vehicle on the public roadways; and (3) failed to exercise ordinary care in selecting Empire to transport goods in a commercial motor vehicle on the public roadways.[8]

To summarize, Plaintiffs claim that the motor carrier selected by Blue-Grace was reckless, incompetent, and unqualified. Blue-Grace argues that Plaintiffs' claims seek

---

[8] Third Amended Complaint, ¶ 42, Doc. 88.

Page 4 of 13

relief under state negligence laws that have an effect on the prices, routes, and services of freight brokers. Blue-Grace maintains that Plaintiffs' claims are preempted by the FAAAA because they are directly related to and have a significant economic impact on the core services performed by a freight broker, namely selecting motor carriers to transport shipments. Therefore, Blue-Grace moves to dismiss Plaintiffs' Third Amended Complaint with prejudice as preempted under the provisions of the FAAAA, 49 U.S.C. § 14501. Both parties acknowledge that the Fifth Circuit has not addressed the issue of FAAAA preemption of state law claims in personal injury actions, noting that federal courts that have addressed FAAAA preemption challenges in the context of negligence claims against brokers are divided.

The first group of courts found no FAAAA preemption of personal injury claims against brokers based on the conclusion that negligent hiring claims are not sufficiently "related to" the services of a broker. *See, e.g., Scott v. Milosevic,* 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019); *Mann v. C.H. Robinson Worldwide, Inc.,* 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017). The second group of courts rejected FAAAA preemption of common law negligence claims based on the safety regulatory exception. *See, e.g., Miller v. C.H. Robinson Worldwide, Inc.,* 976 F.3d 1016 (9th Cir. 2020); *Lopez v. Amazon Logistics, Inc.,* 458 F. Supp. 3d 505, 512 (N.D. Tex. 2020); *Popal v. Reliable Cargo Delivery, Inc.,* 2021 WL 1100097 (W.D. Tex. Mar. 10, 2021); *Grant v. Lowe's Home Ctr.,* 2021 WL 288372, at *3 (D.S.C. Jan. 28, 2021). Finally, the third group of courts have found that negligence claims against freight brokers are preempted under the FAAAA and do not fall within the safety exception. *See, e.g., Gillum v. High Standard, LLC et al.,* 2020

WL 444371 (W.D. Tex. Jan. 27, 2020); *Loyd v. Salazar,* 2019 WL 4577108, at *4 (W.D. Okla. Sept. 20, 2019); *Creagan v. Wal-Mart Trans., LLC,* 354 F. Supp. 3d 808, 812 (N.D. Ohio 2018).

The FAAAA provides as follows:

(c)    **Motor carriers of property.—**

**(1) General rule. –** Except as provided in paragraphs (2) and (3), a State… may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier… or any private motor carrier, broker or freight forwarder with respect to the transportation of property.
**(2) Matters not covered. - -** Paragraph (1) - - (a) shall not restrict the safety regulatory authority of a State with respect to motor vehicles. . . .

49 U.S.C. § 14501(c)(1). The FAAAA was enacted in an effort to avoid "a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." *Rowe v. New Hampshire Motor Transp. Ass'n,* 552 U.S. 364, 368, 372 128 S.Ct. 989 (2008). The preemption language of the FAAAA directly mirrored the earlier Airline Deregulation Act ("ADA") and in interpreting identical provisions of those two statutes, the Supreme Court held that the FAAAA's preemption must also be read broadly. *Id.* at 370.

The FAAAA defines "transportation" as "services related to the movement" of property, "including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *Dan's City Used Cars, Inc. v. Pelkey,* 569 U.S. 251, 261, 133 S.Ct. 1769 (2013) (quoting 49 U.S.C. § 13102(23)(B)).

"In all pre-emption cases … we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *City of Columbus v. Ours Garage & Wrecker Serv., Inc.,* 536 U.S. 424, 432, 122 S.Ct. 2226, 2232 (2002). Consequently, there are limits to the FAAAA's preemption. *Pelkey, 569 U.S. at 260.*

"The principal purpose of the FAAAA was 'to prevent States from undermining federal deregulation of interstate trucking through a 'patchwork' of state regulations." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644 (9th Cir. 2014). The Supreme Court has cautioned that the FAAAA's preemption clause should not be read with "an 'uncritical literalism,' else 'for all practical purpose preemption would never run its course.'" *Dan's City Used Cars, Inc. v. Pelkey,* 569 U.S. 251, 260 quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655-656, 115 S.Ct. 1671 (1995). When interpreting the FAAAA "the breadth of the words 'related to' does not mean the sky is the limit." *Dan's City Used Cars,* 569 U.S. at 260. The Supreme Court specifically noted that the FAAAA does not preempt state laws affecting carrier prices, routes, and services "in only a tenuous, remote, or peripheral … manner." *Id.* FAAAA preemption is limited to state laws "with a 'significant impact' on carrier rates, routes, or services," *Miller v. C.H. Robinson worldwide, Inc.,* 976 F.3d 1016 (9th Cir. 2020).

