United States District Court
Southern District of Texas
**ENTERED**
January 12, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DNOW, L.P., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:17-CV-3369 |
| § | |
| PALADIN FREIGHT SOLUTIONS, § | |
| INC., *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM & ORDER

A truck driver was delivering concrete barriers when he allegedly struck a fire hydrant on the premises and caused serious property damage. The concrete barriers' buyer, Plaintiff DNOW L.P., sued the barriers' seller, Defendant Tricon Precast Ltd.; the driver, Defendant Luis Acosta Hernandez d/b/a L&M Eagle Express; and the freight broker who hired the driver, Defendant Paladin Freight Solutions, Inc. (Doc. No. 1-1.) Paladin removed the case from state district court in Harris County, Texas, arguing that federal law completely preempts DNOW's claim against Paladin. (Doc. No. 1.)

Conflicting motions are now pending before this Court: Paladin's Motion to Dismiss (Doc. No. 3), and DNOW's Motion to Remand (Doc. No. 10). Paladin has also moved for limited jurisdictional discovery and a stay of DNOW's Motion to Remand (Doc. No. 13), responding to a potential procedural defect that DNOW raised in its Motion to Remand. Based on careful consideration of the filings and applicable law, the Court **GRANTS** DNOW's Motion to Remand, **DENIES** Paladin's Motion to Dismiss, and **DENIES AS MOOT** Paladin's motion for limited discovery.

1

I.     BACKGROUND

The following facts are drawn from the Original Petition that DNOW filed in the 215th Judicial District Court in Harris County, Texas. (Doc. No. 1-1.) DNOW is a Texas limited partnership. In January 2017, DNOW ordered twenty "concrete reinforced barriers" from Tricon, another Texas L.P. (*Id.* at 2.) Tricon was to deliver them several days later to premises belonging to a customer of DNOW, located in Cleburne, Texas. (*Id.*) Tricon contracted with Paladin, a Tennessee corporation, to handle the delivery, which in turn contracted with L&M.[1] (*Id.* at 2–3.) According to DNOW, the "driver, while delivering the barriers on behalf of Tricon, negligently crashed his truck into a fire hydrant on the premises, which caused substantial property damage." (*Id.* at 3.) Using "PFS" for Paladin, DNOW pointedly links this driver to Paladin, referring to the driver as "PFS/L&M's driver." (*Id.*) After the accident, DNOW evidently had to reimburse its customer for the damage. (*Id.*)

DNOW now sues Tricon for breach of contract, citing an indemnification provision in its purchase order for the concrete barriers. (Doc. No. 1-1 at 3–4.) DNOW also sues Paladin and L&M for negligence, owing to the following failures: "failure to maintain a proper lookout while driving"; "failure to maintain control of a vehicle"; "failure to maintain a single lane of traffic"; "failure to operate a vehicle in a reasonable manner"; "failure to apply the brakes to avoid a collision"; and "failure to maintain safe and clear distance." (*Id.* at 4.) DNOW's negligence theories all concern the operation of the vehicle that caused the accident; none concerns Paladin's procedures for selecting or monitoring carriers.

---

[1] According to DNOW, L&M Eagle Express is "an assumed name" for Luis Acosta Hernandez, who resides in Harris County, Texas. (Doc. No. 1-1 at 1–2.)

On November 3, 2017, Paladin removed the case to this Court.[2] (Doc. No. 1.) Paladin asserts that it is a licensed freight broker,[3] and so DNOW's negligence claim against Paladin is completely preempted by 49 U.S.C. § 14501(b)(1), an express preemption provision for freight forwarders and brokers. In Paladin's view, this provision mandates dismissal of DNOW's negligence claim. (Doc. No. 3-2 at 10–11.) DNOW disagrees on both points, seeking remand to state court where it believes it can properly pursue its negligence claim against Paladin. Accordingly, this Court's subject-matter jurisdiction and the fate of DNOW's claim against Paladin turn on the interpretation of 49 U.S.C. § 14501(b)(1).

## II.   APPLICABLE LAW

### a. Removal and Remand

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Removal is therefore possible for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint." *Elam v. Kansas City Southern Railway Co.*, 635 F.3d 796, 803 (5th Cir. 2011). "An exception to the well-

---

[2] In its Notice of Removal, Paladin represented that Defendant Hernandez had not yet entered an appearance, and so his consent or opposition to removal had not been established. (Doc. No. 1 at 5.) Defendant Tricon consented to removal. (Doc. No. 1-3.) Tricon also does not oppose DNOW's motion to remand this case to state court. (Doc. No. 10 at 7.)

