UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **VANESSA REYES,** *individually and as next friend of X.R. and S.R., minor children, and as representative of the Estate of Hector Reyes-Acosta*, <br><br> *Plaintiffs*, <br> **v.** <br><br> **JORDAN MARTINEZ,** *d/b/a JIT Transportation*, <br><br> *Defendant.* <br><br> **VERONICA RAMOS**, <br><br> *Intervenor*, <br><br> **v.** <br><br> **JORDAN MARTINEZ**, *individually and d/b/a JIT* Transportation; **WERNER ENTERPRISES, INC.** *d/b/a Nebraska Werner Enterprises, Inc. d/b/a Werner Ent.*; **WERNER GLOBAL LOGISTICS US, LLC; WERNER GLOBAL LOGISTICS, INC.; and EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.,** *d/b/a El Freight (U.S.A.) Inc.*, <br><br> *Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § <br><br> **EP-21-CV-00069-DCG** |

## MEMORANDUM ORDER REMANDING CASE

Presently pending before the Court is Intervenor Veronica Ramos's "Motion to Remand and Request for Attorney's Fees" (ECF No. 12) ("Motion"), filed on April 18, 2021. Therein, Intervenor asks the Court to remand the instant case back to state court for lack of subject matter jurisdiction. She further asks the Court to award attorneys' fees under 28 U.S.C. § 1447(c).

After due consideration, the Court **GRANTS IN PART, DENIES IN PART** Intervenor's motion.

**A. Background.**

This is a personal injury suit arising from a fatal vehicle accident that occurred in Terrell County, Texas. Mot. at 3, ECF No. 12. On June 17, 2019, Hector Reyes-Acosta was driving an 18-wheeler eastbound from El Paso towards Laredo on U.S. 90. *Id.* At the same time, Cayetano Chavarria was driving westbound on U.S. 90 in another 18-wheeler owned by Defendant Jordan Martinez d/b/a JIT Transportation ("JIT"), while allegedly hauling a load brokered by Defendants Expeditors International of Washington, Inc. ("EI") and/or Werner Enterprises, Inc., Werner Global Logistics US, LLC, and Werner Global Logistics, Inc. (collectively, "the Werner entities"), in a trailer also owned by the Werner entities. *Id.* As Mr. Reyes-Acosta was driving along U.S. 90, Mr. Chavarria's 18-wheeler drifted out of his lane and into incoming traffic and collided head-on with Mr. Reyes-Acosta's 18-wheeler. *Id.* at 3–4. As a result of the collision both tractors caught fire, burning both Mr. Reyes-Acosta and Mr. Chavarria to death. *Id.* at 4.

On July 8, 2019, Mr. Reyes-Acosta's wife, Plaintiff Vanessa Reyes, in her individual capacity and on behalf of Mr. Reyes-Acosta's children, filed a wrongful death lawsuit in the 168th Judicial District Court of El Paso County, Texas against JIT, but not EI or the Werner entities.[1] Notice of Removal at 2–3, ECF No. 1. On February 26, 2020, Mr. Reyes-Acosta's

---

[1] As El Paso County was JIT's principal place of business at the time of the accident, Plaintiff asserted that venue was proper there under Texas Civil Practice and Remedies Code § 15.002(a), which provides that

> Except as otherwise provided by this subchapter or Subchapter B or C,[] all lawsuits shall be brought:
>
> (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
> (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

mother, Intervenor, filed her Original Plea in Intervention against JIT, alleging that its negligence proximately caused the accident resulting in the death of her son and the damages she sustained. *Id.* at 3.

On October 7, 2020, Plaintiff settled her and her children's claims with JIT. *Id.* On February 17, 2021, following the identification of EI and the Werner entities as potentially responsible parties, Intervenor filed her Amended Plea in Intervention, adding them as Defendants, and alternatively alleged their negligence was a proximate cause of her son's death and her damages. *Id.* On March 19, 2021, the Werner entities filed their Joint Notice of Removal and removed the instant case to federal court, contending that this Court has jurisdiction under the complete preemption doctrine.

