IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YING YE, as Representative of the Estate of Shawn Lin, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:18-CV-01961 ) |
| GLOBAL SUNRISE, INC., and GLOBALTRANZ ENTERPRISES, INC., | ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Defendant GlobalTranz Enterprises, Inc. ("GlobalTranz"), seeks to dismiss plaintiff Ying Ye's claims against it pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) because they are preempted by the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA"), 49 U.S.C. § 14501(c)(1). Dkt. No. 62. For the reasons that follow, GlobalTranz's motion is granted in part and denied in part.

I.

Plaintiff sues GlobalTranz and Global Sunrise, Inc. ("Global Sunrise"), seeking damages for the death of her spouse, Shawn Lin. According to the Amended Complaint, Dkt. No. 55, GlobalTranz, a freight broker that provides third-party logistics services, contracted with Global Sunrise, a motor carrier, to transport freight from Illinois to Texas. Lin died

1

in a motor-vehicle accident caused by a Global Sunrise driver, David Antoine Carty, who was carrying a load on behalf of GlobalTranz.

Plaintiff's allegations against GlobalTranz invoke two theories of liability. First, plaintiff alleges that GlobalTranz acted negligently in selecting Global Sunrise to transport freight. For example, GlobalTranz knew or should have known that Global Sunrise operated in an unsafe manner due to its extensive history of safety violations, which is available on the Federal Motor Carrier Safety Administration website. Second, plaintiff alleges that GlobalTranz had sufficient control over Global Sunrise and Carty to make it vicariously liable for Lin's death. Specifically, GlobalTranz directly communicated with Carty about the load, set the dates and times for pickup and delivery, and required the following from Carty or Global Sunrise: the use of a specific trailer, daily tracking and driver location reports, calls from Carty to be dispatched and before entering detention, immediate notification if the shipper's instructions did not match the rate confirmation, verification that the bill of lading matched the temperature on the load confirmation, and a two-hour pickup and delivery ETA. Also, the bill of lading for Carty's load identified GlobalTranz, not Global Sunrise, as the carrier and made no mention of Global Sunrise.

II.

To survive a motion to dismiss under Rule 12(b)(6), plaintiff must allege "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, she must state a claim "that is plausible on its face" after I disregard conclusory allegations. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a motion to dismiss under Rule 12(b)(6), I accept plaintiff's well-pled factual allegations as true and draw all reasonable inferences in her favor. *Id*.

III.

To reach the merits of GlobalTranz's motion, I must first address a procedural misstep. "Preemption is an affirmative defense" which a pleading need not anticipate. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (citations omitted). GlobalTranz should have filed an answer and moved for judgment on the pleadings under Rule 12(c). *See id*. at 561-62. However, this error "is of no consequence" where a court has before it all it needs to rule on the defense and the plaintiff does not complain of the error. *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). That is the situation here. Moreover, a Rule 12(c) motion is governed by the same standard that is used for a Rule

3

12(b)(6) motion. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

Turning to GlobalTranz's motion, the issue before me is whether plaintiff's claims against GlobalTranz—negligent hiring and vicarious liability—fall within the FAAAA's preemption rule, 49 U.S.C. § 14501(c). Congress enacted the preemption provision of the FAAAA "with the aim of eliminating the patchwork of state regulation of motor carriers that persisted fourteen years after it had first attempted to deregulate the trucking industry." *Nationwide Freight Sys., Inc. v. Illinois Commerce Comm'n*, 784 F.3d 367, 373 (7th Cir. 2015) (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013); *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 548–49 (7th Cir. 2012)). In the relevant provision, the FAAAA provides:

> a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). The term "transportation" includes:

> (A) a motor vehicle, . . . property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation,

4

>   storage, handling, packing, unpacking, and interchange
>   of passengers and property.

49 U.S.C. § 13102(23).

The FAAAA's preemptive scope is broad and includes "laws and actions having some type of connection with or reference to a [broker's] rates, routes, or services, whether direct or indirect." *Nationwide Freight,* 784 F.3d at 373. However, when a state law has only a "tenuous, remote, or peripheral" relationship with such rates, routes, or services, it is not preempted. *Id.* (quoting *Dan's City*, 569 U.S. at 261). To determine that the FAAAA preempts a state law claim, two requirements must be met: (1) "a state must have enacted or attempted to enforce a law" and (2) that law must relate to a broker's "rates, routes, or services 'either by expressly referring to them, or by having a significant economic effect on them.'" *Id.* at 373-74 (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996)).

A.

I first address plaintiff's claim that GlobalTranz acted negligently in hiring Global Sunrise to transport freight. As the parties recognize, no federal appellate court has determined whether the FAAAA preempts personal injury claims alleging a broker negligently selected a motor carrier for the transportation of property and district courts are "sharply

5

divided" on that question. *Loyd v. Salazar*, No. CIV-17-977-D, 2019 WL 4577108, at *4 (W.D. Okla. Sept. 20, 2019) (DeGiusti, J.); compare *Volkova v. C.H. Robinson Co.*, No. 16 C 1883, 2018 WL 741441, at *4 (N.D. Ill. Feb. 7, 2018) (Guzmán, J.) (dismissing negligent hiring claim against a broker as preempted by the FAAAA) with *Mann v. C.H. Robinson Worldwide, Inc.*, Nos. 16 C 102, 16 C 104 & 16 C 140, 2017 WL 3191516, at *7-8 (W.D. Va. July 27, 2017) (Dillon, J.) (determining that the FAAAA does not preempt a personal injury claim against a broker alleging negligent hiring of a carrier).