*Are negligent hiring claims related to a broker's services?*

Blue-Grace remarks that the preemption language of FAAA mirrors in large part the earlier Airline Deregulation Act ("ADA"); in interpreting identical provisions of the

two Statutes, the Supreme Court in *Rowe* held that the FAAAA's preemption clause must be read broadly, stating:

> (1) That "[s]tate enforcement actions having a connection with, or reference to," carrier "'rates, routes, or services' are pre-empted,"; (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services "is only indirect,'" (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation; and (4) that pre-emption occurs at least where state laws have a "significant impact' related to Congress' deregulatory and pre-emption-related objectives.

*Rowe*, 552 U.S. at 370-71 (citing *Morales v. TWA,* 504 U.S. 374, 384-390, 112 S.Ct. 2031 (1992).

The courts finding no preemption under the ADA largely reasoned as such due to an ADA provision requiring air carriers to maintain insurance coverage for personal injury claims. See, e.g., *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 338 (5th Cir. 1995) ("A complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory.") In *Gillum*, the court found that there was preemption reasoning that the FAAAA contains a similar insurance-coverage provisions for motor carriers and freight forwarders, but *not* for brokers.[9] The *Gillum* court rejected the rationale that a negligent hiring action is too "tenuous, remote, or peripheral" from the "services" of a freight broker, given the definition of "brokerage services."[10] The court concluded that the FAAAA preemption provision should apply broadly, whereas the carve-out provisions

---

[9] See 49 U.S.C. § 13906(a)(1), (b)(1)-(2), (c)(3).
[10] See 49 C.F.R. § 371.2(c) ("Brokerage or brokerage service is the arranging of transportation or the physical movement of a motor vehicle or of property) (Freight broker is defined as "a person… that as a principal or agent sells, offers to sell…provid[es], or arrang[es] for, transportation by motor carrier for compensations.") *Id.* § 13102(2).

applies more narrowly. The court was persuaded by the line of cases that held negligence claims against freight brokers are preempted under the FAAAA because "[e]nforcing state negligence laws that would have a direct and substantial impact on the way in which freight brokers hire and oversee transportation companies would hinder" the objective of the FAAAA in deregulating the shipping and transportation industry. *Georgia Nut Co. v. C.H. Robinson co.,* 2017 WL 4864857, at *3 (N.D. Ill. Oct. 26, 2017) (citing *Rowe,* 552 U.S. at 371).

In *Miller v. C.H. Robinson Worldwide, Inc.,* 976 F.3d 1016 (9th Cir. 2020), the Ninth Circuit took the opposite approach finding that state common law tort claims against freight brokers are not preempted under the FAAAA because the safety regulation exception applies. 976 F.3d 1016 (9th Cir. 2020). There, the plaintiff sustained serious injuries when his vehicle was struck by a semi-tractor trailer and sued the freight broker that arranged for the trailer to transport the goods, alleging that the broker negligently selected an unsafe motor carrier.

Notably, the plaintiff in *Miller* relied on three cases wherein the Ninth Circuit previously found California state laws to have escaped FAAAA preemption—two of which are cited by Plaintiffs in the case at bar. *See* Doc. 103, pp. 3, 8, 10. First, in *Dilts v. Penske Logistics, LLC,* the Ninth Circuit "held that California's meal and break laws are not 'related to' motor carrier prices, routes, or services because they 'do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly.'" *Miller,* 976 F.3d at 1023 (quoting *Dilts v. Penske Logistics, LLC,* 769 F.3d 637, 647 (9th Cir. 1998)). Rather, the laws served as "normal background

Page **9** of **13**

rules for almost all employers doing business" and although "motor carriers may have to take them into account when allocating resources and scheduling routes," they are not the kind of laws "related to prices, routes, or services that Congress intended to preempt." *Dilts,* 769 F.3d at 647. Second, in *California Trucking Association v. Su,* the Ninth Circuit held that "the FAAAA does not preempt the use of California's common-law test for determining whether a motor carrier has properly classified its drivers as independent contractors because it is not 'related to' carrier prices, routes, or services." *Miller,* 976 F.3d at 1023 (citing *Su,* 903 F.3d at 957).

The Ninth Circuit rejected the plaintiff's reliance on *Dilts* and *Su* in support of his negligence claims. According to the court, the significant distinction between the negligence claim in *Miller* and the state laws in *Dilts* and *Su* is "the point at which the law affects a broker (or a motor carrier's) business." *Miller,* 976 F.3d at 1023. Particularly instructive to the court was that the "selection of motor carriers is one of the core services of brokers," and because a negligence claim "seeks to interfere at the point at which [the broker] 'arranges for' transportation by motor carrier, it is directly 'connected with' broker services" in a way that was not present in *Dilts* or *Su*. *Id.* at 1024. Thus, the Ninth Circuit held that the plaintiff's negligence claim was "related to" broker services.