[3] The Court assumes the truth of this assertion for the sake of this decision. It therefore has no need to rule on Paladin's Request for Judicial Notice (Doc. No. 4) or consider its exhibit (Doc. No. 4-1).

pleaded complaint rule arises when Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* (quoting *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008)). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

If a federal court lacks subject-matter jurisdiction over a removed case, remand is required. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Removal deprives the plaintiff of his chosen forum, and every day litigating in federal court is a day spent not litigating in state court. It is imperative that a motion to remand be resolved as swiftly as possible so that the plaintiff maintains his right to choose the forum in which to litigate." *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 310 (5th Cir. 2005).

**b. Dismissal**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." "To prevail against a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face." *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (cleaned up). "A claim is facially plausible if the complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted).

### c. Preemption

"Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824)). The preemption of state law by federal law "in the first instance turn[s] on congressional intent," which Congress may state expressly in a statute's text. *Id.* "When considering pre-emption, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* at 605 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

## III. DISCUSSION

The present preemption question arises from Congress's deregulation of the air and surface transportation industries. In 1978, thinking that greater reliance on competitive market forces and lesser reliance on government regulation would improve prices and services in the airline industry, Congress passed the Airline Deregulation Act, now codified at 49 U.S.C. § 40101 *et seq. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378–79 (1992). To prevent piecemeal state regulation filling the federal regulatory void, Congress expressly preempted any state provision with the effect of law "relating to rates, routes, or services" of any air carrier. *Id.* (quoting 49 U.S.C. § 1305 (1988 ed.)).[4]

---

[4] The statute currently reads as follows: "Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

5

Two years later, Congress passed the Motor Carrier Act, which effected a similar deregulation of the trucking industry. *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). In 1994, Congress added an express preemption provision, 49 U.S.C. § 14501, for motor carriers, freight forwarders, and freight brokers when it passed the Federal Aviation Administration Authorization Act (FAAAA).[5] *Id.* Of paramount importance to its interpretation, Congress modeled it directly on the preemption provision in the Airline Deregulation Act. *Id.* The interpretation of the two provisions has been intertwined ever since. *Id.* at 370.

49 U.S.C. § 14501 has three subsections: (a) for motor carriers of passengers, (b) for freight forwarders and brokers, and (c) for motor carriers of property. Subsection (b), the relevant part here, provides that "no State or political subdivision thereof … shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b)(1).

The primary difficulty in determining preemption is deciding whether a given state law or enforcement action relates to rates, routes, or services. Construing 49 U.S.C. § 14501(c)(1), the preemption provision for carriers of property, the Supreme Court has said that state laws and actions are preempted that "hav[e] a connection with, or reference to" rates, routes, or services. *Rowe*, 552 U.S. at 370 (quoting *Morales*, 504 U.S. at 384). A state law can be preempted even if its effect on rates, routes, or services is "only indirect" and seems to be consistent with the aims of federal law. *Id.* (citing *Morales*, 504 U.S. at 386–87). The extent to which a state law must alter or influence rates, routes, or services in order to be preempted is somewhat unclear, but

---

[5] Courts often refer to this provision as a part of the Interstate Commerce Commission Termination Act of 1995, which preserved the provision precisely as it was enacted the year before in the FAAAA.

preemption "occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and preemption-related objectives." *Id*. (quoting *Morales*, 504 U.S. at 390). But where the state law's effect is only "tenuous, remote, or peripheral," preemption does not necessarily occur. *Id.* (quoting *Morales*, 504 U.S. at 390).

Based on this construction of the statute, the Supreme Court concluded that federal law preempted Maine's attempt to control the distribution of cigarettes through specific regulations on motor carriers. *Rowe*, 552 U.S. at 371. It reached the same conclusion for trucking regulations that the Port of Los Angeles's Board of Harbor Commissioners adopted in order to lessen pollution and promote safety there. *Amer. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 644 (2013).

Paladin now asserts that 49 U.S.C. § 14501(b) preempts DNOW's negligence claim arising from the accident in this case. (Doc. No. 3-2 at 10–11.) It is settled that "state common-law rules" are "provisions" with the "force and effect of law" for the purposes of preemption under the Airline Deregulation Act. *Nw., Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014). The Court adheres to that interpretation for the preemption provision at issue here.