**B. Applicable Law.**

    1. <u>Removal to Federal Court and Standard for Remand.</u>

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Insurance Co., of Am.*, 511 U.S. 375, 377 (1994). But "[w]ithout jurisdiction[,] the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). It follows then that a district court must remand a removed case if, at any time before final judgment it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be

---

    (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or
    (4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

Tex. Civ. Prac. & Rem. Code § 15.002.

resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (internal quotations omitted). The removing defendant "bears the burden of demonstrating that a federal question exists." *Id.*

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Absent diversity jurisdiction [under 28 U.S.C. § 1332], federal-question jurisdiction is required." *Id.* "A federal question exists 'only in those cases in which a well-pleaded complaint establishes that either federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 337 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)). This rule is known as the well-pleaded complaint rule.

2. Complete Preemption Doctrine.

But the complete preemption doctrine provides an exception to the well-pleaded complaint rule. Under this jurisdictional doctrine, a federal court may assert jurisdiction over a complaint that purports to rest on state law where the law governing the complaint is exclusively federal. *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009). In other words, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008) (internal quotations omitted).

The central inquiry in a complete preemption analysis is "whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under the state law." *Id.* Complete jurisdiction is distinct from ordinary preemption, which constitutes

a defense but does not provide federal jurisdiction. *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) ("Complete preemption, which creates federal removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption') which does not."). In general, complete preemption is "less common and more extraordinary" than ordinary preemption, and the Supreme Court has found complete preemption only three times. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (indicating that the Supreme Court had found complete preemption under the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act).

**C. Discussion.**

By their Notice of Removal, the Werner entities argue that Intervenor's negligence claims against them are preempted by the Federal Aviation and Administration Authorization Act ("FAAAA") and one of its amendments, the Interstate Commerce Commission Termination Act ("ICCTA"): sections 14501(b) and (c)(1). Notice of Removal at 4–5. Similarly, EI asserts the same arguments as the Werner entities in resisting Intervenor's instant motion. *See* EI's Resp. in Opp'n 2–4, ECF No. 14. Specifically, they both contend that Intervenor's state law claims are completely preempted by federal law because her claims are predicated on their capacity in this case as "brokers" under the statute. However, after reviewing the relevant case law, the Court concludes that Intervenor's state common-law negligence claims against the Werner entities and EI are not preempted by federal law.

    1. <u>The FAAA and the ICCTA.</u>

Title 49 of the United States Code, Section 14501 has three subsections: (a) for motor carriers of passengers, (b) for freight forwarders and brokers, and (c) for motor carriers of property—although this latter subsection also involves freight forwarders and brokers to some extent. In relevant part, section 14501(b) provides that:

> . . . no State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

49 U.S.C. § 14501(b)(1).

> Section 14501(c)(1) is more broadly focused than § 14501(b)(1) and reads:
>
> . . . a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

*Id.* § 14501(c)(1). However, the statute also provides an exception to (c)(1)'s preemptive scope:

> Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

*Id.* § 14501(c)(2)(A).

And finally, the statute defines a "broker" as

> a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

*Id.* § 13102(2).

Here, the parties do not appear to dispute that, based on their conduct in this case, EI and the Werner entities are "brokers" under the FAAAA. As such, the Court must now address whether Intervenor's state law claims are "law[s], regulation[s], or other provision[s] having the force and effect of law" which are "related to" the price, rates, routes, or services of the Werner entities and EI as brokers.

It is clear that Intervenor's state common-law negligence claims are "law[s], regulation[s], or other provision[s] having the force and effect of law" within the statute. The

Supreme Court has previously held that common law-claims are "other provisions with the force of law" and consequently may be subject to FAAAA preemption. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281–82 (2014). But as to whether her negligence claims are in fact preempted because they "relat[e] to" the price, rates, routes, or services of the Werner entities and EI as brokers presents a closer question.

      a.  *Legislative History.*

In analyzing their preemptive scope, the Court first considers the intent of Congress in passing these provisions. In passing the FAAAA, which is modeled on the Airline Deregulation Act of 1978 (the "ADA")[2], Congress sought to achieve two broad objectives. *See Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1022 (9th Cir. 2020) (citations omitted). "First, it sought to eliminate the competitive advantage air carriers enjoyed relative to motor carriers" in part due to the ADA's federal deregulation efforts. *Id.* Thus, Congress enacted the FAAAA "to 'level the playing field' between air carriers and motor carriers so that both could benefit from federal deregulation." *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 818 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 102 (2019) (citations omitted).