To succeed on her negligent hiring claim, plaintiff must show that GlobalTranz selected Global Sunrise as an independent contractor when it knew or should have known that Global Sunrise was "unfit for the required contracted job so as to create a danger of harm to other third parties." *Hayward v. C.H. Robinson Co.*, 24 N.E.3d 48, 55 (Ill. App. Ct. 2014).[1] Negligence claims under state common law fulfill the first requirement for FAAAA

---

[1] The parties argue under the premise that Illinois law governs the substance of plaintiff's tort claims against GlobalTranz. I agree. As this case is before me under diversity jurisdiction, I apply the choice of law principles of the forum state: Illinois. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). "For tort actions, Illinois instructs the court to ascertain the forum with the 'most significant relationship' to the case." *Id*. at 915-16 (quoting *Esser v. McIntyre,* 661 N.E.2d 1138, 1141 (Ill. 1996)). Here, while the accident allegedly occurred in Texas, GlobalTranz's conduct is alleged to have occurred in Illinois, where it and Global Sunrise are allegedly domiciled.

preemption. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000) (state common-law actions are an "other provision having the force and effect of law" for purposes of the Airline Deregulation Act's preemption provision). The issue then becomes whether plaintiff's negligent hiring claim relates to GlobalTranz's broker services by either expressly referring to those services or by having a significant economic effect on them.

The heart of plaintiff's negligent hiring claim is that GlobalTranz failed to exercise reasonable care in arranging for a motor carrier, that is, its service as a freight broker. As used in the FAAAA, a "broker" is:

> a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(3). Plaintiff alleges that GlobalTranz provided "third-party logistics services and acts as a freight broker," marketed "itself to both shippers and motor carriers," contracted with Global Sunrise, a motor carrier, to transport freight from Illinois to Texas, and knew or should have known of Global Sunrise's history of unsafe operations. Dkt. No. 55, Am. Compl. at ¶¶ 2.5, 2.6, 4.13, 4.12, 4.37. These allegations implicate a freight broker's services regarding the

7

transportation of property. *See, e.g., Georgia Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857, at *3 (N.D. Ill. Oct. 26, 2017) (Ellis, J.) ("While the services of a freight broker do not include the actual transportation of property, they are focused on arranging how others will transport the property; these services, therefore, fall within the scope of the FAAAA preemption.") (citation omitted).

While state common law does not expressly reference freight brokers, plaintiff's negligent hiring claim seeks to shape how freight brokers perform their services. For example, in *Rowe v. N.H. Motor Transp. Ass'n*, the Supreme Court determined that the FAAAA preempted a Maine law that established requirements on tobacco deliveries, in part, because it imposed liability for a motor carrier's "*failure to sufficiently examine every package*" for unlicensed tobacco. 552 U.S. 364, 372-73 (2008) (emphasis in original). Similarly, to avoid liability for a negligent hiring claim like plaintiff's, brokers would need to examine each prospective motor carrier's safety history and determine whether any prior issues or violations would be permissible under the common law of one or more states. Enforcing such a claim would have a significant economic impact on GlobalTranz's broker services. *Volkova*, 2018 WL 741441, at *3. Furthermore, such an imposition on brokers would thwart the deregulatory objective of the FAAAA. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1051

8

(7th Cir. 2016). Accordingly, plaintiff's negligent hiring claim is preempted.

Plaintiff argues that her negligent hiring claim falls within a statutory exception that provides the FAAAA's preemption rule "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ." 49 U.S.C. § 14501(c)(2)(A). Even if I assume that plaintiff's claim can be considered a safety regulation, that claim has an attenuated connection to motor vehicles. GlobalTranz is not alleged to directly own, operate, or maintain motor vehicles. Plaintiff's expansive reading of the safety regulatory exception seeks "an unwarranted extension of the exception to encompass a safety regulation concerning motor carriers rather than one concerning motor vehicles." *Loyd*, 2019 WL 4577108, at *7; *see also Gillum v. High Standard*, LLC, No. SA-19-CV-1378-XR, 2020 WL 444371, at *5 (W.D. Tex. Jan. 27, 2020).