In this matter, the Court is persuaded by the definition of a freight broker, who arranges for transportation of goods.  Thus, the Court finds that selection of motor carriers is one of the core services of brokers," and because a negligence claim "seeks to interfere at the point at which [the broker] 'arranges for' transportation by motor carrier, it is directly 'connected with' broker services." *Miller,* 976 F.3d at 1024.

*The "Safety-Regulatory Authority" Exception*

A preemption inquiry begins with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *City of Columbus v. Ours Garage and Wrecker Servs., Inc.*, 536 U.S. 424, 426 (2002). In fact, the FAAAA expressly provides that the preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2).

The *Gillum* court found that "the FAAAA preemption provision applies broadly" to state laws, while the exception "applies more narrowly to the safety regulatory authority of a state with respect to motor vehicles." *Gillum,* 2020 WL 444371 at *12–13. There, since the plaintiff did not allege that the defendant violated any specific state regulation related to a motor vehicle, and furthermore because the plaintiff did not point to any "convincing authority supporting the proposition that a state common law claim for negligent hiring constitutes a safety regulation," the court concluded that the safety exception did not apply. *Id.* These grounds are directly rejected by the Ninth Circuit in *Miller* and this Court is persuaded by the Ninth Circuit's rationale.

In *Miller v. C.H. Robinson Worldwide, Inc.,* the Ninth Circuit concluded that the FAAAA's safety regulatory exception encompasses common-law tort claims. 976 F.3d at 1026. This holding was primarily based on the tendency of courts to construe the safety exception broadly and Congress' purpose for enacting the FAAAA. *Id.* First, the Fifth Circuit has emphasized that "case law . . . has on the whole given a broad construction to the safety regulation exception." *VRC LLC v. City of Dallas,* 460 F.3d 607, 612 (5th Cir.

2006)). Thus, reliance on *Gillum v. High Standard, LLC et al.* is misplaced. 2020 WL 444371 (W.D. Tex. Jan. 27, 2020).

Secondly, the Ninth Circuit emphasized that when enacting the FAAAA, "Congress was primarily concerned with the States regulating economic aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws." *Miller,* 976 F.3d at 1026. Thus, "Congress's 'clear purpose' in enacting the safety exception, then, was 'to ensure that its preemption of States' economic authority over [that industry] . . . not restrict the States' existing power over 'safety.'" *Ours Garage,* 536 U.S. at 439 (quoting 49 U.S.C. § 14501(c)(2)(A)). And according to the Ninth Circuit, "[t]hat power plainly includes the ability to regulate safety through common-law tort claims." *Miller,* 976 F.3d at 1026. Furthermore, the Second Circuit has declared that "[h]istorically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as 'a critical component of the States' traditional ability to protect the health and safety of their citizens.'" *Desiano v. Warner-Lambert & Co.,* 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 544 (1992)).

Finally, the Ninth Circuit noted in *Miller* that "nothing in the FAAAA's legislative history . . . suggests Congress intended to eliminate this important component of the States' power over safety." *Miller,* 976 F.3d at 1026. The court cited a House Conference Report, which noted that a key interest group abandoned its opposition to the FAAAA subject to "some conditions that would allow regulatory protection to continue for non-economic factors, such as . . . safety," and that the conferees "attempted to address these conditions" by carving out the various exceptions in § 14501(c)(2). H.R. Conf. Rep. 103-677, at 88.

This broad reference to "safety," the court thought, "cuts against the narrow construction [defendant] advances." *Miller,* 976 F.3d at 1026 (citing *Apollo Grp., Inc. v. Avnet, Inc.,* 58 F.3d 477, 480 (9th Cir. 1995) (observing that "safety rationale[s] underl[ie] the law of tort")).

## CONCLUSION

This Court is more persuaded by the *Miller* court's rationale. The Court agrees that Plaintiffs' negligence claims are related to brokerage services but finds that Plaintiffs' negligence claim falls within the safety exception. This exception provides that the FAAAA "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(1)(A). As previously noted, in passing the FAAAA, Congress was primarily concerned with the States regulating economic aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws. *Su,* 903 F.3d at 960. Congress's "clear purpose" in enacting the safety exception, then was "to ensure that its preemption of States' economic authority over [that industry]…'not restrict' the States' existing power over safety." *Ours Garage,* 536 U.S. at 439, 122 S.Ct. 226 (quoting 49 U.S.C. § 14501(c)(2)(A). Accordingly, Defendant's Motion to Dismiss will be denied.

**THUS DONE AND SIGNED** in Chambers on this 13th day of July, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**