The dispute between DNOW and Paladin is whether a state-law negligence claim "relates to" rates, routes, or services. In Paladin's view, DNOW's negligence claim implies that Paladin should engage in some sort of additional safety practices in order to avoid liability for its drivers' accidents. This amounts to using state law to change Paladin's safety practices, which necessarily affects Paladin's services. (Doc. No. 3-2 at 8.)

DNOW's response is twofold. First, it notes that Paladin misconstrues DNOW's negligence claim as negligent entrustment or negligent hiring, but it is simply a general negligence claim about the unsafe operation of a truck. (Doc. No. 11 at 6.) While the former

7

might implicitly impose constraints on the operations of a freight broker like Paladin, the latter does not. Second, DNOW relies on the Supreme Court's statements in *Rowe* about the precise contours of the FAAAA preemption provision. (*Id.* at 6–7.) The Supreme Court said there that 49 U.S.C. § 14501(c)(1), the provision applying to carriers of property, does not necessarily preempt "state regulation that broadly prohibits certain forms of conduct and affects, say, truckdrivers, only in their capacity as members of the public." 552 U.S. at 375. It also said that federal law does not preempt state laws affecting rates, routes, or services in "too tenuous, remote, or peripheral a manner." *Id.* As DNOW sees it, the law of negligence applies generally, broadly, and therefore too tenuously to Paladin to be preempted.

*Rowe* offers limited guidance here. The state law it struck down, an idiosyncratic Maine scheme that specifically regulated truckers, was different in kind from the state law in question here. Moreover, subsection (c) of § 14501, at issue in *Rowe*, contains an exception for state "safety regulatory authority … with respect to motor vehicles." Subsection (b), the relevant part for this case, has no analogue. Decisions construing subsection (c) are only so useful.

Neither the Supreme Court nor the Fifth Circuit has ever apparently decided whether the FAAAA preemption provisions apply to state tort actions like DNOW's against Paladin. The Fifth Circuit has, however, considered the Airline Deregulation Act's preemption provision as applied to state tort actions like negligence. *See Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995) (en banc). In *Hodges*, the Fifth Circuit held that "federal preemption of state laws, even certain common law actions 'related to services' of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft." *Id.* at 336. A passenger had been injured when a heavy box, dislodged by another passenger, fell from an overhead bin and struck her. *Id.* at 335. She then sued the

8

airline for negligence. *Id.* The court found that "services," as used in the federal preemption provision, concerned features of air transportation like "boarding procedures," "baggage handling," and "the transportation itself." *Id.* While Congress had intended to deregulate these features of air travel, it had not intended to "displac[e] state tort law." *Id.* at 337. The court recognized that "any state tort claim may 'relate to' services as a result of its indirect regulatory impact on the airline's practices," but that interpretation would yield absurd results. *Id.* at 337–38. "Taken to its logical extreme, this argument would suggest that a lawsuit following a fatal airplane crash could relate to 'services.'" *Id.* at 338.

Given the intertwined interpretation of the preemption provisions for air and surface transportation, the Fifth Circuit's decision in *Hodges* is tantamount to binding authority for the present question. The Fifth Circuit rejected the expansive construction of "services" that Paladin now advances, and it permitted a negligence claim quite like DNOW's to proceed. As such, the ruling in *Hodges* weighs strongly in favor of DNOW.

The Fifth Circuit's jurisprudence in the adjacent realm of railroad regulation strengthens this conclusion. *See Elam v. Kansas City So. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011). In *Elam*, the Fifth Circuit considered whether federal law preempts state-law negligence claims against rail carriers. *Id.* at 804. The Interstate Commerce Commission Termination Act of 1995, as already noted, contained preemption provisions for air and motor carriers. Employing similar language, it also vested exclusive jurisdiction "with respect to rates, classifications, rules, practices, routes, services, and facilities of [rail] carriers" in the federal Surface Transportation Board, thereby preempting equivalent state regulation. *Id.* at 804–05 (quoting 49 U.S.C. § 10501(b)). At issue in *Elam* were a negligence per se claim and a general negligence claim against a railroad, arising from the collision of a car and a train, which the railroad challenged on preemption grounds. *Id.*

9

at 801, 804. The Fifth Circuit drew an instructive distinction between the two types of negligence claims. The negligence per se claim was based on a Mississippi "antiblocking" statute, which limited the span of time that a train could obstruct a highway or street. *Id.* at 807 (citing MISS. CODE § 77-9-235). The Fifth Circuit found that the effect of this negligence per se claim was "to economically regulate [the railroad's] switching operations," and so it was completely preempted. *Id.* at 807–08. The simple negligence claim, however, was not an "attempt to manage or govern a railroad's decisions in the economic realm." *Id.* at 813. Finding no evidence that "specific burdens" on the railroad's operations would result from the negligence claim, the court held that it was not preempted. *Id.* at 813–14.