And second, Congress also sought to "address the inefficiencies, lack of innovation, and lack of competition caused by non-uniform regulations of motor carriers." *Miller*, 976 F.3d at 1022 (citations omitted). Specifically, it was "concerned about States enacting 'barriers to entry, tariffs, price regulations, and laws governing the types of commodities that a carrier could transport.'" *Id.* (citations omitted); *see also* H.R. Conf. Rep. 103-677, at 82–88 (1994), *reprinted*

---

[2] The ADA provides, in relevant part, that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

*in* 1994 U.S.C.C.A.N. 1715, 1754–60 (confirming that in passing the FAAAA, Congress was focused on economic deregulation of the trucking industry).

        b.  *Case Law.*

Next, the Court considers how the Supreme Court and the Fifth Circuit have construed the preemptive scope of these provisions. The Supreme Court has addressed the preemptive scope of the FAAAA twice: first in *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364 (2008), and then in *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013).

In *Rowe*, the Supreme Court found that the FAAAA preempted two Maine statutes that restricted the delivery of tobacco products to certain licensed individuals in the state. *Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364, 371–72 (2008). The Court relied on the fact that these statutes were "aim[ed] directly at the carriage of goods, a commercial field where carriage by commercial motor vehicles plays a major role." *Id.* at 375–76. It explained that these statutes "focuse[d] on trucking and other motor carrier services" by prescribing "particular delivery procedures" for tobacco products. *Id.* at 371. In other words, the Court found that these statutes were aimed directly at the transportation of property because they directly regulated motor carriers and dictated how they had to deliver tobacco products. Thus, the Supreme Court found that they had a significant and adverse impact on the FAAAA's ability to achieve its preemption-related objectives. *Id.* at 371–72.

In contrast, in *Pelkey*, the Supreme Court held that the FAAAA did not preempt a New Hampshire statute governing the storage and disposal of cars that had been towed, including a claim that the towing company had breached its common-law duty of care owed by a bailee. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 262 (2013). The Court cautioned that "the breadth of the words 'related to' [in the FAAAA's preemption clause] does not mean the sky is the limit." *Id.* at 260–61. The Court further instructed that the FAAAA's preemption clause

should not be read with "an 'uncritical literalism,'" else 'for all practical purpose preemption would never run its course.'" *Id.* (citations omitted). The Court specifically noted that the FAAAA does not preempt state laws affecting carrier prices, routes, and services "in only a tenuous, remote, or peripheral … manner." *Id.* at 260–61 (citing *Rowe*, 552 U.S. at 371).

However, the Supreme Court and the Fifth Circuit have yet to address whether the FAAAA preemption clauses encompass negligence or negligent-hiring claims in personal injury suits against brokers—the issue in this case. The Ninth Circuit is the only circuit court that has directly addressed such question, holding that while common law negligence claims do "relat[e] to" a broker's prices, routes, and services, such claims were not preempted because they fall within the scope of § 14501(c)(2) "safety exception". *See Miller*, 976 F.3d at 1026. On the other hand, district courts are split on the issue, and in particular, on whether negligence claims like Intervenor's are "related to" broker services. *Compare Scott v. Milosevic*, 372 F. Supp. 3d 758, 769–70 (N.D. Iowa 2019) (holding that personal injury claims alleging negligence are not "related to" broker services), *with Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1295–98 (W.D. Okla. 2019) (holding that such claims are "related to" broker services), and *Creagan v. Wal-Mart Transp.*, LLC, 354 F. Supp. 3d 808, 813 (N.D. Ohio 2018) (same).

As mentioned above, because the language of the ADA and FAAAA is so similar and they were both adopted for the same deregulatory purpose, most courts have relied on cases construing the ADA's nearly identical preemption provision in interpreting the one in the FAAAA. *See Rowe*, 552 U.S. at 370. The Fifth Circuit has already construed the ADA in the context of personal injury claims arising from an airline's negligent acts and has held that such claims are not preempted. *See Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1995) (*en banc*) ("[N]either the ADA nor its legislative history indicates that Congress intended to

displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption.").

Similarly, the Fifth Court has also previously held that a negligence claim by a motorist who collided with a train was not preempted by the ICCTA because "the effects of state negligence law on rail operations are merely incidental" and a simple negligence claim is not "related to" railroad crossings because it "does not directly attempt to manage or govern a railroad's decisions in the economic realm." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 813 (5th Cir. 2011).

And while the Supreme Court has not yet addressed the issue of whether state personal injury claims should be preempted under either the FAAAA or ADA, none of its decisions addressing the preemptive scope of these statutes forecloses such claims. In fact, in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), Justice Stevens noted in a concurring opinion that "private tort actions based on common-law negligence or fraud . . . are not preempted." *Id.* at 235.

2. Intervenor's State Common-Law Negligence Claims Are Not Preempted by Federal Law.

In sum, considering the legislative history, the Supreme Court's rulings in *Rowe* and *Pelkey*, together with the Fifth Circuit's decisions in *Hodges* and *Elam*, the Court concludes that Intervenor's negligence claims are not preempted by either §§ 14501(b)(1) or (c)(1) because those claims only affect brokers' prices, routes, and services "in only a tenuous, remote, or peripheral … manner." *Pelkey*, 569 U.S. at 260–61.

To begin, unlike the Maine statutes at issue in *Rowe*, state common-law negligence claims do not particularly focus on or target trucking, the specific regulation of freight brokers or motor carriers, the transportation of property, or any of their specific prices, routes, or services.

On their face, Intervenor's state common-law negligence claims "merely seek to enforce a normal duty of care" and "ha[ve] nothing to do with the service offerings [of EI or the Werner entities]—*i.e.*, [their] schedules, origins, or destinations—by [them] or the carriers with which [they] contract." *Works v. Landstar Ranger, Inc.*, CV 10-1383 DSF OPX, 2011 WL 9206170, at *2 (C.D. Cal. Apr. 13, 2011). Indeed, the duty to exercise reasonable care seems to be precisely the type of law that *Rowe* identified as not preempted because such duty "broadly prohibits certain forms of conduct and affects, say, truck drivers [or freight brokers] only in their capacity as members of the public." *Rowe*, 552 U.S. at 375.

What is more, common-law negligence does not "reference" freight brokers' prices, routes, or services, nor does it have a "significant impact" related to Congress's goal of economic deregulation. *Id.* at 370-371. At best, the effect of common law negligence on a broker's prices, routes or services are "merely incidental". *Elam*, 635 F.3d at 813; *see also Smith v. Am. W. Airlines, Inc.*, 44 F.3d 344, 347 (5th Cir. 1995) (*en banc*) (holding that passenger negligence claims against airline concerning its failure to warn or protect the ticketed passengers against known hazards did not relate to "services" under the ADA) ("If appellants ultimately recover damages, the judgment could affect the airline's ticket selling, training or security practices, but it would not regulate the economic or contractual aspects of boarding. Any such effect would be 'too tenuous, remote or peripheral[.]'" (citations omitted).

Put another way, there seems to be nothing about imposing a duty of care on brokers (or on any other participant in the trucking industry, for that matter) which would undermine Congress's goal of economic deregulation through the FAAAA and ICCTA. *See Cole v. City of Dallas*, 314 F.3d 730, 733-734 (5th Cir. 2002) (noting that state laws are only preempted if they represent an attempt to "hide economic regulation under the guise of safety regulation.").

In fact, Congress's inclusion of the "safety exception" in § 14501(c)(2) validates such reasoning. Common-law negligence claims are part of a State's traditional police power over safety. *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) ("Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a 'critical component of the States' traditional ability to protect the health and safety of their citizens.'" (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 544 (1992) (Blackmun, J., concurring in part and dissenting in part)). The plain language in the "safety exception" strongly suggests that Congress intended to preserve the states' rights to continue to regulate safety in the trucking industry. *See* 49 U.S.C. § 14501(c)(2) ("Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles[.]"). Thus, even if the Court were to conclude that Intervenor's negligence claims did "relat[e] to" a broker's prices, routes, or services in more than a "tenuous or peripheral way", the claims would still not be preempted because, to the extent they impose a duty of care to regulate safety, such duty must escape preemption. *See City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 426 (2002) ("[Section] 14501(c)(2)(A) evinces a clear purpose to ensure that the preemption of States' economic authority over motor carriers of property 'not restrict' the preexisting and traditional state police power over safety, 'a field which the States have traditionally occupied.'" (citations omitted)).

And on that same basis, the Court is unpersuaded by EI's and the Werner entities' arguments that the FAAAA and ICCTA preempt common-law negligence claims because Congress recognized that such claims are "simply too attenuated to support suit" against brokers.

Werner Mot. to Dismiss at 3, ECF No. 4.[3]  Specifically, in support of their arguments, EI and the Werner entities include the following comparison:

> A federally licensed freight broker operates as a travel agent for freight.  Just as a travel agent seeks the best fares for passengers, a federally licensed freight broker seeks the best rates for freight.  If an airliner crashed into a home, the homeowner would have no cause of action against the travel agent, who booked a passenger on the flight, since the relationship between the homeowner and the travel agent is too attenuated.  Likewise, the victim of a vehicular collision with a freight truck has no cause of action against a freight broker, who contracted to transport freight for a third party on the truck involved in the collision.

*Id.*

But if these assertions hold true, then it would appear that under any circumstance, brokers *rarely* owe a duty of care to anyone with whom their business relationship may involve or affect, directly or indirectly.  As such, if true, then EI and the Werner entities can easily dismiss Intervenor's state common-law negligence claims for failure to state a claim or prove at either summary judgment or trial that their connection with her damages is "simply so attenuated" to support judgment against them.  *See Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 209 (Tex. 2015) ("Whether 'a duty exists is a question of law for the court,' and if no duty exists, 'a jury cannot impose a duty[.]'" ).

Thus, the Court is unpersuaded by EI's and the Werner entities' arguments that essentially Congress intended to foreclose any common-law negligence claim against brokers and effectively immunize them from tort liability in general.  The Court finds the following passage from the Third Circuit about tort liability preemption under the ADA particularly instructive:

---

[3] Under Federal Rule of Civil Procedure 10, the Werner entities incorporated by reference all arguments listed in their "Notice of Removal" (ECF No. 1) and "Motion to Dismiss" (ECF No. 4). Werner Resp. in Opp'n at 3, ECF No. 13; *see also* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").

> It is highly unlikely that Congress intended to deprive passengers of their common law rights to recover for death or personal injuries sustained in air crashes. Such a massive change from pre-existing policy would hardly be imposed without specific statutory language. "It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured. . . ." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251, 104 S. Ct. 615, 78 L.Ed.2d 443 (1984).
>
> Freeing airlines from the pervasive control over prices, routes, and services that existed previously does not require a grant of sweeping immunity from the tort liability that existed throughout the regulatory era. If immunity was not deemed necessary for the industry during its infancy, it is difficult to understand why it would be necessary once the carriers were considered strong enough to fly on their own into the competitive atmosphere.

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998). Therefore, the Court concludes that (1) Intervenor's state common-law negligence claims are not preempted by federal law; (2) the Court lacks subject matter jurisdiction over the instant case; and (3) the instant case must be immediately remanded to state court.

**D.   Attorney's Fees under 28 U.S.C. 1447(c).**

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). In view that neither the Supreme Court nor Fifth Circuit have considered an FAAAA preemption challenge brought by a broker, and that district courts nationwide have reached differing conclusions on the issue, see *Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *3-5 (W.D. Tex. Jan. 27, 2020) (describing the development of "two diverging lines of cases," a line of preemption and a line of no preemption), the Court finds that the removing parties here did have an objectively reasonable basis for seeking removal. Therefore, the Court concludes that no attorneys' fees are merited in this case under § 1447(c).

### E. Conclusion.

Accordingly **IT IS ORDERED** that the instant action is **REMANDED** to the 168th Judicial District Court, sitting in El Paso County, Texas.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **MAIL** a certified copy of this Order to the District Clerk of El Paso County, Texas.

**IT IS MOREOVER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this case.

**So ORDERED and SIGNED this 28th day of May 2021.**

_____
**DAVID C GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**