Nor am I convinced by plaintiff's argument that cases interpreting the analogous preemption provision of the Airline Deregulation Act ("ADA") merit the conclusion that the FAAAA does not preempt any personal injury negligence claims. The negligent hiring claim against GlobalTranz is not a "run-of-the-mill" personal injury claim seeking damages for premises liability. *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261, 1266 (9th Cir. 1998), *opinion amended on denial of*

9

*reh'g*, 169 F.3d 594 (9th Cir. 1999) (In the context of the ADA, the "service" of an airline "does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions."). And, the Seventh Circuit has rejected the development of "broad rules concerning whether certain types of common-law claims are preempted by the ADA." *Travel All Over the World*, 73 F.3d at 1433 ("Instead, we must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes or services.") (discussing *Morales v. Trans World Airlines,* 504 U.S. 374, 378 (1992)).

Plaintiff is also mistaken that the preemption of her negligent hiring claim leaves her without a remedy. Federal law mandates that motor carriers must maintain an insurance policy, bond, or other security in an amount "sufficient to pay . . . for each final judgment against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles, or for loss or damage to property . . . or both." 49 U.S.C. § 13906(a)(1). There is no such mandate for brokers. *Cf*. 49 U.S.C. §§ 13906(b)(1)(A), 13906(b)(2)(A). This provision, and the safety regulatory exception discussed above, indicate that Congress intended that a motor carrier, in this case Global Sunrise, may

10

be liable for personal-injury negligence actions despite the FAAAA's preemption provision.

B.

I next address plaintiff's claim that GlobalTranz is vicariously liable for Global Sunrise and Carty's negligence. To succeed on that claim, plaintiff must establish a principal-agent relationship between GlobalTranz and Global Sunrise and Carty. *See Sperl v. C.H. Robinson Worldwide, Inc.*, 946 N.E.2d 463, 470 (Ill. App. Ct. 3rd Dist. 2011) ("A principal is vicariously liable for the conduct of its agent but not for the conduct of an independent contractor.") (citation omitted). In an agency relationship, "a principal has the right to control an agent's conduct and an agent has the power to affect a principal's legal relations" whereas "an independent contractor undertakes to produce a given result but, in the actual execution of the work, is not under the order or control of the person for whom he does the work." *Id*. (citations omitted); *see also Lang v. Silva*, 715 N.E.2d 708, 716 (Ill. App. Ct. 1st Dist. 1999).

As discussed, common-law tort claims, like plaintiff's vicarious liability claim, meet the first requirement for FAAAA preemption. *See Mesa Airlines, Inc.*, 219 F.3d at 607. GlobalTranz argues that this claim meets the second requirement for FAAAA preemption for the same reasons as plaintiff's

11

negligent hiring claim—GlobalTranz's alleged communications with Global Sunrise and Carty relate to the services GlobalTranz provides as a freight broker. GlobalTranz also argues that these alleged communications do not constitute sufficient control over Carty or Global Sunrise to impose vicarious liability.

GlobalTranz's arguments are unconvincing. Unlike plaintiff's negligent hiring claim, which seeks to hold GlobalTranz liable for its own actions, her vicarious liability claim seeks to hold GlobalTranz liable for the actions of Carty and Global Sunrise. GlobalTranz admits that the safety regulatory exception to FAAAA preemption, 49 U.S.C. § 14501(c)(2)(A), applies "to the motor carrier that actually operates the vehicle." Dkt. No. 67, Reply Br. at 14. As Congress excluded such conduct from the FAAAA's preemption rule, it follows that a principal can be held liable for its agents' negligent operation of a motor vehicle. Furthermore, GlobalTranz's argument that plaintiff's allegations pertain only to its broker services asks me to conclude that its alleged communications with Carty and Global Sunrise are purely "incidental details required to accomplish" those broker services rather than a principal's exercise of control over its agents. Dkt. No. 62 at 14. However, at this stage, I am required to draw all reasonable inferences in plaintiff's favor, not that of GlobalTranz.

12

The issue then becomes whether plaintiff has alleged facts that give rise to an inference that GlobalTranz had the right to control the manner in which Global Sunrise and Carty operated motor vehicles. Here, plaintiff alleges GlobalTranz communicated directly with Carty about the load, required that Carty call it to be dispatched, required the use of a specific trailer, and required communications at multiple points in the transport of the load as well as daily tracking updates and location reports. Also, GlobalTranz, not Global Sunrise, is alleged to be the carrier listed on the bill of lading. These facts are sufficient to raise an inference that GlobalTranz controlled the manner in which Carty and Global Sunrise carried out their work of transporting a load in a motor vehicle. *See, e.g., Sperl,* 946 N.E.2d at 473 (affirming jury determination that driver was agent of freight broker where broker communicated directly with the driver, set type of trailer to be used, required a dispatch call and constant communication from the driver, and used fines to encourage timely delivery of a load). Whether that is actually the case remains to be decided. *See Thakkar v. Ocwen Loan Servicing, LLC*, No. 15-CV-10109, 2017 WL 3895596, at *4 (N.D. Ill. Sept. 6, 2017) ("The existence and scope of an agency relationship are questions of fact.") (citation omitted). Plaintiff may proceed with her vicarious liability claim against GlobalTranz.

13

IV.

GlobalTranz's motion to dismiss is granted with respect to plaintiff's negligent hiring claim and is denied with respect to plaintiff's vicarious liability claim.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: March 4, 2020

14