The Fifth Circuit's decisions in *Hodges* and *Elam* share a common foundation: the principle that states retain their police powers to protect the health and safety of their citizens, unless the "clear and manifest purpose of Congress" is to the contrary. *Hodges*, 44 F.3d at 338 (quoting *California v. ARC America Corp.*, 490 U.S. 93, 102 (1989). *See also Elam*, 635 F.3d at 813 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). Based on that foundation and on the Fifth Circuit's careful distinctions in *Hodges* and *Elam*, this Court concludes that DNOW's negligence claim against Paladin is not preempted.

Paladin's attempts to distinguish *Hodges* are unpersuasive. Paladin argues that *Hodges* was focused on distinguishing "services" from "operations," rather than on Congress's intent to deregulate the air and surface transportation industries, and that the Supreme Court rejected the *Hodges* approach in *Rowe*. (Doc. No. 3-2 at 6.) Neither characterization is correct. In *Hodges*, the Fifth Circuit's discussion of "services," a term in the statute's text, was a necessary part of its statutory interpretation. 44 F.3d at 336. That analysis also took full account of Congress's

deregulatory aims. *Id.* at 336–37. Moreover, the Supreme Court's decision in *Rowe* did not repudiate the Fifth Circuit's decision in *Hodges* in any sense.

Paladin also attempts to distinguish *Hodges* by noting that freight brokers are not required to maintain liability insurance as carriers are, and so Congress must not have meant for freight brokers to face any state liability. (Doc. No. 12 at 4–5.) It is true that the Fifth Circuit's decision in *Hodges* gleaned insight into congressional intent from the federal requirement that air carriers maintain liability insurance, 44 F.3d at 338, but *Hodges* did not rest primarily on that consideration. Its pillars were statutory interpretation and fundamental preemption principles. The issue of liability insurance was just one of several considerations to which the Fifth Circuit looked for confirmation of its core analysis. *Id.* at 337–39.

Paladin also unpersuasively relies on several district court decisions finding that 49 U.S.C. § 14501(c), the preemption provision for motor carriers of property, preempts negligence claims. *See AIG Europe Ltd. v. General System, Inc.*, 2014 WL 3671566 (D. Md. July 22, 2014); *Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc.*, 888 F. Supp. 2d 197 (D.N.H. 2012); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638 (N.D. Tex. 2010). One problem is that other district courts have reached the contrary conclusion. *See, e.g.*, *Factory Mut. Ins. Co. v. One Source Logistics, LLC*, 2017 WL 2608867 (C.D. Cal. May 5, 2017); *Cruz Miguel Aguina Morales, et al., v. Redco Transport Ltd., et al.*, 2015 WL 9274068 (S.D. Tex. Dec. 21, 2015). Another problem is that the injuries alleged in those cases are not analogous to the present one. Cases like *AIG Europe*, *Ameriswiss*, and *Chatelaine* concern the safe delivery of shipments. In each of those cases, the contents of a shipment arrived in damaged condition or not at all. But here, DNOW sues not because its concrete barriers were damaged in transit, but because a driver damaged his surroundings by failing to operate his vehicle safely. The former injury might be

within the preemptive scope of federal deregulatory law; the latter injury remains within the scope of state tort law.

DNOW's negligence claim is not preempted by federal law. This lawsuit therefore is a non-diverse one, with Texas citizens on both sides, consisting solely of state claims. It does not belong in federal court. Because remand is proper, it is not for this Court to pass judgment on the facts of this case or to order further discovery into them.

### IV. CONCLUSION

Federal law does not preempt Plaintiff DNOW, L.P.'s claim against Defendant Paladin Freight Solutions, Inc. Accordingly, Paladin's Motion to Dismiss (Doc. No. 3) is **DENIED**. Paladin's Motion to Authorize Limited Jurisdictional Discovery and to Stay Briefing (Doc. No. 13) is **DENIED AS MOOT**. DNOW's Motion to Remand (Doc. No. 10) is **GRANTED**. This case is **REMANDED** to the 215th Judicial District Court in Harris County, Texas.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 12th day of January, 2018.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE